LANKLER SIFFERT & WOHL LLP

ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N. Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

March 27, 2017

**BY ECF:**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: <u>United States v. Percoco, et al.</u>, 16 Cr. 776 (VEC)

Dear Judge Caproni:

      We represent Peter Galbraith Kelly, Jr. in the above matter. We submit this letter on behalf of Mr. Kelly and codefendant Joseph Percoco. We regret having to burden the Court with correspondence regarding the Government's March 24, 2017 discovery letter (Doc. No. 133), but because the April 6 conference is approaching, we feel it necessary address the points made by the Government in two footnotes.

      First, the Government advises the Court that "certain documents are being processed for reproduction," but does not inform the Court of the volume or significance of those documents, or when the "reproduction" will occur. In fact, the documents at issue include more than 30,000 files provided by the "Energy Company" (identified in the Indictment), including emails between Mr. Kelly, Mr. Percoco, and the Government's cooperating witness, Todd Howe. These documents unquestionably are among the most central evidence in the case as to Mr. Kelly and Mr. Percoco.

      The Government initially produced nearly the entirety of these materials as PDF images, with limited to no metadata (such as sender, recipient, or date), even though such metadata apparently was available from the Energy Company. Without this metadata, defense counsel is unable to sort these files in any meaningful way. When we brought this issue to the Government's attention, we were told that the Government produced the materials to us in the same format as they had been received from the Energy Company. We advised the Government that the production was not adequate for our preparation purposes and inquired whether the Government intended to ask the Energy Company immediately to reproduce the materials with metadata. The Government indicated that it would do so, but to date has given us no specific indication of when the metadata would be made available.

Second, we made a request for a bill of particulars on behalf of Mr. Kelly a month ago, on February 28 (attached as Ex. A), and counsel for Mr. Percoco made his request—which to some degree mirrors Mr. Kelly's request—on March 7, 2017 (attached as Ex. B). We made our requests for these bills of particulars early, so that the Government would have ample time to respond before the scheduled April 6 conference and so we would have sufficient information to be prepared to discuss a motion schedule with the Court. Our requests are not boilerplate submissions but instead are narrowly addressed to the central issues in this case. The information we seek is essential for us to defend this matter and will help determine what motions are necessary.

Yet, in the second footnote of their letter, without having conferred with defense counsel, the Government proposes to respond to our separate requests for a bill of particulars on April 10—four days *after* the pretrial conference. The particulars the Government provides will directly impact what motions will be necessary and the time needed to prepare them. We therefore respectfully ask that the Court direct the Government to respond to our requests for bills of particulars no later than the morning of April 4—two days before the conference. That will provide us with 48 hours to evaluate the Government's response and assess how much time we will reasonably need to prepare motions.

Respectfully submitted,

/s/ Daniel M. Gitner
Daniel M. Gitner
Jun Xiang
Samantha J. Reitz

CC:

All Counsel (by ECF)

**EXHIBIT A**

# LANKLER SIFFERT & WOHL LLP
ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N.Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

February 28, 2017

**BY EMAIL:**

Janis Echenberg
Assistant United States Attorney
United States Attorney's Office for the Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

    Re: **United States v. Percoco, et al., 16 Cr. 776 (VEC)**

Dear Ms. Echenberg:

    On behalf of Peter Galbraith Kelly, Jr., we hereby request, pursuant to Federal Rule of Criminal Procedure 7(f), that the Government provide a bill of particulars. As you know, the Supreme Court has stressed the necessity of clarity and specificity in the context of public corruption prosecutions. See United States v. McDonnell, 136 S. Ct. 2355 (2016).

    The Indictment lacks the requisite specificity—particularly in regard to the alleged "official actions" by Joseph Percoco and the alleged "bribes" or "gratuities" by Mr. Kelly. For example, the Indictment alludes to both bribery and gratuity theories in a single "to wit" clause, (Ind. ¶ 60), and fails to specify the alleged conduct encompassed by phrases such as "others" and "among other things" (e.g. Ind. ¶¶ 20, 29). The Complaint and discovery only exacerbate the problem. The discovery covers years of conduct by Joseph Percoco (among others) with no specification of which conduct the Government alleges to have constituted "official actions" performed pursuant to a corrupt scheme. Similarly, the Complaint alleges various things of value without specifying whether those things of value are alleged to have been bribes or gratuities. (E.g., Compl. ¶ 37.) The particulars below are necessary to prepare for trial, avoid surprise, and understand the double jeopardy implications of the charges. United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam).

