UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-Against-

JOSEPH PERCOCO,
a/k/a "Herb,"
ALAIN KALOYEROS,
a/k/a "Dr. K,"
PETER GALBRAITH KELLY, JR.,
a/k/a "Braith,"
STEVEN AIELLO,
JOSEPH GERARDI,
LOUIS CIMINELLI,
MICHAEL LAIPPLE, and
KEVIN SCHULER,

                    Defendants.

No. S1 16-CR-776 (VEC)

**Oral Argument Requested**

# Memorandum of Law in Support of Joseph Percoco's Motion for a Bill of Particulars

SCHULTE ROTH & ZABEL LLP

Barry A. Bohrer
Michael L. Yaeger
Andrew D. Gladstein
Abigail F. Coster

919 Third Avenue
New York, NY 10022
Telephone: 212.756.2000

*Attorneys for Joseph Percoco*

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................. iii

Preliminary Statement .............................................................................................. 1

Background .............................................................................................................. 1

Legal Standard ........................................................................................................ 3

Argument ................................................................................................................. 4

I.  The Indictment Omits Critical Information about Official Acts, Official Duties, and
    Unindicted Co-Conspirators ............................................................................. 4

    A.  The Indictment fails to specify which state officials Percoco pressured or
        advised. .................................................................................................. 5

    B.  There is no clear limit to the alleged time period. .................................... 7

    C.  The Indictment fails to specify what duties Percoco owed and what official
        authority Percoco held during critical time periods. ................................. 8

    D.  The Indictment fails to identify Percoco's alleged co-conspirators. ......... 9

        1.  Courts routinely require disclosure of unindicted co-conspirators. ......... 10

        2.  The factors considered by courts weigh in favor of disclosure of
            unindicted co-conspirators in this case. ................................................. 10

            a.  The number of co-conspirators is relatively large. ...................... 10

            b.  The length and breadth of the alleged conspiracy is
                considerable. ............................................................................... 12

            c.  The government's previous disclosure does not adequately
                identify unindicted co-conspirators ............................................. 12

            d.  The volume of discovery is enormous for a criminal case. ........... 13

            e.  The alleged criminal conduct is not violent. .............................. 14

            f.  There is no potential harm to the Government's investigation. .... 14

II. The Sheer Size of the Government's Document Production Further Warrants a Bill
    of Particulars ................................................................................................... 15

i

III.    Percoco Joins in the Motions for Bills of Particulars Filed by Co-Defendants Kelly, Aiello and Gerardi ..................................................................................................17

IV.     Requested Particulars .........................................................................................18

Conclusion ........................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*United States v. Allocco*,
   801 F. Supp. 1000 (E.D.N.Y. 1992) ................................................................................11

*United States v. Bin Laden*,
   92 F. Supp. 2d 225 (S.D.N.Y. 2000) .............................................................................17

*United States v. Bortnovsky*,
   820 F.2d 572 (2d Cir. 1987) ..................................................................................*passim*

*United States v. Chalmers*,
   410 F. Supp. 2d 278 (S.D.N.Y. 2006) ...........................................................................18

*United States v. Davidoff*,
   845 F.2d 1151 (2d Cir. 1998) .........................................................................................4

*United States v. Espy*,
   989 F. Supp. 17 (D.D.C. 1997),
   *rev'd on other grounds*,
   145 F.3d 1369 (D.C. Cir. 1998) .....................................................................................7

*United States v. Failla*,
   No. 93 Cr. 00294(CPS), 1993 WL 547419 (E.D.N.Y. Dec. 21, 1993) ...........................10-11

*United States v. Feola*,
   651 F. Supp. 1068 (S.D.N.Y. 1987),
   *aff'd*, 875 F.2d 857 (2d Cir.1989) ...............................................................................11

*United States v. Kahale*,
   789 F. Supp. 2d 359 (E.D.N.Y. 2009) ....................................................................*passim*

*United States v. Lino*,
   No. 00 CR 632 (WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2001) ...........................4, 10, 18

*United States v. Mahaffy*,
   446 F. Supp. 2d 115 (E.D.N.Y. 2006) ...........................................................................17

*United States v. Nachamie*,
   91 F. Supp. 2d 565 (S.D.N.Y. 2000) ......................................................................*passim*

*United States v. Oruche*,
   No. 07 CR. 0184(WHP), 2008 WL 612694 (S.D.N.Y. Mar. 5, 2008) ..........................10, 15

