# EXHIBIT I



*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 23, 2017

**By Electronic Mail**
*Counsel of Record*
Barry A. Bohrer, Esq.
Andrew David Gladstein, Esq.
Michael Lloyd Yaeger, Esq.
Jeffrey Adam Novack, Esq.
Michael Campion Miller, Esq.
Daniel M. Gitner, Esq.
Jun Xiang, Esq.
Stephen R. Coffey, Esq.
Scott Wendtworth Iseman, Esq.
Milton L. Williams, Jr., Esq.
Daniel C. Oliverio, Esq.
Timothy William Hoover, Esq.
Jessica Ann Masella, Esq.
Herbert L. Greenman, Esq.
Terrence M. Connors, Esq.
James William Grable, Jr., Esq.

Re:   *United States* v. *Joseph Percoco, et al.*, 16 Cr. 776 (VEC)

Dear Counsel:

We write in response to five letters sent on behalf of various defendants, requesting that the Government respond to a number of specific discovery requests.[1] As we made clear at the

---

[1] Specifically, we write to respond to (i) a December 23, 2017 letter from counsel for Joseph Gerardi ("Gerardi") seeking discovery (the "Gerardi December Letter"); (ii) a December 23, 2017 letter from counsel for Steven Aiello ("Aiello") seeking discovery (the "Aiello December Letter"); (iii) a February 16, 2017 letter from counsel for Braith Kelly ("Kelly"), on behalf of all defendants, responding to the Government's response to a prior letter seeking *Brady* material (the "February 16 Letter"); (iv) a February 20, 2017 letter from counsel for Joseph Percoco ("Percoco") making specific discovery requests in light of discovery already produced (the "February 20 Letter"); and (v) a February 23, 2017 joint letter from Aiello's and Gerardi's counsel making certain *Brady* requests (the "Aiello and Gerardi February Letter," and collectively with the other letters, the "Defense Letters"). The Government responded, in its letter to the defendants dated March 17, 2017, to the remainder of the discovery-related requests made by electronic mail or letter, including (i) a February 21, 2017 letter from Percoco's counsel seeking unredacted copies of certain search warrant affidavits (the "February 21 Letter"); and (ii) a February 23, 2017 letter from counsel for

initial pretrial conference on December 1, 2016 and in our initial discovery letters to each of the defendants, the Government is aware of, has, and will continue to comply in good faith with all of its discovery obligations. The Government has, to date, provided over 1.89 million pages of discovery as well as forensic images and extracted user files from 22 electronic devices, all of which has been accompanied by a detailed index of all of the materials provided. Of course, we recognize the continuing nature of our discovery obligations pursuant to Federal Rule of Criminal Procedure 16 ("Rule 16"), and thus we have continued to produce discoverable materials collected in the ongoing investigation, and we will continue to do so. In addition, we continue to review the items produced to ensure that materials have not been inadvertently or erroneously omitted from production. Any such items will be produced without delay.

This letter addresses the numerous additional requests submitted by the defendants, which are grouped topically and discussed below. While we are not required to do so, in an effort to aid in your review of the discovery, and to assist you in preparing for trial, the Government is providing additional information regarding certain of your requests. By voluntarily providing this information, the Government is not limiting its evidence, arguments or legal theories at trial to what is set forth below. This is by no means an exhaustive identification of potential evidence related to these specific requests, but rather a roadmap to assist with your review of discovery in light of your specific requests. If you have any questions or would like to confer further, please let us know.

### *The February 20 Letter*

**Requests 1.1.1, 1.2, 1.3 – Statements of the Defendants[2]:** Pursuant to Rule 16(a)(1)(B), in its initial productions of defendant-specific discovery made on or about December 22, 2016, the Government provided to the respective counsel copies of statements, if any, made by the defendant(s). Furthermore, in response to defense counsel's recent request for law enforcement agents' handwritten notes of Government interviews of the defendant(s), the Government, as a courtesy, produced those notes to the respective counsel. At this time, the Government is not obligated to disclose to all co-defendants the statements of any particular defendant. To the extent the defendants request statements made by others and attributed to any one of them, your request is addressed below.

