# EXHIBIT J

Xb46rperc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA

        v.                           16 CR 776 (VEC)

JOSEPH PERCOCO,
ALAIN KALOYEROS,
PETER GALBRAITH KELLY, JR.,
STEVEN AIELLO,
JOSEPH GERARDI,
LOUIS CIMINELLI,
MICHAEL LAIPPLE,
KEVIN SCHULER,
                                  Conference
            Defendants.

------------------------------x

                                  New York, N.Y.
                                  April 6, 2017
                                  10:00 a.m.

Before:

        HON. VALERIE E. CAPRONI

                                  District Judge

        APPEARANCES

JOON T. KIM
     Acting United States Attorney for the
     Southern District of New York
JANIS ECHENBERG
DAVID ZHOU
ROBERT L. BOONE
MATTHEW D. PODOLSKY
     Assistant United States Attorneys

```
 1                  APPEARANCES

 2

 3   BARRY A. BOHRER
     MICHAEL L. YAEGER
     ANDREW D. GLADSTEIN
 4   ABIGAIL F. COSTER
          Attorneys for Defendant Percoco
 5

 6   MICHAEL C. MILLER
     KATHERINE M. DUBYAK
 7   JEFFREY A. NOVACK
          Attorneys for Defendant Kaloyeros
 8

 9   DANIEL M. GITNER
          Attorney for Defendant Kelly
10

11   STEPHEN R. COFFEY
     SCOTT W. ISEMAN
12        Attorneys for Defendant Aiello

13

14   MILTON WILLIAMS
          Attorney for Defendant Gerardi
15

16   TIMOTHY HOOVER
     DANIEL C. OLIVERIO
          Attorneys for Defendant Ciminelli
17

18   HERBERT L. GREENMAN
          Attorney for Defendant Liapple
19

20   TERRENCE M. CONNORS
          Attorney for Defendant Schuler
21

22

23

24

25
```

Xb46rpas1C

1           (Case called)

2           THE COURT:  Please be seated everyone.  Let's start

3    with the government.  Can you give me an update on where we are

4    on discovery.

5           MS. ECHENBERG:  Your Honor, I think we have provided

6    you a lot of detail, but I'll give you the status of where we

7    are now.  Discovery is substantially complete.  All of the

8    materials that the government had collected and relied on to

9    bring its charges have been produced, and those have been with

10   the defendants since the end of March.  We do, as we noted in

11   our letters, have an ongoing investigation.  We are producing

12   those materials essentially in real time.  As we obtain them,

13   we are processing them and turning them over to the defendants.

14          We provided them an updated discovery index last

15   evening and we noted the materials that are forthcoming.  Two

16   date we have produced 2 million pages of documents from

17   hundreds of custodians, and we have also produced the forensic

18   images and the extracted user files of 22 electronic devices.

19   The vast majority of that discovery was produced by the end of

20   January.  And, as I said, all of the materials we relied on for

21   our charges were complete by the end of March.

22          As we demonstrated by our letters, we take those

23   obligations seriously and we have been efficiently producing

24   materials, and we have been in very close contact with the

25   defendants, both through correspondence directly between us and

1    through the letters to the Court answering their inquiries as

2    they come in.

3            Would you like me to address the motion schedule and

4    trial as well?

5            THE COURT:  Not yet.  Let me ask you something.  I

6    know that the investigation is continuing, and I don't want you

7    to give me any state secrets.  But as of right now, does the

8    government anticipate that there is going to be any kind of a

9    superseder?

10           MS. ECHENBERG:  Your Honor, we can't rule out that

11   possibility.  We do have an ongoing investigation.  If we are

12   going to supersede, we will do so at the earliest possible

13   opportunity, and we will be very mindful of whatever schedule

14   that we set today.  We do think, even given that, it is

15   appropriate to set a motion and a trial schedule today.

16           THE COURT:  I am going to set a motion schedule and

17   trial schedule.

18           MS. ECHENBERG:  Great.

19           THE COURT:  Assuming all the defendants say in one

20   case, how long do you think the trial is going to be?

21           MS. ECHENBERG:  I don't think our estimate has changed

22   from the initial conference.  We would say six to eight weeks.

23           THE COURT:  Would the defendants like to say anything

24   about discovery?  You generally have a slightly different view.

25           MR. COFFEY:  My name is Steve Coffey.  I represent Mr.

1    Aiello.  We like to be called the Syracuse defendants.  We sent

2    a letter to you yesterday with regard to Brady.

