# EXHIBIT P

# LANKLER SIFFERT & WOHL LLP

### ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N. Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

April 28, 2017

**BY EMAIL:**

Janis Echenberg
Robert Boone
David Zhou
Matthew Podolsky
Assistant United States Attorneys
United States Attorney's Office for the Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

### Re: **United States v. Percoco, et al., 16 Cr. 776 (VEC)**

Dear Ms. Echenberg, Mr. Boone, Mr. Zhou, and Mr. Podolsky:

We write on behalf of Peter Galbraith Kelly, Jr. in response to the Government's April 26 letter responding to our Brady requests dated April 11, April 17, and April 25.[1] Codefendants Joseph Percoco, Steven Aiello, and Joseph Gerardi join in this letter.

We intend to file a motion to compel the Government to comply with its Brady obligations, particularly in regard to our specific requests. To avoid unnecessarily burdening the Court, we would like to accurately characterize the Government's position. However, the April 26 letter, perhaps unintentionally, does not fully respond to our requests.

We therefore write again, as a courtesy, to explain the scope of our requests and how we interpret the Government's responses and to give the Government an opportunity to clarify or correct any misstatements in the April 26 letter. We remind the Government that "the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption." United States v. Bagley, 473 U.S. 667, 682–83 (1985).

### April 11 Brady Request

Our April 11 letter requested that the "the Government produce to us any evidence or information that in any way suggests that Todd Howe (or any other person) communicated to

---

[1]     Capitalized terms used herein have the same meaning as in our prior letters.

# LANKLER SIFFERT & WOHL LLP

April 28, 2017
Page 2


Mr. Kelly that [an] ethics opinion [approving the hiring of Percoco's wife] existed, had been obtained, was sought, or prepared—regardless of the truth of any such communication."

The Government responds that, even if such evidence existed and were <u>Brady</u>, this information has already been produced in the discovery materials. The Government then refers us to Bates ranges totaling over 340,000 pages, as well as the forensic images and extracted files of nineteen devices. The Government well knows that the vast majority of those materials will not be responsive to our particular request.

The Government's response also states that, during the course of the investigation, the Government interviewed two Energy Company executives who stated that, during a July 2, 2014 call, Mr. Kelly told them that an ethics opinion existed. We note that the Complaint also alleges that, in October 2012, Mr. Kelly advised the then-president and then-CEO of the Energy Company that an ethics letter existed. (Compl. ¶ 41.)

The Government's April 26 letter does not dispute that the materials requested by our letter, if they exist, would constitute <u>Brady</u>. Accordingly, we infer from the Government's response that it is aware of no responsive information other than what is specifically referenced in its response and the Complaint. Among other things, we infer from the Government's response that, in the course of his interviews with the Government, Todd Howe has never indicated or suggested to the Government that he or anyone else told Mr. Kelly that an ethics opinion relating to the hiring of Percoco's wife existed, had been obtained, was sought, or prepared, or that Mr. Kelly requested or wanted such an ethics opinion. We further infer that, apart from the Energy Company executives referenced by the Government, no other potential witness interviewed by the Government has indicated or suggested to the Government that Mr. Kelly said he believed an ethics opinion existed, had been obtained, was sought, or prepared.

## April 17 Brady Request

Our April 17 letter requested "any evidence—including any statement made by the Government's cooperating witness, Todd Howe, or any other witness—tending to show that there was no mutual dependence, common objective, or interaction between Mr. Kelly and the Syracuse Defendants." As we explained, this lack of mutual dependence, common objective, or interaction is part-and-parcel of a defense theory and is therefore classic <u>Brady</u> material.

In its April 26 letter, the Government chooses, perhaps unintentionally, not to answer whether it views such evidence as <u>Brady</u> and, if so, whether it possesses such information. Instead, the letter responds only that a chart adopted by the Government during a press conference was not Rule 16 material, even though it was produced with the Rule 16 discovery materials. That is no matter.

Our <u>Brady</u> demand discussed not only the chart itself but also the evidence—including

LANKLER SIFFERT & WOHL LLP

April 28, 2017
Page 3

statements by witnesses—that formed the *basis* for that chart.  Moreover, whether or not the chart is <u>Brady</u> does not affect whether the Government has *other* evidence tending to "undermine the Government's contention that Mr. Kelly knowingly participated in a single agreement covering both the Energy Company Bribery Scheme and the Syracuse Bribery Scheme," as requested in our April 17 letter.

