LANKLER SIFFERT & WOHL LLP
ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N.Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX   (212) 764-3701

January 1, 2018

**BY ECF:**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    Re: **United States v. Percoco, et al.**, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

    We represent Peter Galbraith Kelly, Jr. and write on behalf of Mr. Kelly and co-defendant Joseph Percoco in regard to 18 U.S.C. § 666(c) (the "666(c) exception"). Following discussion with the parties during the pretrial conference, the Court ruled that the preliminary jury instructions will not include an instruction on section 666(c). We do not ask the Court to revisit that ruling here.

    However, since the application of the 666(c) exception will arise again in connection with the final jury instructions, we write to provide the Court with the relevant legal authority and to correct mischaracterizations of the law by the Government during the pretrial conference.[1]

    The official transcript of the conference is attached hereto as Exhibit A.

**Statutory Text**

    Section 666(c) is a subsection of the bribery statute under which all of the January Trial defendants have been charged. The statutory text reads, in full: "This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the

---

[1]     We are mindful of the length of this letter and do not wish to test the Court's indulgence. At the same time, we feel it necessary to write in detail because this issue is critical and because the Government spoke about it at length during the pretrial conference.

LANKLER SIFFERT & WOHL LLP

January 1, 2018
Page 2

usual course of business." 18 U.S.C. § 666(c). The word "section" refers to the entirety of the statute—section 666—rather than any particular subsection of the statute.[2] The 666(c) exception therefore applies to every other element of section 666. Three elements, in particular, are circumscribed by the 666(c) exception:

> First, the requirement that the government entity at issue receive more than $10,000 of federal funding (the "federal funding threshold"), 18 U.S.C. § 666(b);
>
> Second, the requirement that the transaction to which an alleged bribe relates be valued at $5,000 or more (the "transactional threshold"), 18 U.S.C. § 666(a)(1)(B), (a)(2);
>
> Third, the requirement that the defendant corruptly give or accept "anything of value" (the "bribe element"), 18 U.S.C. § 666(a)(1)(B), (a)(2).

As to the federal funding and transactional thresholds, the 666(c) exception requires that bona fide compensation in the usual course of business be excluded from the determination of whether those thresholds are met.

As to the bribe element, the 666(c) exception provides that "bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business" cannot be a bribe. Notably, the qualifiers "bona fide" and "usual course of business" mean that section 666(c) does not shield compensation for bogus or nominal jobs. The exception applies only if the compensation was legitimate and provided in the usual course of business. Whether compensation is "bona fide" and paid "in the usual course of business" is a fact question for the jury to decide. United States v. Lupton, 620 F.3d 790, 802 (7th Cir. 2010); United States v. O'Brien, 994 F. Supp. 2d 167, 184 (D. Mass. 2014); see also United States v. Williams, 507 F.3d 905, 909 (5th Cir. 2007) (same in embezzlement context).

**United States v. Mills (6th Cir.) and Related Authority**

The leading case interpreting section 666(c) is United States v. Mills, 140 F.3d 630 (6th Cir. 1998).[3] During the pretrial conference, the Government asserted that Mills addressed only the applicability of section 666(c) to the transactional threshold.[4] That assertion was wrong.

---

[2]   Where language applies only to a particular *subsection* of section 666, the statute uses the term "subsection." See, e.g., 18 U.S.C. § 666(b) ("The circumstances referred to in subsection (a) of this section . . .").

[3]   The Modern Federal Jury Instructions cite primarily to Mills in the discussion of section 666(c). See Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, 27A-38 (2017).

LANKLER SIFFERT & WOHL LLP

January 1, 2018
Page 3

In Mills, the district court dismissed section 666 bribery charges because, when bona fide compensation was (properly) excluded from the total, the transactions to which the alleged bribes related failed to satisfy the $5,000 transactional threshold. The government appealed. Notably, the government *agreed* that the 666(c) exception applied to the bribe element of section 666; its position was that "the exclusion applies only to the bribery element of Section 666(a)(1)(B)" and not to the transactional threshold. Id. at 632–33 (internal quotation marks omitted). In other words, the applicability of section 666(c) to the bribe element was not disputed in Mills because the government *conceded* that it was applicable.

The Sixth Circuit affirmed the dismissal. The court observed that section 666 includes the "three separate valuation requirements" described above—the federal funding threshold, the transactional threshold, and the bribe element—and held that "the bona fide salary exception of subsection (c) must be read to apply to *all of § 666*." Id. at 632–33 (emphasis added). Mills was explicit that, under section 666(c), bona fide compensation cannot be a bribe:

> Congress did not see fit to exclude explicitly from the reach of the federal courts only bona fide salaries *received by* § 666 defendants. Had it wished to do so, Congress could easily have included language to that effect in the legislation. Instead, broad language referring to the entire body of the law was used in describing the scope of the exception. As a result, bona fide salaries, wages, fees, and other compensation either *received by* or *promised by* § 666 defendants fall within the scope of the subsection (c) exception.

