


*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 5, 2018

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Joseph Percoco, et al.*, S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

    The Government respectfully writes in response to the January 1, 2018 letter of defendant Peter Galbraith Kelly, Jr. (the "Kelly Letter" (Dkt. No. 428)). The Kelly Letter accuses the Government of "mischaracterizations of the law . . . during the pretrial conference" with respect to the issue of bona fide compensation in the context of a bribery charge under 18 U.S.C. § 666. (Kelly Letter 1.) In fact, and as further discussed herein, the Government accurately stated the law: that a job given in order to influence or reward a government agent in relation to State business is not bona fide, nor is its salary, regardless of whether the employee performs work functions. Not only has the Government correctly stated the law, but the defense still has not addressed the core question posed to it by the Court at the pretrial conference—"[y]our theory is that if the bribe is I will hire you, that that is the bribe, agreeing to hire someone . . . that is not a 666 violation?" (Tr. 36:13-15, Dec. 28, 2017)—because the question cannot be answered in the affirmative consistent with the law and common sense.

    As at the pretrial conference, Kelly relies in his letter almost entirely on the Sixth Circuit's decision in *United States* v. *Mills*, 140 F.3d 630 (6th Cir. 1998). As noted by the Government at the pretrial conference, *Mills* concerned the payment of bribes to a chief deputy sheriff, in exchange for which the bribers received employment as deputy sheriffs. *Id.* at 631; *see also Cantor* v. *United States*, 205 F.3d 1321, 2000 WL 232176, at *1 (2d Cir. 2000) ("In that case, payments were made to public officials to secure deputy sheriff positions."). The question presented to the court in *Mills* concerned the application of 18 U.S.C. § 666(c), which provides that 18 U.S.C. § 666—which prohibits embezzlement, theft, fraud, misapplication, and bribery involving federal funds—"does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." Because Section 666 also requires that the "business" or "transaction" to which the bribes relate "involv[e] anything of value of $5,000 or more," 18 U.S.C. § 666(a)(1)(B) & (a)(2), and because the "business" at issue in *Mills* was the award of real jobs, the court had to consider whether Section 666(c) prevented the salary of the deputy sheriff positions from being counted toward the $5,000 threshold. *Mills*, 140 F.3d at 632-

33. The Sixth Circuit held that the wages later paid for the bribers' work as deputy sheriffs were bona fide under Section 666(c), and should not count toward Section 666's transactional threshold. *Mills*, 140 F.3d at 633. Because the holding of *Mills* related to the transactional threshold, it is not illustrative here, where the job provided to Percoco's wife was itself the bribe, rather than the "business" or "transaction" to which the bribe pertained.[1]

---

[1] In his letter, Kelly calls this description of *Mills* "at best, grossly misleading," apparently because the court in *Mills* also mentioned that Section 666(c) applies to the "bribe element," meaning the element to a Section 666 bribery charge that a person give or receive anything of value. (Kelly Letter 3.) In fact, as Kelly points out in his letter, the government conceded in *Mills* that Section 666(c) applies to the bribe element of Section 666, and therefore the only issue before that court was whether Section 666(c) applied to Section 666's transactional threshold. (*Id.*) Indeed, at the pretrial conference, the Government referred the Court to the Second Circuit's own description of *Mills*, which is that, in addition to being "not binding on this court," *Mills* "held only that the § 666(c) bona fide compensation exception should be applied to all statutory minimum valuation requirements of § 666(a)," and that "because the salaries of [the relevant] positions were bona fide under § 666(c), they could not be considered in determining whether the $5,000 minimum transaction requirement of § 666(a) had been satisfied." *Cantor*, 2000 WL 232176, at *1; *see also id.* ("Nowhere did the court imply, as Cantor urges, that § 666 was inapplicable because the salaries exchanged for the bribes were bona fide under § 666(c). If the bribes themselves had been worth more than $5,000, we have no doubt that Mills's conviction would have been affirmed.").

Kelly seeks to distinguish *Cantor*—which was offered by the Government only to explain the Second Circuit's own interpretation of *Mills*—on the basis that the bona fide "payments were not the bribes; they were what the defendant sought to get *in return* for the bribes." (Kelly Letter 5.) This argument is particularly remarkable because, as explained above, this same distinction is precisely why *Mills* is not useful in answering the Court's question of whether a job given in order to influence or reward a government agent in relation to State business is considered bona fide under Section 666(c). Notably, the Kelly Letter makes no reference to the fact that, in *Mills*, the bona fide "payments were not the bribes; they were what the defendant sought to get *in return* for the bribes." (Kelly Letter 5.)