1. State the basis of the allegation that the "Percoco Bribery Scheme" and the "Buffalo Billion Fraud and Bribery Scheme" constituted "overlapping" schemes. (Ind. ¶ 1.)

2. As to each of the following terms in the Indictment, state whether the term is equivalent to the term "official act," as defined in United States v. McDonnell, 136 S. Ct. 2355 (2016), and, if not, define the term: (a) "official State action," (Ind. ¶ 1); (b) "official action," (Ind. ¶¶ 30, 31, 47, 49, 54, 56, 60); (c) "official State favors," (Ind. ¶ 27); and (d) "official assistance," (Ind. ¶¶ 28–29).

3. Identify each "thing of value" allegedly constituting a bribe or a gratuity from Mr. Kelly to Joseph Percoco. (Ind. ¶¶ 28–29.) As to each such thing of value specify: (a) whether the thing of value is alleged to have constituted a bribe or a gratuity; and (b) the date on which the thing of value was allegedly offered or provided to Joseph Percoco by Mr. Kelly.

4. Identify the date on which Mr. Kelly allegedly first agreed to provide things of value to Joseph Percoco in exchange for official action by Joseph Percoco on an "as-needed basis." (Ind. ¶ 28.)

5. Identify the date on which, after Joseph Percoco learned that CPV would not be awarded the PPA, he allegedly promised Mr. Kelly that he would "continue to take official action to help [CPV] obtain the PPA." (Ind. ¶ 31.)

6. Identify each "official action" that Joseph Percoco allegedly "agreed to take," or "in fact took" in connection with an alleged bribe or gratuity from Mr. Kelly. (Ind. ¶ 30.) As to each such alleged official action, specify:

   a. the date on which Joseph Percoco allegedly agreed to take the official action;

   b. the date on which the official action was allegedly performed;

   c. the pending question, matter, cause, suit, proceeding, or controversy in connection with which the official action was allegedly performed;

   d. the conduct of Joseph Percoco allegedly constituting an action or decision on that pending question, matter, cause, suit, proceeding, or controversy; and

   e. each thing of value allegedly offered or provided by Mr. Kelly to influence or reward the official action and whether that thing of value was intended to influence (i.e. constituted a bribe) or to reward (i.e. constituted a gratuity).

7. Identify each "other State official[]" whom Joseph Percoco, in connection with an alleged bribe or gratuity from Mr. Kelly, allegedly "exerted pressure on" or "provided advice to" with the intent that the State official perform an "official action" in favor of CPV. (Ind. ¶ 30(a)–(b).) As to each such State official, specify:

   a. the date on which Joseph Percoco allegedly "exerted pressure on" or "provided advice to" that State official;

   b. the pending question, matter, cause, suit, proceeding, or controversy in connection with which that State official was allegedly pressured or advised;

   c. the conduct allegedly constituting "pressure" or "advice" from Joseph Percoco; and

    d. the "official action," if any, allegedly taken by such State official in response to "pressure" or "advice" from Joseph Percoco.

8. To the extent "official State favors" and "official assistance," as used in the Indictment (Ind. ¶¶ 27–29), are not equivalent to "official action," identify each "official State favor" and each instance of "official assistance" allegedly provided by Joseph Percoco in exchange for alleged bribes by Mr. Kelly.

9. With respect to Count Nine:

    a. identify all alleged co-conspirators known to the Government, (Ind. ¶ 53);

    b. specify whether Joseph Percoco allegedly owed a duty of honest services as a "senior official in the Office of the Governor," (Ind. ¶ 54), throughout the period from April 21, 2014 to December 8, 2014, (Ind. ¶ 20);

    c. identify the basis for the allegation that Mr. Kelly, Steven Aiello, and Joseph Gerardi were members of a single conspiracy, (Ind. ¶ 53), that is, a "collective venture directed toward a common goal," United States v. Berger, 224 F.3d 107, 114 (2d Cir. 2000) (citation omitted).