*United States v. Pirro*,
212 F.3d 86 (2d Cir. 2000) ....................................................................8

*United States v. Rajaratnam*,
No. 09 Cr. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010)....................................4

*United States v. Ramirez*,
609 F.3d 495 (2d Cir. 2010) ...............................................................17

*United States v. Savin*,
No. 00 CR 45(RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001)...............................*passim*

*United States v. Skelos*,
No. 15 CR 317 (KMW), 2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) ...............................17

*United States v. Stein*,
424 F. Supp. 2d 720 (S.D.N.Y. 2006) .................................................................4

*United States v. Torres*,
901 F.2d 205 (2d Cir. 1990),
*abrogated on other grounds by United States v. Marcus*,
628 F.3d 36 (2d Cir. 2010) ...............................................................3

**Statutes**

18 U.S.C. § 666(a) ...............................................................................9

**Rules of Procedure**

Fed R. Crim. P. 7(f)............................................................................1, 3

Pursuant to Federal Rule of Criminal Procedure 7(f), Joseph Percoco respectfully submits this memorandum of law in support of his motion for a bill of particulars relating to, among other things, the "official acts" purportedly taken by Joseph Percoco in connection with the pending charges.

## PRELIMINARY STATEMENT

The government's response to its discovery obligations in this case has been to inundate defense counsel with *terabytes* of data, most of which concern schemes and conspiracies that are not even alleged to include Percoco, and to hide behind that voluminous but largely irrelevant discovery when pressed to provide any specific information as to its allegations. But justice demands that the government descend to particulars. The government must identify the basic information that Percoco needs to defend against the charges, including who Percoco pressured or advised to act and how; the boundaries of the time period during which Percoco is alleged to have taken bribes in exchange for official action; the duties that Percoco owed and the authority that he held, both during his time as Deputy Secretary to the Governor and after; and the identity of all known co-conspirators.

## BACKGROUND

On November 22, 2016, the government filed an indictment against Percoco and seven co-defendants, and on May 11, 2017, the government filed a superseding indictment (the "Indictment" or "S1"). The Indictment charges four separate schemes: (1) a bribery scheme allegedly involving an energy company with projects in Wayawanda, New York, and New Jersey ("CPV"); (2) a bribery scheme allegedly involving a real-estate development company in Syracuse, New York ("COR"); (3) a bid-rigging scheme allegedly involving the same Syracuse

real-estate development company; and (4) a bid-rigging scheme allegedly involving a developer in Buffalo, New York.

Percoco is not implicated in, nor alleged to have had knowledge of, either of the bid-rigging schemes. Rather, the charges against him relate solely to the CPV bribery and COR bribery schemes. With respect to these two schemes, the Indictment alleges that Percoco, whose chief responsibility was to supervise "appointments and administrative matters for the Executive Chamber" (S1 ¶¶ 3; *see also* Compl. ¶¶ 19, 26(a)),[1] nevertheless "exerted pressure on" and "provided advice to" "certain other State officials" (S1 ¶¶ 31, 35) to take official actions in exchange for (i) a salary paid to Percoco's wife for what the government calls a "low-show" teaching position that she received through CPV (*id.* at ¶ 30; *see also* Compl. ¶¶ 44d); and (ii) payments made to Percoco by the government's cooperating witness, Todd Howe, after Percoco had resigned his position as Deputy Secretary to the Governor and began working as Howe's consultant on labor issues. (S1 ¶¶ 33 (alleging $35,000 in bribes were paid between "in or about August 2014" and "in or about October 2014"); *see also id.* at ¶ 4 (alleging Percoco "officially left New York State employment" on April 21, 2014, and returned on December 8, 2014).) The Indictment does not identify which "certain" State officials Percoco is alleged to have pressured or advised, much less specify in any detail the way Percoco went about doing so, leaving Percoco to guess at a critical issue in his case: what acts the government believes to constitute "official acts."

---

[1]    Citations in the form "Compl. ¶ _" refer to paragraphs in the Sealed Complaint, dated September 20, 2016 (ECF No. 1).