**Requests 1.1.4, 1.1.5, 3.2, 7, 10.2, 12.8 – Jencks Act Materials[3]:** The defendants seek statements attributed to any of them by other individuals, and, in a variety of ways, the defendants also seek statements of others that attribute conduct to any of them. Furthermore, certain defendants expressly request all statements made by Todd Howe and other potential witnesses. *See* Aiello December Letter Requests 4, 15; Gerardi December Letter Request 10. To the extent

---

Alain Kaloyeros ("Kaloyeros"), on behalf of all defendants, regarding documents withheld from production to the Government on privilege grounds and raising other issues regarding electronic devices (the "February 23 Letter").

[2] *See also* Aiello December Letter Requests 2, 6; Gerardi December Letter Requests 1

[3] *See also* Aiello December Letter Requests 4, 7, 9, 10, 26, 27, 30; Gerardi December Letter Requests 2, 4, 10, 21, 22, 25.

these items may be considered to fall within *Giglio* v. *United States*, 405 U.S. 150 (1972), the Government refers you to its responses to Request 12.7. In addition, the Government refers you to its responses below to the defendants' requests for *Brady* disclosures.

To the extent that the materials the defendants seek may fall within the Jencks Act, the Jencks Act provides that "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). In addition, Rule 16 exempts from production, prior to trial, the materials the defendants seek: "[T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Fed. R. Crim. P. 16(a)(2). In light of these provisions, requests for discovery of Jencks Act materials in advance of trial are uniformly denied in this District. Indeed, there is no legal basis to order the disclosure of statements of Government witnesses before their direct testimony at trial. *See United States ex rel. Lucas v. Regan*, 503 F.2d 1, 3 n.1 (2d Cir. 1974); *United States* v. *Sebastian*, 497 F.2d 1267, 1268-69 (2d Cir. 1974); *Percevault*, 490 F.2d at 132.

As a matter of practice, the Government consistently produces Jencks Act material prior to the witness's testimony, and typically prior to trial. The Government's present intention is to do so in this case, by producing all or substantially all such statements, barring any special circumstances, such as issues with witness safety, no later than one week prior to trial, which will provide your client more than sufficient time to make effective use of the materials at trial. *See, e.g.*, *United States v. Ulbricht,* 14 Cr. 68 (KBF), Docket Entry No. 237, Order Denying Motion for New Trial, at 10 (S.D.N.Y. April 27, 2015) ("The plain meaning of [the Jencks Act] does not require production of 3500 material before trial. In practice, however, courts in this District require the Government to produce 3500 material at least the Friday prior to the commencement of trial and sometimes earlier."). We are also amenable to discussing an alternative schedule for pretrial deadlines and mutual disclosures and are happy to confer further on these issues.

**Requests 2.1, 2.2, 2.3, 2.4, 2.6, 2.7, 2.8, 2.10, 3.1, 10.1, 10.2, 10.3, 10.5, 11 – Items "Material" to the Defense, Items Obtained from the Defendants, Evidence Obtained By Search and Seizure, Items the Government Intends to Use at Trial, or Witnesses the Government Intends to Call at Trial[4]:** As set forth above, the Government is aware of, has complied with, and continues to comply with its Rule 16 and other obligations. To the extent the defendants are requesting in the Defense Letters that the Government produce items beyond its *Brady* v. *Maryland*, 373 U.S. 83 (1963), and Rule 16 obligations, the Government has no such obligation at this time. *See Weatherford*, 429 U.S. at 559. As you know, in all federal criminal cases, it is Rule 16 that principally governs pretrial discovery. Rule 16 is not "intended to provide the defendant with access to the entirety of the government's case against him." *See, e.g.*, *United*

---

[4] *See also* Aiello December Letter Requests 11, 14, 16, 17, 18, 19, 21, 23, 32, 33; Gerardi December Letter Requests 6, 9, 11, 12, 13, 14, 16, 18, 27, 28.

3

*States* v. *Percevault*, 490 F.2d 126, 130-31 (2d Cir. 1974). Nor does Rule 16 "entitle a criminal defendant to a broad and blind fishing expedition among items possessed by the Government on the chance that something impeaching might turn up." *United States* v. *Delacruz*, No. 14 Cr. 815 (KBF), 2015 WL 2211943, at *1 (S.D.N.Y. May 12, 2015) (internal quotation marks omitted).

To the extent the defendants are requesting an exhibit list or some other form of identification of items the Government intends to introduce in its case in chief at trial, the Government is amenable to discussing a reasonable pretrial schedule for the reciprocal exchange of various materials, including exhibit lists, after the Court has scheduled a trial date. However, we are not in a position to do so now (nor are we required to do so prior to trial, *see United States* v. *Prince*, 618 F.3d 551, 562 (6th Cir. 2010)). Similarly, the Government has no obligation at this time to disclose a list of its anticipated witnesses.