3              THE COURT:  I read your letter.  How did they respond?

4              MR. COFFEY:  Their response was basically they are

5    unaware of Brady.  If there are 2 million documents, there has

6    to be some Brady in there someplace.

7              THE COURT:  That reminds me of an old joke, but that

8    isn't necessarily true.

9              MR. COFFEY:  We had a conference last week, and that

10   question was specifically raised with the government: do you

11   have Brady?  The answer in response was that they were aware of

12   their duty.  Judge, we know they are aware of their duty, so

13   that is not really the issue.  The issue is either they have it

14   or they don't.

15             At this point in time they certainly should know

16   whether they have Brady.  Brady is self-executing.  We have

17   submitted a case to you from the district court in which the

18   government's response of being unaware is not an appropriate

19   response.

20             We would like the Court to ask the government:  Do you

21   have Brady?  If they do, Judge, it is our position that they

22   are required to turn that over to us immediately.  How do we

23   possibly respond to them saying they are aware of it and they

24   will proceed accordingly?  From our perspective, Judge, on a

25   limited basis we are asking them if they have Brady, to turn it

6

1   over to us immediately.

2          THE COURT:  I could be wrong, but my reading of their

3   letter was they didn't have <u>Brady</u> in the sense of evidence

4   which tends to exculpate the defendants of the charges although

5   they do have some impeachment information which they provided

6   on Todd Howe.

7          Did I get the essence of your letter correct?

8          MS. ECHENBERG:  That is absolutely correct, your

9   Honor.  We made clear to defendants on multiple occasions in

10  writing and in the call that was just referenced that we are

11  unaware of <u>Brady</u> material as it goes to exculpatory evidence.

12  The defendants have written us several letters, all of which we

13  have responded to.  They have asked specific inquiries as to

14  Howe.  We have responded to those specific inquiries.

15         In fact, we think the statements that could be

16  characterized and are characterized as impeachment evidence

17  also exhibit the corrupt relationship between the defendants

18  and we actually think are evidence of the charges in our case.

19         MR. COFFEY:  Judge, that being the case, obviously we

20  are bound by the statement of the prosecution.  My experience

21  in federal court is that federal judges do not look kindly at

22  the time of trial if they find there was <u>Brady</u>.

23         We have had now a specific answer by the government.

24  If that is the case, then we obviously have to accept it at

25  this point.  But we wanted to bring that to the Court so we now

Xb46rperc

1   know specifically in front of you that the government has no

2   Brady material.  That being the case, Judge, I think that

3   answers our inquiry.

4          MS. ECHENBERG:  Your Honor, may I respond briefly?

5          THE COURT:  Yes.

6          MS. ECHENBERG:  To be abundantly clear, and this is

7   the statement we have made repeatedly, we are unaware of

8   impeachment material.  As we noted in our letter to the Court,

9   it is not the government's -- excuse me.  Brady material.

10          It is not the government's obligation under any case

11   law that we are aware of to review every piece of the millions

12   of pages that we have produced to identify such material.  It

13   is not our obligation to do the defendants' preparation or

14   investigation for them.  But to the extent we are aware or

15   become aware, to the extent we become aware, let me be clear,

16   of any Brady material, we understand our obligation and we will

17   promptly turn that over to the defense.

18          THE COURT:  That is correct.  To the extent you become

19   aware of Brady information, provide it promptly.  I don't know

20   what else I can do.

21          MR. COFFEY:  I understand, Judge.

22          THE COURT:  You have the information though.  They

23   disclosed to you all the materials.  If there is a defense

24   theory that makes some of this information Brady, that is your

25   obligation.  They have given you the information.

1      MR. COFFEY:  Judge, all I can do is raise the

2   question.  We are back to the fact that they are unaware or may

3   be aware or could be aware.

4      THE COURT:  I heard very clearly they are not aware.

5      MR. COFFEY:  Thank you, Judge.

6      THE COURT:  The next issue is whether I should set a

7   bifurcated motion schedule to let motions to transfer and

8   motions to sever proceed in advance of all other defense

9   pretrial motions.  Would the defense like to be heard on that

10  issue?

11     MR. HOOVER:  Yes, Judge, Tim Hoover for Louis

12  Ciminelli.  Good morning again.

13     The Buffalo defendants filed their motion to dismiss

14  for failure of the indictment to sufficiently allege venue and

15  for transfer on February 7th.  There was letter briefing about

16  whether there would be a schedule set then or whether it would

17  be held until today.  It has been held until today per your

18  order.