We infer from the Government's response that it is aware of no materials responsive to our request.  Among other things, we infer from the Government's response that:

- In the course of his interviews with the Government, Todd Howe has never indicated or suggested to the Government that Mr. Kelly: (1) was unaware of the alleged relationship between Howe and Percoco and the Syracuse Defendants, (2) had never met the Syracuse Defendants, (3) had no knowledge or understanding of the conduct alleged in the Syracuse Bribery scheme; and/or (4) did not speak about the Syracuse Defendants with Howe or Percoco;

- In the course of the Government's investigation, no potential witness has ever indicated or suggested to the Government that the Energy Company and the Syracuse Developer shared no overlapping business objectives and engaged in no overlapping conduct; and

- The Government is unaware of any evidence indicating or suggesting that the Energy Company and the Syracuse Developer shared no common aim, plan, purpose, or objective, or that there was no mutual dependence between Mr. Kelly and the Syracuse Defendants.

**<u>April 25 Brady Request</u>**

Our April 25 letter requested any "evidence tending to show, among other things, that Mr. Kelly did not provide or agree to provide a benefit to Mr. Percoco in exchange for or to influence any official act, or that Mr. Percoco did not perform or agree to perform any such official act."  We noted that "any State official with whom Mr. Percoco spoke about any matter concerning the Energy Company but whom Mr. Percoco did not pressure [or advise] to perform an official act is a <u>Brady</u> witness."

The Government's response is that "specific instances where Mr. Percoco did not perform or ask others to perform an official act do[] not tend to negate Mr. Percoco's guilt, much less Mr. Kelly's guilt."  But our request did not seek "specific instances" in which Mr. Percoco did not perform or ask others to perform an official act.  Instead, we requested disclosure of any State official who has denied ever being pressured or advised by Mr. Percoco in relation to the Energy Company.  Such evidence was a principal basis of the trial defense in <u>United States v. McDonnell</u>.  <u>See</u> 136 S. Ct. 2355, 2366 (2016).  It, too, is part-and-parcel of a defense theory and

LANKLER SIFFERT & WOHL LLP

April 28, 2017
Page 4

is, for that reason, quintessential <u>Brady</u>.

We infer from the Government's response that, in the course of interviews with the Government, no potential witness who was in a position to take official action favorable to the Energy Company—including those State officials referenced in the Complaint and the Indictment—has denied ever being pressured or advised by Mr. Percoco to take action favorable to the Energy Company. Counsel for Mr. Percoco, Mr. Aiello, and Mr. Gerardi likewise draw the same inference with respect to the Syracuse Developer.

\*        \*        \*

If, in light of this letter, the Government wishes to clarify its statements or produce additional material, we request that it do so immediately. Otherwise, we will rely on our understanding of the Government's responses, as described above, in the course of our pretrial and trial preparation. <u>Bagley</u>, 473 U.S. at 682–83.

Again, we remind that the Government that its <u>Brady</u> obligations are not limited to documentary evidence. If exculpatory information was brought to the Government's attention during its investigation—including during its interviews of Todd Howe or any other person—such information is <u>Brady</u>, even if it was not memorialized at the time. <u>See</u> Guidance for Prosecutors Regarding Criminal Discovery, <u>available at</u> https://www.justice.gov/dag/memorandum-department-prosecutors.

And, as the Government well knows, the mere fact that <u>Brady</u> material is in the form of a witness statement does not permit the Government to delay its disclosure until its Jencks Act production. <u>United States v. Rittweger</u>, 524 F.3d 171, 181 (2d Cir. 2008) ("Complying with the Jencks Act, of course, does not shield the government from its independent obligation to timely produce exculpatory material under <u>Brady</u>—a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500.")

Very truly yours,

/s/ Daniel M. Gitner

Daniel M. Gitner
Jun Xiang
Samantha J. Reitz

**CC:**

Counsel for Joseph Percoco, Steven Aiello, and Joseph Gerardi