Id. at 633 (emphases in original).

As the quoted language makes clear, the Government's suggestion that Mills found section 666(c) applicable only the $5,000 transactional threshold was, at best, grossly misleading. Indeed, it is hornbook law in this Circuit that Mills found the 666(c) exception applicable to the bribe element of section 666. See Leonard B. Sand et al., 1 Modern Federal Jury Instructions: Criminal, 27A-38 (2017) ("The Sixth Circuit agreed with defendant and reversed his conviction, reasoning that there is nothing in section 666(c) limiting its application to any particular element, so it should be applied to each element.").

Like the Sixth Circuit, the Fifth Circuit and Seventh Circuit have concluded that the section 666(c) exception applies to the bribe element of section 666. United States v. Robinson, 663 F.3d 265, 272 (7th Cir. 2011) ("The natural reading of the exception is that § 666 does not

---

[4]   (Tr. at 37:5–17 ("Your Honor, I would encourage you to read Mills. It is actually the opposite. . . . The question in that case was in looking at the threshold, the $5,000 threshold for the value that has to be at stake for a 666, the question was whether the salary that they then received as deputy sheriffs counts towards the $5,000 threshold. . . . Totally different question.")).

LANKLER SIFFERT & WOHL LLP

January 1, 2018
Page 4

target bona fide salary, wages, and compensation; that is, *compensation paid in the ordinary course shall not be construed as a bribe*." (emphasis added)); United States v. Marmolejo, 89 F.3d 1185, 1190 n.5 (5th Cir. 1996) ("However, § 666(c) . . . *refers to the alleged wrongdoing*, to ensure that the statute is not applied to 'acceptable commercial and business practices.'" (emphasis added and citation omitted)); see also O'Brien, 994 F. Supp. 2d at 184 ("Just as clearly, the exception applies to wages and salaries paid in the ordinary course, such as where a part-time state legislator is paid a salary by a private employer to perform normal job duties.").

While Robinson, Marmolejo, and O'Brien have not gone as far as Mills in holding that section 666(c) applies to the *other* elements of section 666—e.g. the federal funding threshold or the transactional threshold—they have all concluded that, under section 666(c), bona fide compensation in the usual course of business cannot be a bribe.

**Policy Rationale**

The policy rationale behind the 666(c) exception is understandable. The legislative history makes clear that Congress was concerned that, without a statutory safe harbor for bona fide compensation, section 666 might sweep in legitimate commercial and business conduct. H.R. Rep. No. 797, 99th Cong., 2d Sess. 30, reprinted in 1986 U.S.C.C.A.N. 6138, 6153 ("[This bill] amends 18 U.S.C. 666 to avoid its possible application to acceptable commercial and business practices."); see also Mills, 140 F.3d at 634 ("Congress also saw fit to exclude from the reach of the federal statute those individuals and those transactions that involved only the payment of bona fide salaries, wages, fees, and other compensation."). Congress recognized that gainful employment should not raise the specter of a bribery prosecution just because the person being hired is related to a public official.

The 666(c) exception reflects the principle that bribery statutes must be wielded discriminately—as scalpels, and not as meat axes. McDonnell v. United States, 136 S. Ct. 2355, 2373 (2016) ("[A] statute in this field that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter." (quoting United States v. Sun-Diamond Growers of California, 526 U.S. 398, 412 (1999))).

**United States v. Ford (2d Cir.)**

The relevant Second Circuit authority on the proper jury instruction for section 666(c) is United States v. Ford, 435 F.3d 204 (2d Cir. 2006).[5] In Ford, the defendant argued that the district court should have given an instruction that, under section 666(c), the Government was required to prove that "the transaction in issue in no way, to no degree, involved any acceptable

---

[5]   During the conference, the Court inquired whether there was Second Circuit authority. While we noted that there was no contrary Second Circuit authority, we neglected in the moment to mention Ford, which we cited in our pre-conference letter. (Tr. 35:13–14; see Doc. No. 417).

LANKLER SIFFERT & WOHL LLP

January 1, 2018
Page 5

business practice." Id. at 216.  The Second Circuit did not disagree with the defendant's proposed language, but held that "[t]he refusal to give the requested instruction was not error" because "[t]he court read the statute to the jury, and it was free to draw its own conclusions from its non-technical terms."  Id.