Even as to *Mills*'s holding that Section 666(c) applies to the transactional threshold of Section 666, the Circuits are not in agreement, belying Kelly's characterization of *Mills* as "the leading case interpreting Section 666(c)" (Kelly Letter 2). *See, e.g.*, *United States* v. *Robinson*, 663 F.3d 265, 272 (7th Cir. 2011) (holding, contrary to *Mills*, that Section 666(c) "does not limit the modes of proof for the $5,000 minimum-value requirement in the transactional element of the offense," and comparing cases).

Finally, the view in *Mills* that salary for a real job obtained in exchange for a bribe is "bona fide" under Section 666(c) is similarly not a conclusion shared by the Circuits. *See United States* v. *Grubb*, 11 F.3d 426, 434 (4th Cir. 1993) ("Certainly . . . wages [for a job obtained in exchange for a $10,000 campaign contribution] were not 'bona fide' and 'in the usual course of business' within the meaning of the statutory exception of § 666(c)."). Indeed, the court in *Mills* attempted to distinguish *Grubb* on the basis that the job at issue in *Grubb* involved "'little work for the Sheriff's office" and job functions were not performed "'on a regular basis,'" notwithstanding that

Seeking nonetheless to employ *Mills* to his benefit, Kelly points out in his letter that, as a general matter, Section 666(c) applies to what he terms the "bribe element" of Section 666, meaning that "bona fide salary, wages, fees, or other compensation paid . . . in the usual course of business" does not count toward the requirement that a bribe under Section 666 involve the giving of "anything of value," 18 U.S.C. § 666—a claim not contested by the Government. Kelly continues, however, to avoid answering the question actually posed by the Court—whether a job given in order to influence or reward a government agent in relation to State business may be considered bona fide under Section 666(c) at all—a question on which *Mills* offers no useful guidance. In *Mills*, the jobs for which the court deemed the salary to be bona fide were the jobs obtained as a result of paying bribes, not jobs created or provided as bribes themselves. As the Court observed at the pretrial conference, the circumstances in *Mills* present "an entirely different question" from what is at issue in this case, where the Government alleges that Kelly provided a job to Joseph Percoco's wife in exchange for which Percoco took official action on behalf of Kelly's company.[2] (Tr. 37:15, Dec. 28, 2017.)

As to the Court's question, it is clear from the language of the statute, case law, and common sense that providing a job to a government agent or his spouse in order to influence or reward that government agent in relation to State business is not "bona fide salary wages, fees or other compensation . . . in the usual course of business," and therefore not protected by Section 666(c). As explained in *United States* v. *Walsh*, bona fide compensation is "compensation for services obtained without fraud or deceit and in the normal routine of a business." 156 F. Supp. 3d 374, 385 (E.D.N.Y. 2016).[3] Cases relied upon by the defense make much the same point. *See United States* v. *Robinson*, 663 F.3d 265, 272 (9th Cir. 2011); *United States* v. *Marmolejo*, 89 F.3d 1185, 1190 n.5 (5th Cir. 1996) ("§ 666(c), which excludes 'bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business,' refers to the

---

the job was part-time and that the amount of work performed was not mentioned in *Grubb*'s Section 666(c) analysis. *Mills*, 140 F.3d at 633 n.1 (quoting *Grubb*, 11 F.3d at 431).

[2] If anything, the reasoning in *Mills* supports the Government's position here. In *Mills*, the Sixth Circuit explained that the actual amount of the compensation of the ill-gotten jobs should not be considered in determining whether the business or transaction in connection to which the bribes were given was worth more than $5,000. 140 F.3d at 633. Instead, the court determined that the value of that business or transaction—i.e., the value of the ill-gotten jobs—should be determined by looking at the cost of the job opportunities themselves, judged by the cost of the bribes, which were below $5,000. *Id.* Even if one were to extend the logic of *Mills* to employment given as the bribe—which would be incorrect for the reasons explained above—the job opportunity itself would suffice to prove up the bribe element. As the *Mills* court explained, the job opportunity had independent value, the bribe element has no minimum threshold for the value of the bribe, and thus the provision of a job opportunity would have satisfied Section 666's bribe element. *Id.*; *see also Robinson*, 663 F.3d at 271 (explaining that "the *subject matter* of the bribe must be valued at $5,000 or more; the bribe itself need only be 'anything of value'" (emphasis in original)). Here, the Government will prove that the subject matter of the bribe—lucrative business before New York State—was worth more than $5,000 to the Energy Company.