10. With respect to Count Twelve:

    a. state whether the allegation that Mr. Kelly acted "corruptly," (Ind. ¶ 60), is based on the alleged breach of a duty by Joseph Percoco, see United States v. Rooney, 37 F.3d 847, 852–53 (2d Cir. 1994), and if so, identify that duty;

    b. identify the dates during which Joseph Percoco allegedly was an "agent" of New York State, (Ind. ¶ 60), and specify whether he was such an agent throughout the period from April 21, 2014 to December 8, 2014, (Ind. ¶ 20).

Very truly yours,

Daniel M. Gitner

**CC:**

Robert Boone, David Zhou, and Matthew Podolsky, Assistant United States Attorneys
All Defense Counsel (Email)

**EXHIBIT B**

**Schulte Roth & Zabel** LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Barry A. Bohrer
212.756.2380

Writer's E-mail Address
Barry.Bohrer@srz.com

March 7, 2017

**BY E-MAIL AND BY POST**

Janis Echenberg, Esq.
Robert Boone, Esq.
David Zhou, Esq.
Matthew Podolsky, Esq.
Assistant U.S. Attorneys
U.S. Attorney's Office for the Southern District of New York
One Saint Andrews Plaza
New York, NY 10007

      Re:  United States v. Percoco, et al., 1:16-cr-00776-VEC
             Joseph Percoco's Third Request for Discovery

Dear Counsel:

      On behalf of Joseph Percoco, we hereby request that, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, the government provide a bill of particulars, as set forth below, in order to permit Mr. Percoco to prepare his defense, avoid unfair surprise at trial, and understand the double jeopardy implications of the charges against him. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). Without the particulars requested below, Mr. Percoco will not be adequately informed of the "specific acts of which he is accused." *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (quotation omitted); *see also United States v. Espy*, 989 F.Supp. 17, 34 (D.D.C. 1997) ("[T]he Court grants the defendant's motion for a bill of particulars to the extent that it seeks from the government the conduct, date, place and substance of each official act referred [to] in the indictment."), *aff'd in part and rev'd in part*, 145 F.3d 369 (D.C. Cir. 1998).

1. Particulars relating to "official acts":

   1.1. As to each of the following terms in the Indictment (hereinafter, "Ind."), state whether the term is equivalent to the term "official action," as defined in *United States v. McDonnell*, 136 S. Ct. 2355 (2016), and, if not, define the term: (a) "official State action," Ind. ¶ 1; (b) "official action," Ind. ¶¶ 30, 31, 34, 47, 49, 51, 54, 56, 58, 60, 62; (c) "official State favors," Ind. ¶¶ 22, 27; and (d) "official assistance," Ind. ¶¶ 28, 29, 32.

1.2. To the extent "official State action," "official State favors" and "official assistance," as used in the Indictment, are not equivalent to "official action" as that term was defined by the Supreme Court in *McDonnell*, identify each "official State action" and "official State favor," and each instance of "official assistance," allegedly provided by Mr. Percoco to the "Syracuse Developer," "the Energy Company," Peter Galbraith Kelly, Steven Aiello, and/or Joseph Gerardi.

1.3. Identify each "official action" that Mr. Percoco allegedly "agreed to take," or "in fact took" for the benefit of the "Syracuse Developer," "the Energy Company," and/or Messrs. Kelly, Aiello, or Gerardi. Ind. ¶¶ 30, 34, 47, 49, 51, 54, 56, 58, 60, 62. As to each such alleged official action, specify:

   1.3.1. the date on which Mr. Percoco agreed to take the official action;

   1.3.2. the date on which the official action was allegedly performed;

   1.3.3. the pending question, matter, cause, suit, proceeding, or controversy in connection with which the official action was allegedly performed;

   1.3.4. the conduct of Mr. Percoco allegedly constituting an action or decision on that pending question, matter, cause, suit, proceeding, or controversy; and

   1.3.5. each thing of value allegedly offered or provided by the "Syracuse Developer," "the Energy Company," or Messrs. Kelly, Aiello, or Gerardi to influence or reward the purported official action and whether that thing of value was intended to influence (i.e., constituted a bribe) or to reward (i.e., constituted a gratuity).