By letter dated March 7, 2017, Percoco asked the government to provide this information, which goes to the very core of his defense. (*See* Bohrer Decl. Ex. 4).[2] By letter dated April 10, 2017, the government responded to Percoco's request, referring Percoco generally to allegations in the Complaint, and to the millions of documents of almost entirely routine communications and documentation produced in discovery, but providing no substantive response to his request for particulars. (*See* Bohrer Decl. Ex. 5). Counsel for Percoco met and conferred with the government on May 11, 2017, once again requesting, among other things, that the government identify the State officials who Percoco allegedly pressured or advised. (*See* Bohrer Decl. Ex. [ ]). The government declined Percoco's request, referring Percoco back to its letter of April 10, 2017.

## LEGAL STANDARD

A motion for a bill of particulars should be granted where additional details of the charge are "necessary to the preparation of [the] defense, and to avoid prejudicial surprise at the trial." *United States v. Torres*, 910 F.2d 205, 234 (2d Cir. 1990) (internal quotation marks omitted), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010); *see also United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) ("Rule 7(f) … permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should [the defendants] be prosecuted a second time for the same offense."). If details are needed for those purposes, then "a bill of particulars will be required even if the effect is the disclosure of the government's evidence or

---

[2] Citations in the form "Bohrer Decl. Ex. _" refer to Exhibits to the Declaration of Barry A. Bohrer, filed herewith.

theories." *United States v. Lino*, No. 00 CR 632 (WHP), 2001 WL 8356, at *3 (S.D.N.Y. Jan. 2,

2001). The decision to order the filing of a bill of particulars rests within the sound discretion of

the district court. *Bortnovsky*, 820 F.2d at 574; *United States v. Nachamie*, 91 F. Supp. 2d 565,

570 (S.D.N.Y. 2000).

In "complex conspiracy cases," the need for a bill of particulars is even more critical

because "the potential for unfair surprise and the difficulty of preparing a defense are amplified."

*United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *2 (S.D.N.Y. July

13, 2010) (requiring bill of particulars in insider trading case, in part due to the six-year span of

the charged conduct and multiple co-conspirators); *see also United States v. Davidoff*, 845 F.2d

1151, 1152-54 (2d Cir. 1998) (bill of particulars necessary to avoid surprise at extortion trial

charging defendant with extorting payments in exchange for relaxing compliance with labor

peace agreements); *United States v. Stein*, 424 F. Supp. 2d 720, 725 (S.D.N.Y. 2006) (holding

bill of particulars was required given size and complexity of large tax fraud); *United States v.*

*Lino*, No. 00 CR 632 (WHP), 2001 WL 8356, at *4 (S.D.N.Y. Jan. 2, 2001) (awarding bill of

particulars regarding bribery allegations where the indictment, among other things, "fail[ed] to

specify whom [defendant] agreed to bribe, the pension fund with which the bribe recipient was

affiliated, and the amount of the bribe").

## ARGUMENT

### I.    The Indictment Omits Critical Information about Official Acts, Official Duties, and Unindicted Co-Conspirators

The "official actions" allegedly taken by Percoco purportedly came in the form of

"pressure" he exerted upon, or "advice" he provided to, "certain other State officials." But the

Indictment omits critical information that is as basic to this charge as it is fundamental to

Percoco's defense. First, the government refuses to even identify *who* Percoco allegedly

4

pressured or advised, or to describe in any detail how Percoco went about pressuring or advising those unnamed people. (*See* S1 ¶¶ 31, 35 ("certain other State officials").) <u>Second</u>, the Indictment describes the relevant time period for all of the charges against Percoco with the hedging and indefinite modifier "at least" (*see id.* at ¶¶ 49, 51, 53, 55, 58, 61, 63), thus leaving open the possibility that the government may rely on allegations preceding that time period by a number of years. <u>Third</u>, the Indictment fails to specify what duties Percoco owed the State after he had—as the government concedes—officially left State government. (*See id.* at ¶ 4.) And <u>fourth</u>, despite alleging four "wide-ranging" conspiracies and charging eight separate defendants (*id.* at ¶ 1), the government refuses to identify others (besides the men accused) with whom the government believes Percoco conspired. In sum, the government is withholding basic information necessary to the preparation of Percoco's defense.

### A. The Indictment fails to specify which state officials Percoco pressured or advised.

Percoco cannot adequately prepare to defend himself at a trial centered on the allegation that he exerted pressure or provided advice to others without knowing *who* those others are. At a minimum, the government should be required to disclose the identities of each of the "certain other State officials" that Percoco purportedly pressured or advised.