With regard to items or geolocation data that were obtained from or belong to particular defendants or uncharged third parties pursuant to search warrants or other seizures, those items have been produced and have been specifically identified in the discovery index and the Government's letter dated March 16, 2017. For example, the materials seized from Percoco's home pursuant to a search warrant have been produced at DUPECOOP11 through DUPECOOP19, DUPECOOP11A through DUPECOOP19A, DUPECOOP22, and SDNY-SCANNED_00001240 through SDNY-SCANNED_00002639. To the extent that any charged defendant might have standing to challenge such a search, the search warrant affidavit was also produced to him. We are unaware of a basis for disclosure of additional affidavits at this time. Separately, the Government did not obtain any judicial orders to intercept either wire or electronic communications pursuant to 18 U.S.C. § 2518 *et seq.* in connection with the instant investigation. *See* February 20 Letter Request 1.1.3, 10.4, 10.6; Aiello December Letter Requests 33, 35, 36; Gerardi December Letter Requests 9, 30, 31.

To the extent the defendants would like to inspect, copy, test, or take photographs of any physical or electronic items, as stated in our discovery letters dated January 9, 2017 and March 16, 2017, respectively, please let us know and we will make arrangements for you to do so.

**Requests 2.5 – Grand Jury[5]:** As the defendants are no doubt aware, disclosure of grand jury materials and information related to grand jury proceedings is permitted only when "ordered upon a showing of particularized need." *See United States* v. *Sells Engineering*, 463 U.S. 418, 443 (1983) ("[w]e have consistently construed [Rule 6(e)] . . . to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted"); *see also Dennis* v. *United States*, 384 U.S. 855, 869-870 (1966). This is because grand jury proceedings are afforded a "presumption of regularity" that may be dispelled only by particularized proof of irregularities in the grand jury process. *United States* v. *Leung*, 40 F.3d 577, 581 (2d Cir. 1994). A review of grand jury minutes "should not be permitted without concrete allegations of Government misconduct." *Id.* at 582. None of the defendants has made a particularized showing of any kind, nor are we aware of any basis to believe that grand jury material has been improperly disseminated or of any other irregularity. Accordingly, the Government will not be producing any materials or information related to grand jury proceedings at this time. In the event that certain

---

[5] *See also* Aiello December Letter Requests 9, 10, 37; Gerardi December Letter Requests 4, 5, 32.

4

grand jury minutes, such as those documenting the testimony of any witness(es), fall within *Giglio*, 405 U.S. 150, or the Jencks Act, the Government will produce those materials at the appropriate time.

**Requests 2.9, 11 – News Media:** The Government is unaware of any authority that entitles you to the information you seek under this request. Documents related to press releases or contacts with members of the media do not fall within Rule 16 and therefore are not discoverable. As a courtesy, the Government produced the two diagrams used at its September 22, 2016 press conference regarding this case (SDNYSCANNED_00015061-SDNY-SCANNED_00015062), and we also note that the Government's press release regarding this case is publicly available.

**Request 2.11 – Materials from Other Agencies:** To date, the Government has not provided reports, analyses, and/or documents to any state or local regulatory body or agency. The Office of the New York State Attorney General previously provided the Government with (1) a copy of a judicially authorized warrant to seize and search a cellphone belonging to Alain Kaloyeros (the "Kaloyeros Cellphone"), as well as the application and affidavit related to that warrant, and (2) the files extracted from the Kaloyeros Cellphone. The search warrant and related materials have been produced to Kaloyeros, while the files extracted from the Kaloyeros Cellphone have been produced to all defendants (DUPECOOP21).

**Request 5 – Potentially Privileged Materials:** As the defendants know, and as noted in a letter dated March 15, 2017 from Assistant U.S. Attorney Michael McGinnis, who is walled off from the prosecution team, the respective counsel for Kaloyeros, Percoco, and certain uncharged third-party individuals are reviewing potentially privileged documents and will either provide the defendants with privilege logs or release documents determined to be non-privileged. Such documents have been, and will continue to be, produced to all defendants promptly. Separately, to the extent the defendants are requesting privilege logs from third parties that produced documents in response to federal grand jury subpoenas issued in connection with this investigation, the Government addressed this inquiry in its letter dated March 16, 2017.