19     Judge, for the reasons that have been set forth in

20  your order -- and I think most, if not all, of the defendants

21  are amenable to a bifurcated motion schedule with regard to

22  severance and transfer -- you should do so.  Even if the Court

23  has indicated its desire to set a trial date today, an early

24  decision or earlier decision on both severance and transfer

25  will bear on who ultimately goes to trial.

9

```
1          Despite the government's letter of last night, the

2    idea that all of the 2 million, actually closer to 11 million,

3    pages of documents will have to be reviewed if there is a

4    transfer or severance we strenuously disagree with.  Even the

5    government, Judge, in the footnote 2 to its letter last night

6    indicated a willingness, at least as to the transfer motion, to

7    have an early schedule for them.  So that's our request, Judge.

8          The other thing I would add, the government cited a

9    few cases in its letter last night to you about the supposed

10   practice in this court of always booting severance motions to

11   right before trial based on a variety of factors.  The one that

12   we have heard from the government a variety of times is that

13   some defendants may plead.

14          I can put on the record for the Court, at least for

15   the Buffalo defendants, that there is no indication or desire

16   along those lines.  But there is a slew of other Southern

17   District cases, Judge, where the Court will decide severance

18   motions either with all the other motions, in other words, not

19   hold them, or talk about the efficacy of deciding them early.

20          Our request, Judge, and we propose a time line that

21   might look otherwise aggressive but for the fact, at least for

22   the transfer motion, the government has had its 59 days.

23          THE COURT:  Anybody else want to be heard?

24          MR. GITNER:  Dan Gitner.  I do not represent one of

25   the Buffalo defendants.  Sorry.  I'm going to let Mr. Connors
```

1    go first.

2         MR. CONNORS:  If I may, your Honor, to support Mr.

3    Hoover's request of you, I did file a supplemental letter on

4    behalf of Kevin Schuler.  In that letter I thought that it

5    would be important given the conflicts that were described to

6    you with respect to trial dates as well as the problems that we

7    encountered with respect to discovery.

8         We can accomplish a great deal and we can move this

9    case along a trial track at a much more expedited pace if we

10   are able to address the fundamental foundational issues, and

11   that is why are we going to be trying the case.

12        If your Honor is inclined to grant our motion to

13   transfer venue back to Buffalo, that would open up a host of

14   issues, of course, that could be concluded.  We would be able

15   to resolve them.  And the scheduling problems that are inherent

16   to the trial date and the review of the voluminous discovery

17   now would be solved and would be handled by the judge in the

18   Western District of New York.

19        THE COURT:  That doesn't solve it.  That only shifts

20   the burden of deciding it.

21        MR. CONNORS:  It does.  But what it solves for me,

22   your Honor, is the calendar congestion created by all the

23   defendants possibly being tried in the Southern District of New

24   York.  That would be solved.  I respectfully submit that it is

25   a good way to move the case forward, accomplish something, and

1    at the same time ensure that we would have the right to have

2    that motion heard and a little bit of time to adequately

3    address the voluminous records we are looking to.

4         We have five people in our office going through them

5    on a regular basis.  We are working hard.  We have worked with

6    the government to try to resolve whenever there have been

7    glitches.  The defense has worked together.  We are really

8    trying to move this, but there are inherent problems, as I am

9    sure you are well aware.

10        THE COURT:  That's true, but those inherent problems

11   exist whether you are in New York or in Buffalo.  Reviewing

12   2 million documents or 5 million documents is a review of

13   5 million documents whether you are in Buffalo or in New York.

14        MR. CONNORS:  But if we do go to Buffalo, your Honor,

15   there are certain trial problems that conflict.  Counsel is

16   engaged in several different other cases that may have

17   priority.

18        THE COURT:  They will conflict whether you are on

19   trial in Manhattan or in Buffalo.  You can't try two cases at

20   the same time in Buffalo any more than you can try one in

21   Manhattan and one in Buffalo.

22        MR. CONNORS:  But the judges in Buffalo, in the

23   Western District, will be able to move their calendar in such a

24   way as it will accommodate a fair trial for everyone.  For

25   example, the case that is scheduled in January, with a number

1  of defendants, four of us are involved in that case.  If this

2  case were to be assigned to Judge Wolford, and it may very well

3  be -- it will have to be assigned to Judge Geraci or Wolford.

4  It can't be assigned to Judge Vilardo; he was my partner for 30

5  years.  If that happens, she can then establish which case has

6  priority and when it gets tried.