In short, Ford held that it was proper for the trial court to read section 666(c) to the jury and allow the jury to interpret the non-technical language of the statute—which is all we requested in the preliminary jury instructions.

**The Government's Case Citations**

At the pretrial conference, the Government did not acknowledge Ford (or Robinson, Marmolejo, or O'Brien), and instead directed the Court to cases having no relevance to whether a jury should be instructed on the section 666(c) exception.  Among other cases, the Government cited a non-bribery case (in which a bona fide compensation instruction *was* given) and a case in which section 666 was not charged.

### Cantor v. United States

Ignoring Ford, the Government instead referred the Court to the Second Circuit's summary order in Cantor v. United States, 205 F.3d 1321 (2d Cir. 2000) (unpublished table decision).[6]  In Cantor, the defendant was convicted of bribing government officials to get those officials to make certain payments (which the defendant claimed were bona fide) to the defendant's clients.  The payments were not the bribes; they were what the defendant sought to get *in return* for the bribes.  In other words, the purportedly bona fide payments were the "quo," not the "quid."  Citing Mills, the defendant argued that, under the 666(c) exception, bona fide compensation could not be the "quo" of a quid pro quo.  The Second Circuit disagreed, concluding that Mills did not hold that legitimate payments could not constitute a "quo."

Cantor has no application to this case.  The defense does not contend that section 666(c) applies because bona fide compensation was obtained *in exchange* for the alleged bribe.  As the Court recognized at the conference, the defense's theory is that the alleged thing of value was, *itself*, bona fide compensation paid in the usual course of business and therefore was not a bribe.

---

[6]     (Tr. at 37:19–22 ("205 F.3d 1321, you'll see that the Second Circuit [in Cantor] explains the very limited nature of the Mills holding and basically says it has no relevance to these kinds of facts.")).

LANKLER SIFFERT & WOHL LLP

January 1, 2018
Page 6

### United States v. Urciuoli

Apart from Cantor, the only circuit case the Government cited was United States v. Urciuoli, 613 F.3d 11 (1st Cir. 2010)[7]—a case in which *section 666 was not charged* and is never discussed.  Clearly, Urciuoli cannot function as authority on what the statutory language in section 666(c) means, much less how a jury should be instructed on the 666(c) exception.[8]  The Government asserted that Urciuoli "goes back to the definition of what bona fide compensation is" and is "very clear."  (Tr. at 38:6–8).  In fact, the word "bona fide" appears nowhere in the decision.

### United States v. Walsh

The Government then referred to the district court opinion in United States v. Walsh, 156 F. Supp. 3d 374 (E.D.N.Y. 2016).[9]  The Government neglected to mention that Walsh was *not a bribery case*, but an embezzlement case.  Id. at 377.

Walsh was a decision on a motion to dismiss the indictment, and the court ruled that, because "[a] reasonable jury could conclude that the Defendants' compensation . . . was not 'bona fide salary . . . in the usual course of business,'" pretrial dismissal was unwarranted.  Id. at 385.  In other words, Walsh held that the applicability of section 666(c) to the alleged conduct was a question of fact that should go to a jury.  Id.  Perhaps most importantly, the Walsh court *in fact instructed the jury* on the bona fide compensation exception in section 666(c).  See United States v. Walsh, 15 Cr. 91 (ADS), Doc. No. 136 (transcript of jury charge).

### United States v. Bryant

Finally, the Government cited an out-of-circuit district court case—United States v. Bryant, 556 F. Supp. 2d 378 (D.N.J. 2008)—which, like Walsh, was a decision on a motion to dismiss the indictment.[10]  The Bryant court concluded that, on the facts alleged in that case, the

---

[7]   (Tr. at 38:3–8 (inviting the Court to rely on Urciuoli)).

[8]   Urciuoli involved a *sufficiency* challenge to honest services fraud convictions.  613 F.3d at 14.  Reviewing the trial record, the First Circuit concluded that the defendant's "ample salary" for "limited work" permitted the jury to draw the inference that the salary was, in fact, a bribe.  Importantly, the First Circuit observed that "Urciuoli was free to make such arguments [about the salary being legitimate] to the jury, but the jury could fairly reject them."  Id. at 15  That is precisely our position: whether the alleged bribe in this case was bona fide compensation is a jury question, so the jury must be instructed on the 666(c) exception.

[9]   (Tr. at 38:9–10 (inviting the Court to rely on Walsh)).

[10]  (Tr. at 37:22–38:2 (inviting the Court to rely on Bryant)).