[3] Kelly attempts to distinguish *Walsh* on the basis that *Walsh* was an embezzlement case under Section 666, not a bribery case. Kelly fails to explain how the plain language of Section 666(c) can have one meaning in an embezzlement case and another meaning in a bribery case.

3

alleged wrongdoing, to ensure that the statute is not applied to 'acceptable commercial and business practices . . . .'" (quoting H.R.Rep. No. 797, 99th Cong., 2d Sess. 30, *reprinted in* 1986 U.S.C.C.A.N. 6138, 6153)).

It is equally clear that a job given in order to influence or reward a government agent in relation to State business is not free from fraud or deceit and is not given in the normal routine of business, even where the person actually performs job functions. These were the circumstances addressed in *United States* v. *Bryant*, where the court held that "[s]ince the payments at issue were allegedly compensation for Bryant's undisclosed, 'primary role' as a legislator on the take, rather than simply for work pursuant to Bryant's publicly disclosed job description, it cannot be argued with a straight face that the payments were 'bona fide' salary paid in the 'usual course of business,' for purposes of this motion to dismiss." 556 F. Supp. 2d 378, 427 (D.N.J. 2008), *aff'd* 655 F.3d 232 (3d Cir. 2011); *see also id.* at 429 ("If a public official sells his office for wages, even if some legitimate work is performed in exchange for those wages, it is sufficiently clear that such wages are not 'bona fide.'").[4] Similarly, in *United States* v. *Hamilton*, the court considered a claim that the defendant's attorney was ineffective for not moving to dismiss the bribery count on the ground that the defendant's salary for an otherwise legitimate position that was given in exchange for his assistance with an appropriation as a member of the Virginia House of Delegates was bona fide compensation and therefore not illegal pursuant to Section 666(c). No. 11 Cr. 13 (HEH), 2014 WL 4230457, at *3 (E.D. Va. Aug. 25, 2014). The court rejected the argument because "[t]he evidence disclosed that the salary was paid as a *quid pro quo* for the underlying appropriation." *Id.*

The Second Circuit reached much the same conclusion in *United States* v. *Biaggi*, 909 F.2d 662 (2d Cir. 1990), a bribery case under 18 U.S.C. § 201. There, the evidence at trial showed that the regional administrator of a government agency was promised future legitimate employment in exchange for being influenced with respect to the performance of his official duties. *Id.* at 684-85. Responding to a challenge to the sufficiency of the evidence on the basis that the arrangement demonstrated at most a gratuity and no *quid pro quo*, the Second Circuit explained that the promise of a real job constitutes bribery when accepted by the government official "in exchange for his willingness to be influenced in performing his duties for [the briber's company's] benefit." *Id.* at 685. And the First Circuit has reasoned in the honest services fraud context that a public official's having "performed some marketing services did not prevent the jury from regarding the payments as primarily intended by [the briber] to secure [the public official's] legislative help." *United States* v. *Urciuoli*, 613 F.3d 11, 14 (1st Cir. 2010); *see also Bryant*, 655 F.3d at 243 (relying on *Urciuoli* in the bribery context).[5]

---

[4] Without apparent irony, Kelly suggests that the Court may ignore *Bryant* as "an out-of-circuit district court case," notwithstanding that his letter is premised entirely on *Mills*, a decision of the Sixth Circuit. (Kelly Letter 6.)

[5] Analogously, the Second Circuit has rejected the argument that, under the misapplying funds provision of Section 666, a person who misapplies federal funds but does so for legitimate purposes is protected from criminal liability by Section 666(c). *United States* v. *Urlacher*, 979 F.2d 935, 938 (2d Cir. 1992) (affirming district court's denial of request to instruct jury on the exception contained in Section 666(c)); *see also United States* v. *Cornier-Ortiz,* 361 F.3d 29, 36 (1st Cir. 2004) ("That the payments were made for a legitimate purpose—to hire a CGP expert to