1.4. Identify each "other State official[]" whom Mr. Percoco allegedly "exerted pressure on" or "provided advice to" with the intent that the State official perform an "official action" in favor of the "Syracuse Developer," "the Energy Company," and/or Messrs. Kelly, Aiello, or Gerardi. Ind. ¶¶ 30(a)–(b), ¶ 34(a)–(c). As to each such State official, specify:

   1.4.1. the date on which Mr. Percoco allegedly "exerted pressure on" or "provided advice to" that State official;

   1.4.2. the pending question, matter, cause, suit, proceeding, or controversy in connection with which that State official was allegedly pressured or advised;

   1.4.3. the conduct allegedly constituting "pressure" or "advice" from Mr.Percoco; and

   1.4.4. the "official action," if any, allegedly taken by such State official in response to purported "pressure" or "advice" from Mr. Percoco.

1.5. Identify the date on which, after Mr. Percoco learned that CPV would not be awarded the PPA, he allegedly promised Mr. Kelly that he "would continue to take official action to help [CPV] obtain the PPA." Ind. ¶ 31.

2. Particulars relating to "things of value":

   2.1. Identify each "thing of value" allegedly constituting a bribe or a gratuity from Messrs. Kelly, Aiello, or Gerardito Mr. Percoco. (Ind. ¶ 29.)

    2.2. As to each such thing of value, specify:

        2.2.1. whether the thing of value is alleged to have constituted a bribe or a gratuity; and

        2.2.2. the date on which the thing of value was allegedly offered or provided to Mr. Percoco by Messrs. Kelly, Aiello, or Gerardi.

3. Particulars relating to the time period of the charged conduct and the phrase "at least"

    3.1. Each crime with which Mr. Percoco is charged uses the phrase "at least" to modify the express time period. *See, e.g.,* ¶ 59 ("[f]rom *at least* in or about 2012 to *at least* in or about 2016") (emphasis added). State whether the phrase "at least" extends the potential beginning or end date of each crime with which Mr. Percoco has been charged, and, if so, by how much.

4. With respect to Count Six:

    4.1. Identify all alleged co-conspirators currently known to the Government, Ind. ¶ 47.

    4.2. Specify whether Mr.Percoco allegedly "serv[ed] in the Office of the Governor," Ind. ¶ 47, during the period from April 21, 2014 to December 8, 2014, Ind. ¶ 20.

5. With respect to Count Nine:

    5.1. Identify all alleged co-conspirators currently known to the Government, Ind. ¶¶ 53, 54.

    5.2. Specify whether Mr. Percoco allegedly owed a duty of honest services as a "senior official in the Office of the Governor," Ind. ¶ 54, during the period from April 21, 2014 to December 8, 2014, Ind. ¶ 20.

    5.3. Identify the basis for the allegation that Messrs. Kelly, Aiello, and Gerardi were members of a single conspiracy, Ind. ¶ 53, that is, a "collective venture directed toward a common goal," *United States v. Berger*, 224 F.3d 107, 113 (2d Cir. 2000).

6. With respect to Counts Ten and Twelve:

    6.1. Identify the duty allegedly owed by Mr. Percoco that rendered it corrupt under 18 U.S.C. § 666 for him to be offered or provided a thing of value, *see United States v. Rooney*, 37 F.3d 847, 851–53 (2d Cir. 1994) (defining "corruptly").

    6.2. Identify the dates during which Mr. Percoco allegedly was an "agent" of New York State, Ind. ¶¶ 60, 62, and specify whether he was such an agent during the period from April 21, 2014 to December 8, 2014, Ind. ¶ 20.

                                          Sincerely,

                                          /s/ Barry A. Bohrer

                                          Barry A. Bohrer
                                          Michael L. Yaeger
                                          Andrew D. Gladstein