The Indictment broadly alleges that Percoco "exerted pressure on and provided advice to *certain* other State officials," without identifying those officials or specifying the acts that he or they allegedly performed or promised to perform that constitute "official acts." (*Id.* at ¶ 31a (Percoco "exerted pressure on and provided advice to certain other State officials" to obtain an "Emissions Credit Agreement" for CPV; *id* at ¶ 31b (Percoco "exerted pressure on and provide advice to certain other State officials" to obtain a "long term power purchase agreement" for CPV); *id* at ¶ 35a (Percoco "exerted pressure on and provided advice to certain other State

officials" to reverse a requirement that COR enter into a "costly labor agreement with labor unions"); *id* at ¶ 35b (Percoco "exerted pressure on and provide advice to certain other State officials" to obtain the release of State funds owed to COR); *id* at ¶ 35c (Percoco "exerted pressure on and provide[d] advice to certain other State officials" to obtain a raise for Aiello's son, who worked in the Executive Chamber).)

This boilerplate language does little to help Percoco prepare his defense or avoid unfair surprise on a basic issue at trial. Nor can Percoco rely on the allegations in the Complaint, which does hardly more than allude to two former "State Operations Directors." (*See Generally* Compl. ¶¶ 43-64.) For example, as one of the five instances of Percoco's purported official actions, the Indictment alleges that Percoco pressured Empire State Development Corporation ("ESDC") to reverse a decision requiring that COR obtain a certain "Labor Agreement" in connection with one of its development projects. (S1 at ¶ 35a.) In support of this allegation, the Complaint cites a single email chain in which Todd Howe, the government's cooperating witness, informs Aiello and Gerardi that he had spoken to Percoco, who said that COR should "stand by" and await a call from an ESD employee about ESD's decision not to require the Labor Agreement. (Compl. ¶ 64d.i.) The Complaint does not suggest that Percoco pressured or advised that employee (nor could it). Nor does the Complaint identify anyone else whom Percoco purportedly pressured to achieve this result, leaving Percoco to guess as to the basis for the charge against him.

Percoco is entitled to a clear understanding of the fundamental details of the charges against him. Indeed it is vital to his ability to prepare for trial. "[T]he basis of the government's allegations that the defendant solicited and received things of value" in exchange for "official acts" is "necessary to avoid unfair surprise at trial and is needed for the defendant to prepare a

defense." *United States v. Espy*, 989 F. Supp. 17, 34 (D.D.C. 1997) (granting defendant's motion for a bill of particulars [that sought] from the government the conduct, date, place and substance of each official act referred in the Indictment") *rev'd on other grounds*, 145 F.3d 1369 (D.C. Cir. 1998).

At bottom, the Indictment asserts that Percoco pressured other State officials to take official action. Accordingly, the government should be required to identify the names of the "certain other State officials" who Percoco allegedly pressured and the "official actions" at issue in this case.

**B.    There is no clear limit to the alleged time period.**

All of the charges against Percoco describe the years when the conduct allegedly occurred with the indefinite phrase "from at least in or about." (*See* S1(*see id.* at ¶¶ 49 (Count Six), 51 (Count Seven), 53 (Count Eight), 55 (Count Nine), 58 (Count Ten), 61 (Count Eleven), 63 (Count Twelve); *see also id.* at ¶¶ 29, 33 (using same phrase in factual allegations forming the basis of the charges against Percoco).) For example, Count Six alleges that a conspiracy occurred "[f]rom at least in or about 2012, up to and including in or about 2016 …." (*Id.* at ¶ 49.) These "at least" allegations are far too vague to inform Percoco of the nature of the accusations against him or to allow his defense counsel to prepare for trial.

The "at least" dates are expressed in terms of years, not days or even months. The difference is crucial. Consider a phrase such as: "From at least on or about June 12, 2009, up through and including in or about April 2010." The use of a particular day in that phrase suggests that the charged time period is relatively tethered to that particular day; it would be unnatural to assume that the time period began five years before. But when "at least" is tied to a year, not a day or month, then no such inference can be drawn. "From at least 2012, up to and

7

including in or about 2016" could mean that the conduct began in 2011, 2010, or perhaps 2007. Or even earlier.