**Request 6 – Defendant's Prior Criminal Record:** The Government has produced the criminal record, if any, of each of the defendants to his respective counsel.

**Request 8 – Scientific Tests[6]:** The Government is unaware of any scientific analyses or tests to which you are entitled that have not already been produced. With respect to Request 8.1, we note again that electronic devices seized pursuant to search warrants that are in the Government's possession remain available for your inspection, photographing, and/or copying, upon request.

**Request 9 - Evidence Admissible Pursuant to Fed. R. Evid. 404(b)[7]:** As the defendants know, the Government has no obligation at this time to provide notice of evidence of a crime, wrong, or other act that it intends to introduce at trial pursuant to Federal Rule of Evidence 404(b)(2). The Government need only provide "reasonable notice of the general notice of any

---

[6] *See also* Aiello December Letter Request 13; Gerardi December Letter Request 8.

[7] *See also* Aiello December Letter Request 20; Gerardi December Letter Request 15.

such evidence" sometime "before trial." Fed. R. Evid. 404(b)(2)(A)-(B). This requirement does not obligate the Government to provide "unduly early notice" because "early disclosure presents a significant burden on preparation of the Government's case." *United States* v. *Giffen*, 379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004) (internal quotation marks and alteration omitted). That is why "notice is typically provided no more than two to three weeks before trial." *United States* v. *Livoti*, 8 F. Supp. 2d 246, 250 (S.D.N.Y. 1998). In cases in which there is an "'absence of any threat to the safety of prospective witnesses and the ... Rule 404(b) evidence [is important to] th[e] action,'" courts in this District have generally found that disclosures made approximately 30 to 45 days prior to trial constitute "reasonable notice" to defendants. *Giffen*, 379 F. Supp. 2d at 344 (quoting *United States* v. *Nachamie*, 91 F. Supp. 2d 565, 577 (S.D.N.Y. 2000)); *see, e.g., id.* (45 days); *Nachamie*, 91 F. Supp. 2d at 577 (30 days). The Government is aware of its disclosure obligation and will provide any notice under Federal of Evidence 404(b) at the appropriate time.

**Request 10.7 – Mail Covers and Trash Pulls:** None of the materials produced to the defendants to date was obtained using either a mail cover or a trash pull, nor is the Government aware of discoverable materials obtained in this manner.

**Request 10.8 – Informants and Undercover Officers:** To date, the Government has not utilized either a paid informant or an undercover officer during this investigation. Similarly, the Government is not aware of any person having elicited statements from any of the defendants at the request of the Government or agents on the prosecution team. Voluntary statements made by certain defendants to law enforcement agents and/or prosecutors were disclosed to the appropriate individual counsel on or about December 22, 2016. *See* Aiello December Letter Request 8; Gerardi December Letter Request 3.

**Request 12.7 - *Giglio* Material[8]:** With regard to the defendants' many requests for material that might fall within *Giglio* v. *United States*, 405 U.S. 150 (1972), as you know, the uniform practice in this District, which the Government intends to follow, is that *Giglio* and Jencks Act materials are produced simultaneously, shortly before trial. This practice has been widely held to be sufficient to satisfy the requirement that *Giglio* be produced "in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously." *United States* v. *Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007). Immediate disclosure of such material is not warranted simply because the defendants prefer it. *See, e.g.*, *United States* v. *Hernandez*, No. 09 Cr. 625 (HB), 2010 WL 26544, at *6 (S.D.N.Y. Jan. 6, 2010) (declining to order immediate disclosure of *Giglio* material, because the Government stated it would provide both *Giglio* and Jencks Act material "shortly before trial"); *United States* v. *Davis*, No. 06 Cr. 911 (LBS), 2009 WL 637164, at *14 (S.D.N.Y. March 11, 2009) ("The Second Circuit has held that a request for immediate or early disclosure [of *Giglio* material] has no basis in the law."). Following the usual practice in this District, the Government intends to begin producing *Giglio* and Jencks Act material no later than one week before trial. As stated above, we also are amenable to discussing an alternative schedule for mutual pretrial disclosures. We also reiterate our request that the defendants disclose prior statements of witnesses they will call to testify. *See* Fed. R. Crim. P. 26.2; *United States* v. *Nobles*, 422 U.S. 225 (1975). We request that such material be provided on

---

[8] *See also* Aiello December Letter Requests 24, 25, 28, 29, 34; Gerardi December Letter Requests 19, 20, 23, 24, 29.

the same basis upon which we agree to supply the defendants with such material relating to Government witnesses.