7       The other thing that may happen, which will not happen

8  in our case, is that the case that is scheduled for January may

9  be susceptible to severances.  It is in motion practice

10  already.  It may be susceptible to disposing of some of the

11  defendants by virtue of a plea.

12       THE COURT:  That can happen even if you're in

13  Manhattan.  I encourage you to consider that.  Manhattan is a

14  wonderful place to be.  It's the center of the universe.

15       MR. CONNORS:  I grew up in Queens, your Honor.  I know

16  it well.

17       THE COURT:  Anybody else?

18       MR. CONNORS:  Thank you.

19       MR. GITNER:  Thank you, your Honor.  I represent Mr.

20  Kelly.  I'm not part of the Buffalo contingent.  I will stay in

21  Manhattan.  We have not proposed a bifurcated schedule for the

22  Manhattan and Syracuse defendants; however, we are not averse

23  to it at all.

24       I thought it might be help, if your Honor will indulge

25  me for a moment.  I won't repeat anything that has been said in

1    the letters.  I did a chart of the indictment and of the

2    charges here.  I would like to hand it up, with your Honor's

3    permission, and walk your Honor through it.

4              THE COURT:  Sure.

5              MR. GITNER:  I think the chart helps explain what is

6    animating the multiple letters and concerns from the defense.

7              By way of quick orientation while your Honor is

8    looking at it, the indictment, in our view, charges several

9    schemes.  There are 14 counts.  There is no count in which all

10   defendants are charged.  In fact, no defendant is charged with

11   even a majority of the counts.  There is no scheme in which all

12   defendants are charged.  My client is charged with two counts,

13   participating in one scheme.

14             THE COURT:  Who is your client again?

15             MR. GITNER:  Mr. Kelly.  I did the chart, so he is the

16   first person listed.  You can see he is charged in what I will

17   call the green scheme, what the indictment essentially refers

18   to as the energy company bribery allegations.

19             The indictment, by the way, says that there are

20   essentially two overlapping schemes.  But the indictment is so

21   complicated that the defense disagrees with that.  The defense

22   thinks, and I think it screams, frankly, from the indictment,

23   there are actually four schemes.

24             Looking at the chart, you can see at the top of the

25   chart the list of the defendants.  Along the left are the

charges.  They are not in order in terms of counts because if I
put them in order, the chart wouldn't make sense.  I did my
best to organize them the best way.

         I want to draw your attention to the colors.  The
green is the energy company scheme, the pink is the Syracuse
bribery allegations, the blue would be the Syracuse RFP
allegations, and the orange would be the Buffalo RFP
allegations.

         If you walk through, using my client as an example,
Mr. Kelly, the first defendant listed, he is alleged in the
indictment to have bribed Mr. Percoco for the benefit of his
energy company employer.  That's Counts Nine and Twelve.
That's the green scheme.

         Mr. Percoco, not my client, is charged not just with
the green scheme, with receiving the bribes, but he is also
charged with the pink scheme, receiving bribes allegedly from
the Syracuse defendants.

         The Syracuse defendants are charged not just with the
pink scheme but also the blue scheme, that's what I have called
and I think the indictment calls the Syracuse RFP allegations
schemes.

         One defendant, Dr. Kaloyeros, who is not a Syracuse
defendant, is charged not just with the blue scheme but also
with the orange scheme, which is the Buffalo RFP allegations.

         And the Buffalo defendants, like Mr. Kelly, are just

Xb46perc

 1    charged in one scheme.  They only get one color, orange.

 2            That is essentially how Mr. Kelly ends up sort of tied

 3    or keyed together with the Buffalo defendants and with six

 4    defendants who have nothing to do with the green scheme that he

 5    is charged with.

 6            What is animating a lot of what the defense is talking

 7    about when we talk about severance and potential motions to

 8    transfer is exactly this issue: how the indictment is

 9    structured.  I didn't think it screams from a quick reading of

10    the indictment, so I hope the chart is helpful.  As I think the

11    Court already appreciates, the motion practice will very much

12    reflect our concerns about whether severance here is

13    appropriate.

14            But it is even more complicated than that, Judge.  If

15    you look horizontally and not vertically, you can see that some

16    of the defendants are charged with conspiracy that joins two

17    schemes.  Again using my client as an example, if you look at

18    the fourth line from the bottom, it starts with Count Nine.