LANKLER SIFFERT & WOHL LLP

January 1, 2018
Page 7

compensation at issue was *not* "bona fide" or "in the usual course of business" and therefore section 666(c) did not require dismissal. <u>Bryant</u> contains no discussion of whether, at trial, the jury should be instructed on section 666(c).[11]

In a nutshell, none of the cases cited by the Government calls into question the Second Circuit's conclusion in <u>Ford</u> that it is appropriate to read the plain language of section 666(c) to the jury.

**Application of Section 666(c) to this Case**

We expect the evidence at trial to show that the Energy Company provided bona fide compensation to Lisa Percoco in the usual course of its business to pay her for developing an education-based public relations initiative (the "Education Program").

We expect that witnesses will testify—and that documents will confirm—that Lisa Percoco did real work, that her work substantially furthered the business and public relations goals of the Energy Company, that senior executives at the Energy Company appreciated the value of the Education Program, and that the Energy Company continues to rely on her work product. The Energy Company touted the Education Program online. We note that among the Government's exhibits is an hour-long video documenting one of the many occasions on which Lisa Percoco taught the Education Program in a classroom setting. <u>See</u> GX 1217. As the Court is aware, the defense has also noticed an expert, Dr. Dubravka Tosic, who will provide testimony relating to the reasonableness of the compensation that Lisa Percoco received.

It is black-letter law that "a criminal defendant is entitled to instructions relating to his theory of defense, for which there is some foundation in the proof, no matter how tenuous that defense may appear to the trial court." <u>United States v. Dove</u>, 916 F.2d 41, 47 (2d Cir. 1990). One central theory of the defense is that Lisa Percoco was hired for a bona fide job—and paid bona fide compensation—in the usual course of the Energy Company's business. Given that theory of the defense, a jury instruction on section 666(c) is both necessary and appropriate.

Furthermore, notwithstanding its opposition to a section 666(c) instruction, the Government has squarely put the legitimacy of Lisa Percoco's job at issue. The theory of bribery charged in the Complaint and in every iteration of the indictment—including the S2 Indictment—is that Lisa Percoco was hired for a "'low-show' job." (<u>E.g.</u> S2 Ind. ¶ 30 (alleging

---

[11] <u>Bryant</u> rejected the argument that so long as a bribe is "paid in the form of a salary" and paid for "some legitimate work," section 666(c) applies. 556 F. Supp. 2d at 429. To be clear, we make no such argument. Our request is that—consistent with <u>Ford</u>, 435 F.3d at 216—the jury should be instructed on the plain language of the statute, which makes clear that the exception applies only to "bona fide" compensation paid "in the usual course of business." It is for the jury to decide whether the Government has satisfied its burden on the 666(c) exception.

LANKLER SIFFERT & WOHL LLP

January 1, 2018
Page 8

"'low-show' job"); Compl. ¶ 43 (alleging that Lisa Percoco was paid "a much higher salary than warranted by her limited work")).

The S2 Indictment is explicit that it is the *compensation* Lisa Percoco received from the alleged "low-show" job—and not simply being hired for a job—that is the alleged bribe. (S2 Ind. ¶ 29 (charging that Mr. Kelly "arranged for the Energy Company to pay *more than $287,000 in bribes*" (emphasis added))).[12] The 3500 material also reveals that the Government hopes to elicit testimony about the quantity and quality of Lisa Percoco's work as well as whether her compensation was merited—that is, whether her compensation was bona fide.

The Government's theory rests on the factual premise that the compensation Lisa Percoco received was not bona fide compensation for her work, but a bribe to her husband. Since that is what the Government has charged, it is all the more important that the jury be instructed correctly on the bona fide compensation exception in section 666(c).

\*   \*   \*

We respectfully submit that an instruction on section 666(c) in the final jury charge is necessary so the jury understands the Government's burden with respect to the section 666 charges. We look forward to discussing this issue further if necessary—and, if appropriate, filing supplemental papers—closer to the final charging conference.

Respectfully submitted,

LANKLER SIFFERT & WOHL LLP

By: _____/s/ Daniel M. Gitner_____

Daniel M. Gitner
Jun Xiang
Rachel S. Berkowitz

**CC**: All Counsel (Via ECF)

---

[12] During the conference, the Court suggested that it understood the Government's theory to be that the act of hiring Lisa Percoco was the bribe. At the time, we understood the Court to be speaking in shorthand. (Tr. 35:4–23, 36:13–17). In any event, the Government's theory is plain on the face of the S2 Indictment: the alleged bribe is the *compensation* Lisa Percoco received.