The conclusion that a job, however real the job responsibilities, provided to influence or reward a government agent in relation to State business is not "bona fide" under Section 666(c) is similarly apparent from the history and structure of the statute itself.  A contrary conclusion would shield from liability bribes paid in the form of employment, no matter how valuable that employment, so long the employee did work, and would result in trials where guilt or innocence would depend on the jury's precise valuation of particular job functions.[6]  This result was clearly not Congress's intent in adding Section 666(c), which was "to avoid . . . possible application [of Section 666] to *acceptable* commercial and business practices."  H.R. Rep. No. 797, 99th Cong., 2d Sess. 30, *reprinted in* 1986 U.S.C.C.A.N. 6138, 6153 (emphasis added).  Indeed, the mere opportunity for employment is valuable and may itself constitute a bribe.  *See Biaggi*, 909 F.2d at 684 (noting that "the promise of a job" constitutes a thing of value under 18 U.S.C. § 201's bribery prohibition); *see also United States* v. *Crozier*, 987 F.2d 893, 901 (2d Cir. 1993) ("[A]ny payment that the defendant subjectively believes has value, including a loan, constitutes a thing 'of value' within the meaning of § 666 . . . ."); *Chevron Corp.* v. *Donziger*, 974 F. Supp. 2d 362, 597 (S.D.N.Y. 2014) (under the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(a), "[t]he term 'anything of value' is construed broadly to include such benefits as employment offers").

Nor can Kelly escape the result of his providing a job to Joseph Percoco's wife in exchange for Percoco's use of his official position and influence through the bald assertion—not supported in fact or law—that the Government has not charged and cannot argue that the provision of Percoco's wife's job itself was a bribe.  In support of this claim, Kelly points to a paragraph of the Second Superseding Indictment stating that Kelly "'arranged for the Energy Company to pay *more than $287,000 in bribes* to JOSEPH PERCOCO.'"  (Kelly Letter 8 (quoting S2 Indictment ¶ 29) (emphasis in the Kelly Letter).)  In Kelly's view, this paragraph, which refers to payments made as Percoco's wife's salary, demonstrates the Government's view that the salary, and not the job itself, constituted the bribe.

While it is certainly true that the salary payments were bribe payments—and, for the reasons set forth above, were not "bona fide salary, wages, fees, or other compensation," 18 U.S.C. § 666(c)—that hardly means that the provision of the job itself was not also a bribe.  The charging instruments in this case are perfectly clear about the nature of the agreement between Kelly and Percoco.  (*See* S2 Indictment ¶ 30 ("Beginning in or about 2012, in response to repeated pressure from PERCOCO, KELLY agreed to and arranged for the Energy Company to create a 'low-show' job for PERCOCO's wife that resulted in payment to the PERCOCOs of $7,500 per month."); Compl. ¶ 43 ("JOSEPH PERCOCO, a/k/a "Herb," and PETER GALBRAITH KELLY, JR., a/k/a "Braith," the defendants, reached an agreement under which the Energy Company would employ and make payments to PERCOCO's wife and, in exchange, PERCOCO agreed to use, and did in fact use, his official position and influence to assist the Energy Company with State actions as opportunities arose.").)  Indeed, at the pretrial conference, the Court well understood the nature of

---

obtain funding for maintenance work that was indeed done—does not render them bona fide under the statute if they were intentionally misapplied, as they were here via sham contracts that skirted conflict of interest rules . . . .").

[6] Of course, evidence tending to show whether or not the person actually did perform job functions may be relevant, as in this case, as indicia of the defendant's intent when providing the employment.

the criminal conduct: "As I understand the government's theory, it is that she was given the job, that that was the quid, hiring her." (Tr. 35:3-5, Dec. 28, 2017; *see also id.* at 35:22-23 (noting the import of circumstances where "the whole theory is that the reason the person has the job that that was the bribe").)

\* \* \*

For the foregoing reasons, Kelly's contention—not contested at the pretrial conference—that Section 666(c) applies to what he terms the "bribe element" of Section 666 is beside the point. Where the evidence demonstrates that a job is provided in order to influence or reward a Government agent in relation to State business, neither the job nor the associated wages are "bona fide salary wages, fees or other compensation . . . in the usual course of business" under Section 666(c). Of course, as the Court indicated at the pretrial conference, whether the jury should receive an instruction regarding bona fide compensation under Section 666(c), and, if so, what form that instruction should take, is an issue that can be further discussed and resolved at the appropriate time. (*See* Tr. 38:20-39:11, Dec. 28, 2017.)

        Respectfully submitted,

        GEOFFREY S. BERMAN
        United States Attorney


By: /s/
    Janis Echenberg/Robert Boone/
    David Zhou/Matthew Podolsky
    Assistant United States Attorneys
    (212) 637-2597/2208/2438/1947


cc: Counsel for all defendants (via ECF)