The government's unbounded language is especially significant given that the Indictment alleges that the Energy Company "had been working to develop a power plant in Wawayanda, New York" since "in or about 2008" (S1 ¶ 20), and given that the government's cooperating witness, Todd Howe, has known some defendants, potential witnesses, and potential unindicted coconspirators in this case for decades. (*See id.* at ¶ 5.) Without a clear limit on the time period at issue, the defendant's burden in reviewing information and preparing for trial is dramatically increased. The government knows what evidence it put before the grand jury about when the alleged conspiracy began; it should not be allowed to keep the Indictment so vague that it can improperly "fill in elements of its case with facts other than those considered by the grand jury." *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000).

C.      **The Indictment fails to specify what duties Percoco owed and what official authority Percoco held during critical time periods.**

The Indictment provides no clarity as to what duties Percoco owed either during his time as Deputy Secretary to the Governor or in the portion of 2014 when he had left state employment and not yet returned. And the latter was not a trivial period of time. As the Indictment states, Percoco "officially left New York State employment to serve as campaign manager for the Governor's reelection campaign" in April 2014, returning to State employment on or about December 8, 2014 (S1 ¶ 4)—and many of the allegations against Percoco that concern the Syracuse Developer occurred during that 7 ½ month period. (*See id.* at ¶¶ 33, 53, 58, 63; *see also id.* at ¶ 35a (alleging that Percoco "pressured" State officials in connection with Labor Agreement); Compl. ¶¶ 61-64 (placing events related to Labor Agreement between early summer and December 4, 2014).)

The government glosses over the fact that Percoco had resigned from the Executive Chamber by converting Percoco's job as campaign manager into the functional equivalent of a government job. (S1 ¶ 4.) If the government is alleging that during his time out of State government, Percoco was an "agent" of New York State, 18 U.S.C. § 666(a), vested with "official authority" (as required by the Supreme Court's landmark decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016)) or owing a fiduciary duty (as required for a conviction for honest services wire fraud by *Skilling v. United States*, 561 U.S. 358 (2010)), the government should say so. And it should specify what particular duties it alleges that Percoco had during that time period.

### D.    The Indictment fails to identify Percoco's alleged co-conspirators.

Percoco is charged alongside seven other co-defendants in an Indictment that alleges at least four separate conspiracies spanning a number of years. While the government identifies some of the purported conspirators, it refuses to name all of them. Percoco cannot adequately prepare himself for trial if he is forced to guess at the identities of his alleged co-conspirators. The allegations in the Indictment implicate numerous State agencies involved in economic development, environmental conservation, transportation and energy, as well as various private and public companies interacting with those state agencies. If the government believes that none of the individuals involved in these interactions were participants in the alleged conspiracies, then it should state as much. On the other hand, if the government intends to assert that other individuals besides those indicted or already identified played a role in the alleged conspiracy, then it should not be permitted to withhold that information and ambush Percoco at trial. Percoco respectfully submits that the Court should grant his routine request to compel the government to disclose the identities of any individuals whom it believes to be unindicted co-conspirators.

1.     *Courts routinely require disclosure of unindicted co-conspirators.*

"Requests for names of unindicted co-conspirators are fairly common and often are granted by district courts." *United States v. Lino*, No. 00 Cr. 632, 2001 WL 8356, at *12 (S.D.N.Y. Jan. 2, 2001); *see also United States v. Kahale*, 789 F. Supp. 2d 359, 372-73 (E.D.N.Y. 2009) (directing government to disclose the names of any unindicted co-conspirators); *United States v. Oruche*, No. 07 CR. 0184(WHP), 2008 WL 612694, at *4 (S.D.N.Y. Mar. 5, 2008) (same); *United States v. Savin*, No. 00 CR 45(RWS), 2001 WL 243533, at *2-5 (S.D.N.Y. Mar. 7, 2001) (same); *United States v. Nachamie*, 91 F. Supp. 2d 565, 573-74 (S.D.N.Y. 2000) (same); *United States v. Faille*, No. 93 Cr. 00294 (CPS), 1993 WL 547419, at *7 (E.D.N.Y. Dec. 21, 1993) (same); *United States v. Allocco*, 801 F. Supp. 1000, 1003 (E.D.N.Y. 1992) (same); *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987) (same), *aff'd*, 875 F.2d 857 (2d Cir.1989).

2.     *The factors considered by courts weigh in favor of disclosure of unindicted co-conspirators in this case.*

In weighing a request for disclosure of unindicted co-conspirators, courts have considered six factors: (i) the number of co-conspirators; (ii) the duration and breadth of the alleged conspiracy; (iii) whether the Government otherwise has provided adequate notice of the particulars; (iv) the volume of pretrial discovery; (v) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (vi) the potential harm to the Government investigation. *See Nachamie*, 91 F. Supp.2d at 572 (internal citations and quotations omitted). These factors favor disclosure here.

a.     The number of co-conspirators is relatively large.