**Request 12.7.1 – Prior Criminal Record of Todd Howe and Other Government Witnesses[9]:** The Government is aware of no obligation to disclose at this time the criminal record of cooperating witnesses or any other potential Government witness.  To the extent that the criminal record of Howe or other Government witnesses falls within *Giglio*, 405 U.S. 150, or the Jencks Act, the Government will produce that material at the appropriate time.  As a courtesy, the Government notes that, with respect to Howe's convictions of certain federal crimes in connection with the instant investigation, the defendants may access relevant documents, which are publicly filed, under the caption *United States* v. *Howe*, 16 Cr. 632 (RMB) (S.D.N.Y. 2016).

## *The Aiello December Letter*

**Request 22 – Disclosure of Overt Acts[10]:**  We are not aware of any authority requiring the Government to identify in either the indictment or a bill of particulars all the overt acts of the charged conspiracies that it may seek to prove at trial.  To the contrary, "[t]here is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge."  *United States* v. *Carroll*, 510 F.2d 507, 509 (2d Cir. 1975); *see also United States* v. *Abakporo*, 959 F. Supp. 2d 382, 393 n.51 (S.D.N.Y. 2013) ("[D]etailed evidence of a conspiracy is generally unavailable to defendants through a bill of particulars, and overt acts in furtherance of the conspiracy need not be disclosed." (internal quotation marks omitted)); *Nachamie*, 91 F. Supp. 2d at 574-76 (denying requests for dates each conspirator joined conspiracy and information about overt acts); *United States* v. *Jimenez*, 824 F.Supp. 351, 363 (S.D.N.Y. 1993) (noting that requests for "whens" "wheres" and "with whoms" are routinely denied).  Furthermore, the Government need not prove an overt act to convict the defendants of certain charges contained in the indictment.  *See, e.g.*, *United States* v. *Roy*, 783 F.3d 418, 420 (2d Cir. 2015) ("[A] conviction under [Title 18, United States Code, Section 1349, wire fraud conspiracy] does not require proof of an overt act.").

## *The February 16 Letter and Other Requests for Materials Related to Todd Howe*

The February 16 Letter renewed the defendants' request by letter dated January 25, 2017 (the "January 25 Letter") for all instances known to the Government in which Todd Howe made false statements to co-conspirators or altered communications regarding the nature and/or objectives of the conspiracy to co-conspirators during the pendency of the conspiracy (the "Altered Howe Materials").  Similar requests were included in the February 20 Letter (Request 12), Aiello December Letter (Requests 4, 12), and Gerardi December Letter (Requests 7, 33).  Although the Government does not believe that any Altered Howe Materials of which the Government is aware contain exculpatory evidence, as opposed to impeachment evidence, under *Brady*, *see United States* v. *Coppa*, 267 F.3d 132, 142 (2d Cir. 2001), we are providing the following information to you in an abundance of caution and to assist in your trial preparation.  The statements of Howe

---

[9] *See also* Aiello December Letter request 3, 31; Gerardi December Letter Request 26.

[10] *See also* Gerardi December Letter Request 17.

and other witnesses, as memorialized in notes, reports or in grand jury testimony, will themselves be disclosed at the appropriate time consistent with the Government's discovery obligations.

Specifically, during the course of discussions with the Government, Howe has provided the following information, in substance and in part:

- In relation to a February 16, 2010 email from Howe to Joseph Percoco with the subject "Meeting with Michael" [DUPECOOP20A], Howe has stated that he often identified himself in emails from his Whiteman Osterman and Hanna, LLP email address as a partner of Whiteman Osterman and Hanna, even though he was not a partner.

- In an email dated May 8, 2014 with the subject "Re: NY PSC Meeting" [CPV-_SDNYGJ-_000013098], Howe responded to an email from Peter Kelly in which Kelly relayed a summary of a meeting of the New York Public Service Commission in which factors regarding the need for new power generation were discussed. Howe wrote, "Glaser"s [sic] fingerprints as we have discussed. The table is being set. Did you see that email to your personal account?" Howe has stated that his email was intended to attribute credit to Howard Glaser for what was perceived to be a helpful meeting for Competitive Power Ventures ("CPV") but, upon review of the email, Howe stated that he did not recall Glaser playing any role in influencing that particular meeting.