19    That is the honest services fraud conspiracy.

20            You can see he is charged in a conspiracy that spans

21    both green and pink, both the energy company and Syracuse

22    bribery allegations.  The government essentially lumps those

23    two sets of allegations into one conspiracy and calls it one

24    count.  The same thing happens in Count One, where you have a

25    conspiracy that lumps together the blue and the orange.

 1               So it is not simply that they are tied together

 2    through the schemes that I explained earlier, but also

 3    conspiracies that seem, from my point of view at least, to be

 4    duplicitous in the sense that they are charging two schemes as

 5    one.  That will also be part of the motion practice.  I am not

 6    here to argue that now but just to explain to your Honor what

 7    the issues are as we see them.

 8               Frankly, it is what makes the nature of the review,

 9    and I think what Mr. Connors was referring to and perhaps to

10    your question, very difficult here.  Taking my client again as

11    the example, charged in the green scheme, the government has

12    before in conversations with us and in its letters doubled

13    down, has essentially said -- not essentially said -- has said

14    that someone like Mr. Kelly has to review all 2 million or

15    11 million pages, depending on how you look at how much

16    discovery there is here.

17               Even though he is only charged in the green scheme,

18    they are telling me that I also, because of the nature of this

19    case and the way it is indicted, have to review the orange

20    scheme at the top right.  They have said that point-blank.  The

21    same goes for every defendant.

22               In fact, if you look at the indictment the way it is

23    charged, in the green scheme allegations there is actually a

24    paragraph that repeats and realleges against Mr. Kelly all of

25    the allegations against the Buffalo defendants even though I

1   think it is going to be undisputed that Mr. Kelly had

2   absolutely nothing to do with the Buffalo RFP scheme.

3        So the nature of our review and our discovery review

4   burden is very much affected by your Honor's potential ruling

5   on severance, which is why I think you are hearing a lot of

6   angst from the defense group about whether or not your Honor is

7   able to or willing to either bifurcate or somehow prioritize

8   severance decisions.

9        To that end, the government in its letter stated that

10  it's typical or commonplace in this courthouse for severance to

11  fall by the wayside until the end of the trial.  I would repeat

12  what the Buffalo defendants have said.  There is no reason that

13  I know of to think that any defendant has any plan to do

14  anything other than clear his name and go to trial.

15       I'm not sure that the cases they cited, which are 12,

16  18, and 20 years old and have to do with the gang context, have

17  anything to do with whether or not your Honor should decide

18  severance early in this kind of case.

19       In our letter we suggested a few suggestions in

20  addition to potential severance that might make our discovery

21  review burden a little easier, including early disclosures,

22  things like that.  I know, your Honor, we are not here to

23  litigate that and your Honor is not going to make a decision on

24  that today.

25       But given the nature of the indictment and the way

18

1    it's currently structured and the way we sitting in single

2    color schemes in particular, even if you're in a double color

3    scheme or double color conspiracy, the way it is currently

4    structured imposes immense, immense burdens on us in terms of

5    our review, in terms of our ability to be prepared.

6            The government has said it is not challenging the

7    extra months that we have proposed versus the government's

8    proposal.  That is exceedingly meaningful to us.  To make this

9    work, of course, we are going to ask the government in its good

10   graces to be liberal with its disclosures.  If necessary, of

11   course, we will come to your Honor.

12           I hope that is helpful, Judge.

13           THE COURT:  I love your chart.

14           MR. GITNER:  Thank you.  I have another copy if you if

15   you would like it.

16           THE COURT:  One is enough.  Thank you.

17           MR. GITNER:  Unless your Honor has questions, I'm

18   happy to sit down.

19           THE COURT:  Thank you.

20           Anybody else want to be heard on whether we do

21   bifurcated motions or just one omnibus motion?

22           MR. MILLER:  Mike Miller on behalf of Alain Kaloyeros.

23   I won't repeat what has been said.  We do think a bifurcated

24   schedule makes sense.  We are probably a little bit of an

25   outlier in the sense that in our letter to the Court we

1   suggested that the Court set another date perhaps a couple of

2   months down the road for discovery to be completed so that the

3   defendants will have had an opportunity to at least begin to

4   chip away at this mountain of evidence that is coming our way

5   before setting substantive motion dates, before setting a trial

6   date.  I know the Court's preference is to set those today.  I

7   just wanted to point out that we are that outlier and think

8   that that would be of assistance.