The first factor considered by courts is the number of co-conspirators.  Courts have found that this factor supports disclosure when there are as few as four indicted co-conspirators. *See*

*Kahale*, 789 F. Supp.2d at 372 ("[T]he number of potential co-conspirators is potentially large as there are four indicted defendants and an unknown number of unindicted individuals."). Here, the government has represented to the Court that each of the eight defendants in this case are inextricably linked by the government's cooperating witness, Todd Howe, and that each defendant is therefore responsible for preparing themselves with the facts of the alleged conspiracies, regardless of whether they have been charged, each of which has been alleged to include "others known and unknown." (*See* Transcript of Apr. 12, 2017 Pretrial Conference, ECF No. 156.) As the chart below illustrates, the number of alleged conspirators is quite large:

| Conspiracy | Indicted Conspirators |
|---|---|
| Wire Fraud – Buffalo RFP | Alain Kaloyeros, Steven Aiello, Joseph Gerardi, Louis Ciminelli, Michael Laipple, Kevin Schuyler, Todd Howe |
| Wire Fraud – Syracuse RFP | Alain Kaloyerso, Steven Aiello, Joseph Gerardi, Todd Howe |
| Extortion Under Color of Official Right | Joseph Percoco |
| Honest Services | Joseph Percoco; Peter Galbraith Kelly, Jr., Steven Aiello, Joseph Gerardi |

Thus, even before turning to an unknown number of unindicted co-conspirators, nine individuals have been identified as co-conspirators in connection with the four conspiracies described in the Indictment. And given the breadth of the four conspiracies alleged, including the many state agencies that were involved, the number of unindicted co-conspirators in this action is potentially large. Analysis of the first factor therefore supports disclosure. *See, e.g., Nachamie*, 91 F. Supp.2d at 572 (disclosure appropriate where eight defendants and an unknown number of unindicted co-conspirators were alleged to have carried out the single conspiracy); *Savin*, 2001 WL 243533, at *5 (disclosure grated where "[t]he number of unindicted co-

conspirators is potentially quite large, as no fewer than six corporations, each with its own personnel, was potentially involved….").

       b.    The length and breadth of the alleged conspiracy is considerable.

With respect to the length of the alleged conspiracies, the government alleges in the Indictment that the duration of an honest services wire fraud conspiracies alleged against Percoco was "at least" a three-year period (*see* S1 ¶¶ 55), while the extortion conspiracies spanned a five-year period. (*Id.* at 49.) Each of these conspiracies is sufficiently lengthy to justify disclosure of any unindicted co-conspirators. *Nachamie*, 91 F. Supp.2d at 572 (disclosure appropriate where alleged conspiracy lasted over three years).

The breadth and complexity of the alleged conspiracies similarly support granting Percoco's request. *See Kahale*, 789 F.Supp.2d at 373 ("Certain charges, such as the fraud charges alleged here, by their nature carry a greater potential for causing unfair surprise at trial due to their complexity."). The government has alleged "wide-ranging and overlapping criminal schemes" including "bribery, corruption, and fraud," touching upon "the award of hundreds of millions of dollars in New York State … contracts and other official benefits." (S1 ¶ 1.) The government's broad allegations touch on a number of transactions and individuals. The complexity of these conspiracies supports the need for disclosure of any alleged unindicted co-conspirators.

       c.    The government's previous disclosure does not adequately identify unindicted co-conspirators.

The third factor examined by courts is whether the government has provided adequate notice of unindicted co-conspirators to the defendants through other means. *See Nachamie*, 91 F.Supp.2d at 572-73. To be sure, the government has produced millions of pages of discovery to the defendants. But the government does not "fulfill its [pre-trial disclosure] obligation merely

by providing mountains of documents to defense counsel" without any guidance as to what the government believes are the relevant events. *See United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987). When, as here, the government's pre-trial discovery leaves "key events … shrouded in mystery" disclosure through a bill of particulars is appropriate. *Id*.