- In an email dated September 21, 2015 with the subject "Re:" [SDNY_000829464], Howe responded to an email from Alain Kaloyeros in which Kaloyeros wrote, in substance and in part, that he wanted to know whether he had the support of New York State leadership regarding an investigation by the New York State Attorney General's Office into potential criminal conduct involving Kaloyeros. Howe replied, in part, "With you 100%! So is gov. Jp was very clear." Howe has stated that "Jp" referred to Joseph Percoco. Howe further stated that he did not speak to Percoco in response to Kaloyeros's email, as was implied by Howe's email ("Jp was very clear.").

- In an email dated July 21, 2014 [SDNY_000734206], Howe told Joseph Percoco that a representative of Whiteman Osterman and Hanna had agreed to make monthly payments to Percoco in an amount up to $7,500. Howe has stated to the Government that, in fact, he had not discussed with the representative of Whiteman Osterman and Hanna the possibility of paying Percoco. More generally, Howe has stated that, prior to Steven Aiello and Joseph Gerardi agreeing to make payments to Percoco in exchange for official action, Percoco had also asked Howe to ask other clients of Howe, including representatives of Whiteman Osterman and Hanna and of LPCiminelli, to make payments to Percoco. Although Howe told Percoco that he (Howe) had asked these clients to make such payments, in fact he never spoke to representatives of Whiteman Osterman and Hanna or of LPCiminelli regarding payments for Percoco.

- In an email chain dated October 1, 2014 with the subject "Re: Fat Man" [SDNY_000192976], Howe and Percoco discussed payments in exchange for official action (referred to as a "shipment" in the email chain). Howe wrote in reference to the payments, "Going to be about one a week," and later, "there will be a box a week from

8

now on give or take a few days here or there." Howe has stated stated that although his agreement with Stephen Aiello and Joseph Gerardi for COR to make payments to Percoco had not included a weekly payment schedule, Howe told Percoco that the payments would be approximately weekly.

Apart from the above, and that previously disclosed, the Government is not aware of additional Altered Howe Materials. As the Government continues to prepare for trial, if we identify any additional Altered Howe Materials, we will disclose those materials to you.

Separately, the Government has identified an additional email not referenced in the Complaint that was revised by Howe prior to forwarding to another recipient who is not a defendant in this case. We direct your attention to the emails bearing Bates numbers SDNY_000723946 and SDNY_000781099, which reflect that on or about January 13, 2015, Howe forwarded an email he received from the newly appointed Secretary to the Governor to two colleagues at Whiteman Osterman and Hanna. However, in forwarding the email chain, Howe altered the Secretary's email by adding to that email the following sentences: "I'd like to grab dinner in NYC over next few weeks to pick your brain. AC suggested we do sooner than later. Whenever good for you."

### *Additional Requests in the Aiello and Gerardi February Letter*

The Aiello and Gerardi February Letter, dated February 23, 2017, supplements the January 25 and February 16 Letters with additional requests for purported *Brady* material regarding Todd Howe. The February 23 Letter makes a number of factual and legal assertions without attribution or support. For example, the Aiello and Gerardi February Letter opines that "[s]ince giving a false statement to a federal official is a felony under 18 U.S.C. § 1001, we are entitled to the immediate disclosure of every instance where Mr. Howe lied to you, members of your office and/or any law enforcement agent," and that "[t]he fact that the Government now embraces Mr. Howe as a cooperator and principal witness neither cures his dishonesty nor alleviates your duty to provide us with *Brady* material. Indeed, your reliance on Mr. Howe actually enhances your duty to disclose such material to us now."

The Government is not aware of any authority standing for the proposition that the defense is "entitled to the immediate disclosure of every instance where Mr. Howe lied" and "the content of each separate lie and the time and place of where the lie was made." Nor is the Government aware of any authority to support the assertion that the defense is entitled to evidence of a false statements charge against another individual. If the defense is aware of such legal authority, please provide it so that we may evaluate it and make any necessary disclosures.[11] As noted above, the

---

[11] To the extent that the Aiello and Gerardi February Letter does refer to caselaw, it relies on decisions merely supporting the propositions that a witness's statement that a defendant declined to offer a bribe constituted *Brady* material, *see United States* v. *Triumph*, 544 F.3d 149, 162 (2d Cir. 2008), and that *Brady* material must be disclosed "in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial," *United States* v. *Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007). Neither

9

statements of Howe and other potential witnesses, as memorialized in notes, reports or in grand jury testimony, will be disclosed at the appropriate time consistent with the Government's discovery, *Giglio*, and Jencks Act obligations.