9           In any event setting an expedited schedule on

10  severance issues, and would we wholeheartedly believe there are

11  strong severance issues, and the transfer issue set up by the

12  Buffalo defendants in our view makes sense.

13          MS. ECHENBERG:  Your Honor, I didn't know we were

14  doing color-coded demonstratives today.

15          THE COURT:  I love charts.  Any time you want to give

16  me a chart . . .

17          MS. ECHENBERG:  I'm going to do one by hand for you.

18  The way we would describe the scheme, and I think it is very

19  clear from the indictment, is a Venn diagram.  There would be a

20  circle that includes the Joseph Percoco bribery scheme and that

21  includes the bribery by Peter Kelly and bribery by the Syracuse

22  defendants.  That would be one side of the Venn diagram.

23          Then there would be a second circle, and that would be

24  what we have called the Buffalo billion bribery scheme.  That

25  involves Dr. Kaloyeros, the Buffalo defendants, and the

1    Syracuse defendants.  In the middle part of the Venn diagram,

2    the Syracuse defendants are in both.  That is a key reason why

3    we think severance is not appropriate here.  Obviously, we will

4    brief this when it is raised.

5         THE COURT:  There is no question if there were a

6    severance, there is going to end up being duplication between

7    the two trials because there is some overlap, although there is

8    a lot that is not going to overlap.

9         MS. ECHENBERG:  There is significant overlap.  There

10   are two defendants who fall into both schemes.  There is a

11   cooperating witness who has significant testimony on both

12   schemes.  There are multiple witnesses that we expect would

13   testify to both schemes.  So there is significant overlap.

14        To the discovery point and as has been clear in

15   multiple requests from the defendants, they are very interested

16   in our cooperating witness, as they should be.  The idea that

17   they wouldn't want to review the discovery that relates to him

18   and that relates to both schemes that he is involved in is a

19   little surprising.  But we are not telling them how to prepare

20   their case.  We are taking a broad view of discovery and we are

21   producing all items that we think are relevant and discoverable

22   in this matter.

23        THE COURT:  Does the cooperator cover all of these

24   schemes?

25        MS. ECHENBERG:  He does, your Honor, yes.

1        With regard to the bifurcated schedule, we think the

2   case law is clear that there isn't support for a severance

3   motion to be decided before all other motions.  In fact in most

4   cases the severance motion is decided later, when it is clear

5   who the trial defendants are.  The defendants are saying they

6   all intend to go to trial.  But once the substantive motions

7   have been ruled on, often that view changes.

8        We think it is important and most efficient for the

9   Court for all of the motions to be decided together.  We think

10  there will be overlapping arguments between the severance

11  motion and, for example, McDonnell issues and other issues that

12  they have said they are going to raise in their substantive

13  motions.  So we think it is efficient and important and also

14  important to avoid any sort of gamesmanship that all of the

15  motions are decided together.

16       With regard to the motion to transfer venue, only one

17  is pending now.  We are not certain if others intend to file

18  similar motions.  If the Court believed it would be more

19  sufficient to rule on that motion and that motion alone first,

20  we would be amenable to that.  But we would ask that all

21  motions to transfer venue be filed on a schedule and that the

22  government be given more than the nine days that is suggested

23  by the Buffalo defendants, more in the range of 30 days, to

24  respond to that motion and any other transfer motions.

25       With regard to the entire motion schedule, I'm not

1   sure if we are quite there yet, but a group of defendants had

2   proposed that their motions be filed in mid May and that the

3   government have 60 days to respond to all of those motions,

4   which we expect to be voluminous, and that they have 30 days to

5   respond.  We would not have an objection to that motion

6   schedule.

7          MR. GITNER:  Judge, very briefly, just to add to the

8   notion of bifurcating the venue transfer motion first, it is at

9   least my position that that is impossible because the way it is

10  charged would require your Honor to reach severance issues in

11  order to properly rule on the transfer motion.  If there is

12  some sort of bifurcation, which I haven't proposed but I'm not

13  against, we would ask that the bifurcation include severance at

14  the front end.

15         That said, just to be clear, and this is responding to

16  something Ms. Echenberg said, while it may be that there is

17  some overlap if your Honor decides to sever, depending upon how

18  your Honor severs, I'm not sure that we agree that, to borrow

19  her words, there is substantial overlap.  Of course, that will

20  be the subject of motions.  Thank you.