The nature of the allegations against Percoco make the "mountains of documents" produced by the government largely useless in determining whom the government believes to be part of the conspiracies alleged in the Indictment. The discovery details countless interactions between employees of numerous state agencies and private actors on all kinds of issues before the State. And reviewing correspondence concerning State decisions relevant to the Energy Company or the Syracuse Developer that on their face appear innocent does not illuminate whether the parties to that correspondence are part of a conspiracy. *See Kahale*, 789 F. Supp.2d at 373 (government needed to identify the "others" referred to in the Indictment where the conduct surrounding the alleged fraudulent transactions "may outwardly appear to be legitimate business communications," creating a "greater potential for confusion over what precisely the government intend[ed] to prove at trial").

> d.      The volume of discovery is enormous for a criminal case.

The voluminous nature of the discovery in this action is a factor that further supports Percoco's request for pre-trial disclosure of unindicted co-conspirators. To date, the government has provided Percoco with an estimated 2 million pages of documents from more than 260 custodians, and many more millions of pages of documents from 18 forensic images taken of seized electronic devices. This production dwarfs the volume in other cases in which requests for disclosure of unindicted co-conspirators have been granted. *See e.g., Savin*, 2001 WL 243533, at *3 (requiring disclosure where defendant was provided with over 100,000 pages of

discovery); *Nachamie*, 91 F. Supp. 2d at 573 (requiring disclosure where defendant was provided with over 200,000 pages of discovery).

    e.    The alleged criminal conduct is not violent.

The fifth factor is the nature of the alleged criminal conduct and whether disclosure will pose any danger to co-conspirators. No such safety concerns exist here. The crimes alleged in the Indictment do not involve violence, but rather public corruption, and the government has never suggested that the defendants pose any risk to others. The fifth factor therefore supports pre-trial disclosure of any alleged unindicted co-conspirators. *See Kahale*, 789 F. Supp.2d at 373 (there does not "appear to be any legitimate basis for concern about these issues in this white-collar fraud action involving no allegations of violence."); *Savin*, 2001 WL 243533, at *5 (no concern for co-conspirators' safety when crimes alleged involved financial fraud).

    f.    There is no potential harm to the Government's investigation.

Finally, courts look to whether disclosing the identities of any known unindicted co-conspirators will harm the government's investigation. No such potential harm exists here.

Percoco and his co-defendants were arrested more than eight months ago. When those arrests occurred, the government did not keep quiet in an effort to protect its investigation. Instead, the United States Attorney held a press conference and issued a press release to announce the charges. In the press conference, the United States Attorney expressed his "hope" that the matter would go to a public trial. *See* USAOSDNY, Former Executive Deputy Secretary to the Governor and 9 others charged w/federal corruption, fraud, YouTube (Sept. 28, 2016), https://www.youtube.com/watch?v=9eFr2qTEPes (video of press conference). Further, the allegations have been the subject of intense media scrutiny. With such publicity, any alleged co-conspirator would know of the government's investigation by now. The length of time that has passed since Percoco's arrest and the publicity sought and obtained by the government undercuts

14

any claim that disclosure of the identify of unindicted co-conspirators would harm the government's investigation. *See United States v. Oruche*, No. 07 CR. 0184(WHP), 2008 WL 612694, at *4 (S.D.N.Y. Mar. 5, 2008) ("Any concern that disclosure of unindicted co-conspirators will threaten ongoing Government investigations is mitigated by the fact that the Defendants' arrests were publicized by the Government … ").

Furthermore, there is an additional aspect of this case that favors confidential disclosure of the identities of every person that the government believes was involved in the alleged conspiracies. The factual breadth of the allegations may cause certain individuals—many of whom are represented by counsel—to be concerned that the government might investigate *them* for federal crimes, too, and thus may make these individuals hesitant to meet or speak with defense counsel. Requiring the government to identify those whom it actually believes were involved in the alleged conspiracies (and thus, by implication, to identify those *not* involved) would eliminate the unfounded concerns of these possible witnesses, thus assisting the defense in investigating the government's allegations and potentially providing Percoco with exculpatory evidence.

In conclusion, this Court should require the government identify to all known co-conspirators. The failure to do so makes it impossible for Percoco to know precisely what conduct the government is alleging was criminal.