*Additional Discovery Matters*

In the Government's letter to the defendants dated March 16, 2017 (the "Government's March Letter"), we noted that we would inquire further as to whether the Alain Kaloyeros cellphone extraction produced at DUPECOOP21 was created using Cellebrite technology. *See* Government's March Letter at 2 n.2. We have now confirmed that DUPECOOP21 was extracted using Cellebrite and is subject to the same limitations on email extraction described in the Government's March Letter. *See id.* at 2.

Separately, in the February 23 Letter from counsel for Alain Kaloyeros, the defendants inquired about certain emails from the Pitts Dell device extraction and forensic image (DUPECOOP10 and DUPECOOP10A) and the Percoco Dell device (DUPECOOP12) that they said were missing content. *See* February 23 Letter at 2. Counsel then provided the Government with a spreadsheet containing the original folder paths and other identifying information for the emails referenced in the February 23 Letter (the "Spreadsheet"). The Government's in-house technicians have reviewed a representative sample of the emails listed in the Spreadsheet and have found, without exception in the sample, that the emails, based on the context, appear to have been originally written either (1) with only a subject line and no body text, or (2) with attachment(s) but no body text. For example:

- With respect to an email sent on December 17, 2014 from info@canterburydemocrats.com to Yanina Daigle with the subject line "reminder: call – can you patch me in?" and no body text, it appears that the sender included all the information in the subject line.[12]

- Similarly, with respect to an email sent on September 21, 2015 from Chris Pitts's Gmail address to his CPV email address with the subject line "6 Florida Park Dr N, Palm Coast, FL 32137" and no body text, it appears that the sender included all the information in the subject line.[13]

---

of these opinions supports the notion that the defense is "entitled to the immediate disclosure of every instance where [a witness] lied."

[12] DUPECOOP10 at file path: \Pitts, Christopher\QNHA1_1.E01\[Unnamed Disk Image]\Win7\[File SystemRoot]\Users\cpitts\AppData\Local\Microsoft\Outlook\ info@canterburydemocrats.com.pst\Top of Outlook data file\Inbox\Sent

[13] DUPECOOP10A at file path: \2015R00444_Discovery1\PITTS\PITTS\DUPECOOP10A\ PITTS - EMAIL EXTRACTED FROM FORENSIC IMAGES\cpitts@cpv.com (2).pst\Top of Outlook data file\Personal Folders\Root - Mailbox\IPM_SUBTREE\Inbox

10

- Meanwhile, an email sent on September 5, 2015 from Kimberly Kelly to Chris Pitts and Peter Kelly with the subject line "Applesauce pics for Facebook?" does not contain any body text but does attach photograph with the file name "photo.JPG."[14]

- The same is true of an email sent on August 13, 2015 from Chris Pitts to Peter Kelly with the subject line "trump," which has no body text but does attach a file named "11846764_10207237868725937_4687496789323774168_n.jpg."[15]

In view of these findings, it appears that the documents identified on DUPECOOP10, DUPECOOP10A, and DUPECOOP12 were produced as they exist on the relevant device. If you identify any specific emails about which you have further questions, please feel free to let us know.

### Conclusion

The Government remains available to confer further on any of the topics outlined above. The Government also requests that the defendants confirm whether they have, to date, met their respective reciprocal disclosure obligations under Rule 16(b) and we renew our request for reciprocal disclosure from each of the defendants.

Very truly yours,

JOON H. KIM
Acting United States Attorney

By: /s/ David Zhou
    Janis Echenberg/Robert Boone
    David Zhou/Matthew Podolsky
    Assistant United States Attorneys
    (212) 637-2597/2208/2438/1947

---

[14] DUPECOOP10 at file path: \Pitts, Christopher\QNHA1_1.E01\[Unnamed Disk Image]\Win7\[File System Root]\Users\cpitts\AppData\Local\Microsoft\Outlook\quietcornerdems@gmail.com(2).pst\Top of Outlook data file\Inbox

[15] DUPECOOP10 at file path: \Pitts, Christopher\QNHA1_1.E01\[Unnamed Disk Image]\Win7\[File System Root]\Users\cpitts\AppData\Local\Microsoft\Outlook\quietcornerdems@gmail.com.pst\Top of Outlook data file\[Gmail]\Sent Mail