21         THE COURT:  Thank you all.  I'm not going to do

22  various motion schedules.  I'm going to give you one motion

23  schedule.  Anything you want to put in it, put in it.  I'm not

24  inclined to give the government 2 months to respond.  It is

25  very kind of you to offer 2 months, but I think 6 weeks should

```
 1   do it.  You have lots of AUSAs over there, and Mr. Podolsky can

 2   handle the laboring oar, I'm confident.

 3        Here is your schedule.  All defense motions are going

 4   to be due on May 18.  The government's response is due June

 5   29th.  The defense reply is due July 20th, a little shy of a

 6   month on the replies.

 7        That brings us to a trial date.  I'm not going to

 8   prejudge whether there is going to be a severance or not, so

 9   I'm going to give you two trial dates.  You have to keep both

10   schedules clear.  If I don't sever, everybody is going to go to

11   trial on the first day.  If I do sever, some of you will go to

12   trial on the second day.  This is your schedule.

13        Trial one is going to be on October 30th to start.

14   Jury selection and trial will begin October 30th.  Trial number

15   two, if we need it, will start January 8th.  Please keep me

16   posted, those of you who have conflicts.  I know there are some

17   conflicts now with these two dates.  Keep me posted.

18        On the October 30th date the only conflict I saw was

19   with Mr. Connors for the defendant Schuler.  The defendant

20   Schuler has three lawyers in this case.  If you have to join us

21   later, that would be fine.

22        MR. CONNORS:  It is not really true that he has three

23   lawyers.  He really has just myself as his counsel, a very

24   close relationship, your Honor.  I will keep you apprised with

25   what is going on with the schedule in the Western District.
```

 1   Maybe it will work out.  But I do want you to know of that in

 2   advance.

 3           THE COURT:  Okay.  Keep me posted.  It is a single-

 4   defendant case that is estimated at 3 weeks and may well turn

 5   out to be a no-defendant case or a one-defendant case that gets

 6   done in two weeks.

 7           MR. CONNORS:  Would your Honor ever entertain the

 8   possibility of contacting the trial judge in the Western

 9   District of New York to assist in the schedule?

10           THE COURT:  I spoke to Judge Wolford yesterday.  I'll

11   see what I can do.

12           MR. COFFEY:  Judge, may I ask a question on discovery?

13           THE COURT:  We are back to discovery, okay.

14           MR. COFFEY:  This is more of a question of the

15   government on the 3500 and the statements of witnesses.  I

16   think I have read that their practice would be 2 weeks before

17   trial.

18           THE COURT:  We will get to that.  I have a whole issue

19   with 3500 and exhibit lists.  For all the defense attorneys,

20   you need to keep the 2-month period following those dates

21   clear.  To the extent you currently have a conflict, please

22   keep me posted on how that is going.  I am going to assume this

23   is a 2-month trial.  I think it will probably be more like 6

24   weeks, but we'll see.

25           I think I told you this before.  For a trial of this

length, I usually will not sit on Fridays.  But if it starts

dragging, we'll sit on Fridays.  It's in everybody's interest

to keep things moving along so that I am confident that sitting

four days a week will still get us done in a reasonable amount

of time.

           That is particularly important for the trial that

starts on October 30th.  I think it is going to be difficult to

get a jury if we are putting into risk Christmas holidays and

planned travel around that time.  If we start at the end of

October, I really want to get done by mid December.

           That brings us to 3500, impeachment material, and

exhibit list.  It is very early to be talking about this, but

let me give you my initial thoughts.  In the Silver case

everything got produced I think 3 weeks prior to trial.  That

is exhibit lists and much, if not all, 3500 material.

           That seemed to work well.  It gave everybody a lot of

time with that material to the extent any of it was a surprise,

which was unlikely.  That would sort of be what I would be

looking for in this case unless there were some very unusual in

terms of what the government's situation was.

           Remember that the defense has a reciprocal discovery

obligation.  Work together.  Try to work out a schedule that

works for everybody.  We'll have plenty of time to talk about

that closer to trial.  Does that respond to whatever the

concern was?

1          MR. GITNER:  Judge, my understanding is that in the

2     Silver case there was 70 to 80 percent less discovery, and

3     there was obviously only one defendant.  I can't emphasize

4     enough, and I have told this to the government in informal

5     conversations, the burden on all of us, I think I speak for

6     everybody, is absolutely immense.

7          I know Ms. Echenberg says discovery was complete.  But

8     discovery was literally complete a week ago but we still

9     haven't received some of the materials because of the lag in

10    the way the e production works.  Now we have about 6 months to

11    go over the totality of material.