## II. The Sheer Size of the Government's Document Production Further Warrants a Bill of Particulars

The volume of discovery and the government's failure to designate which of the millions of produced documents are relevant highlights the challenging and unfair position Percoco is placed in without a bill of particulars. Indeed, courts have recognized that the "the most frequent case in which particulars are warranted is where discovery is overwhelmingly extensive *and* the

government fails to designate which documents it intends to introduce and which documents are…relevant to the defense." *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006) (emphasis in original); *see also United States v. Ramirez*, 609 F.3d 495, 503 (2d Cir. 2010) ("The district court made clear that it ordered a bill of particulars because so much discovery was produced to the defendants, not too little"); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) ("[S]ometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars.").

While the distillation of discovery may at times obviate the need for a bill of particulars, a document dump without guidance or direction does not relieve the government of its obligation to advise a defendant of the specific charges that he faces. *See Bortnovsky*, 820 F.2d at 575 ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided" as to the charges against their client); *see also Nachamie*, 91 F. Supp. 2d at 572 (S.D.N.Y. 2000) ("Because the Government has declined to identify which of the [200,000 pages of] documents provided to the defense pursuant to Rule 16(a)(1)(C) it intends to use in its case-in-chief at trial, it must, instead, respond to an appropriate bill of particulars."); *cf. United States v. Skelos*, No. 15 CR 317 (KMW), 2015 WL 6159326, at *13 (S.D.N.Y. Oct. 20, 2015) (in public corruption trial, no need for bill of particulars where "the Government ha[d] provided linesheets to accompany [produced] wiretap recordings … ; searchable folders of emails organized by their relevance and their subject matter; summaries of certain witness statements; lists of co-conspirators that it intend[ed] to produce at trial; and cover letters and indexes categorizing all the [discovery] material."); *United States v. Chalmers*, 410 F. Supp. 2d 278, 285 (S.D.N.Y. 2006) (finding that "[t]he Government's approach to . . . discovery" obviated the need for a bill of particulars because it had "attempted to distill the 'mountain' of

potential evidence for the defendants, providing them with 'roadmaps' explaining which documents support[ed] each overt act alleged in the Superseding Indictment").

The government has provided the eight defendants in this case with a mountain of discovery estimated to total nearly 11 million pages from more than 260 unique custodial files and 22 different electronic devices—with virtually no roadmap to navigate. Much of these pages may in fact be irrelevant to Percoco since they include documents related to multiple alleged conspiracies in which Percoco is not charged, but the irrelevance of those documents cannot be determined without inspecting the production, and the government has not provided any real assistance with that task. The lone index provided in connection with the government's productions contains only two categories of information: the custodian and the Bates range. "Absent further information, in order to adequately understand the nature of the charges against him, [Percoco] will be forced to comb through this veritable mountain of documents and to attempt to guess which of the numerous [events] documented therein, and conducted over a [five]-year period, are alleged by the government to have been improper." *Savin*, 2001 WL 243533, at *3. The Court should not allow the government to avoid descending to particulars by hiding behind a large and largely irrelevant production. That the government chose to throw unrelated schemes and defendants together in one Indictment makes a bill of particulars more urgent, not less. *See United States v. Lino*, No. 00 Cr. 632, 2001 WL 8356, at *13 (S.D.N.Y. Jan. 2, 2001) ("problems posed by the scope of the indictment are compounded by the voluminous amount of discovery in this case").

### III. Percoco Joins in the Motions for Bills of Particulars Filed by Co-Defendants Kelly, Aiello and Gerardi

Mr. Percoco joins and adopts the arguments set forth in the Motions for a Bill of Particulars filed by defendants Kelly, Aiello and Gerardi.

# IV.    Requested Particulars

For the reasons set forth above, the government should be required to produce a bill of particulars, providing the following specifics:

1. The identity of each State official the government alleges Percoco pressured or advised;

2. Each "official act" Percoco is alleged to have taken;

3. The relevant time period of the allegations;

4. The scope of Percoco's duties, both during his time as Deputy Secretary to the Governor, and after his resignation;

5. The identities of any unindicted co-conspirators

## CONCLUSION

For the aforementioned reasons, Percoco respectfully submits that the Court should enter an Order requiring the government to provide the requested bill of particulars.

Respectfully submitted,

Dated: New York, New York
May 19, 2017                                    SCHULTE ROTH & ZABEL LLP

By:    /s/ Barry A. Bohrer
Barry A. Bohrer
Michael L. Yaeger
Andrew D. Gladstein
Abigail F. Coster

919 Third Avenue
New York, NY 10022
Telephone: 212.756.2000

*Attorneys for Joseph Percoco*