12         I am not rearguing a trial date issue.  But in terms

13    of the early disclosures, it is not uncommon to have 45 days,

14    60 days.  There is case law that says 90 days in cases like

15    this.  In fact, the amendments or some proposed amendments to

16    rule 16 suggest or seek that in cases like this it should be

17    unlawful for there to be a trial within a year of discovery

18    being complete because it recognizes the immense burden on the

19    defense in these kinds of cases.

20         Again, I'm not arguing the October 30th date, but I'm

21    imploring your Honor to see that this case is different than

22    the Silver case, is different than most cases, because of the

23    way it's charged and because of our burden to review.

24         I would ask for guidance to the government.  I think,

25    based on my conversations with them, they were thinking of

Xb46perc

1   providing disclosures earlier than 21 days in advance, although

2   maybe I misread them.  I would ask that your Honor perhaps

3   softly suggest, or strongly suggest would be my preference,

4   that the government in its good graces do better than 21 days.

5         I'm not sure, based on my discussions with everybody

6   here and what I know about my own ability to be prepared in

7   this case, that absent earlier disclosures, 21 days, given our

8   burdens, we can be as prepared as I know your Honor wants us to

9   be prepared to do the kind of job that is typically done in

10  this courthouse.

11        THE COURT:  I have a great deal of confidence in the

12  defense attorneys in this case.  I also have a great deal of

13  confidence that the government understands that it is in their

14  interests for this trial to move smoothly.  To the extent that

15  means producing material to the defendants earlier than they

16  might otherwise, they will do so.

17        MR. GITNER:  Thank you, Judge.

18        MR. HOOVER:  Your Honor, may I be heard on scheduling?

19        THE COURT:  Yes.

20        MR. HOOVER:  We understand that the Court has set a

21  date.  There has been various information, I will call it

22  sensitive information, that has been submitted to your Honor

23  that I know you are aware of.  I just want to point out that

24  while we will, of course, keep you apprised, if that's okay

25  with the Court, on that, that situation with sensitive

1    information is fluid.

2              THE COURT:  Understood.

3              MR. HOOVER:  And may well have an impact on that first

4    trial date.

5              THE COURT:  I understand.

6              MR. HOOVER:  Thank you, Judge.

7              THE COURT:  In light of the complexity of the case,

8    the Court is inclined to exclude time between now and October

9    30th under the Speedy Trial Act.  Is there any objection from

10   the defense?

11             ALL DEFENSE COUNSEL:  No objection.

12             THE COURT:  Any objection from the government?

13             MS. ECHENBERG:  No, your Honor.

14             THE COURT:  In light of the complexity of the case and

15   the need for the defense to prepare, I am going to exclude the

16   time under the Speedy Trial Act between now and October 30th.

17             In addition further from the government?

18             MS. ECHENBERG:  No, your Honor.

19             THE COURT:  Anything further from the defense?

20             MR. HOOVER:  I do have one more thing Judge, since you

21   brought it up and that you contacted Judge Wolford.  Is there

22   anything the Court can share so we can order our one, two,

23   three plus probably three additional trials for the Buffalo

24   defendants between now and late fall with regard to what Judge

25   Wolford said about the date certain that the four Buffalo

 1   attorneys have in January?

 2               THE COURT:  Judge Wolford told me that that is a

 3   certain date certain and that she is going to get that trial

 4   done in an efficient way and that you should expect to go to

 5   trial as scheduled.  That's all I can tell you.  She's a woman

 6   after my own heart.  Set a trial date and hold onto it.

 7               MR. GREENMAN:  Judge, one other thing.  Mr. Connors

 8   and I in our letters noted that each of us were trial ready on

 9   cases in Buffalo, and literally on the day of jury selection --

10   Mr. Connors actually had the jury selected -- the government

11   filed interlocutory appeals is to each of those cases.  We each

12   have argument dates in May, mid May.  We don't know when the

13   Second Circuit is going to decide them.

14               On the other hand, my case is a very old case, and I

15   know that Judge Skretny was bent on trying the case as quickly

16   as possible, and maybe that gets pretty close to these dates.

17   I will advise Judge Skretny about the trial date here.  If we

18   need your help, maybe we could ask you to help at a later date.

19               THE COURT:  Okay.  No problems before their time.  It

20   is still in the Second Circuit now.  There is nothing I can do

21   about that.  I can't schedule around a case that is pending in

22   the Second Circuit.

23               MR. GREENMAN:  I understand, your Honor.  Thank you.

24               THE COURT:  Thank you all.

25               (Adjourned)