**Schulte Roth&Zabel** LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Barry A. Bohrer
212.756.2380

Writer's E-mail Address
Barry.Bohrer@srz.com

January 5, 2018

**BY ECF**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   United States v. Percoco, et al., S2 16 Cr. 776 (VEC)

Dear Judge Caproni:

On behalf of our client, Joseph Percoco, we respectfully submit this letter in opposition to the government's motion *in limine* to preclude the expert testimony of Michael Kunkel.[1] Contrary to the government's contentions in its letter to this Court dated December 27, 2017 (ECF No. 418) ("Gov't Expert Ltr."), the limited expert testimony that Mr. Kunkel may be called upon to offer is clearly relevant to a potential defense to the charges against Percoco and Kelly, and the government does not seriously dispute the reliability of the proffered testimony.

## Background

On November 28, 2017, Mr. Percoco provided notice to the government that, should there be a defense case, he or his co-defendants may call Michael Kunkel, Director of Investigative Services for Setec Investigations, as an expert witness. (Ex. A ("Percoco Expert Ltr.").)  If called, Mr. Kunkel would offer narrow testimony about the existence and technical reasons for numerous blank emails in this case.

---

[1] Peter Galbraith Kelly, Jr. joins this motion.

Honorable Valerie E. Caproni
January 5, 2018
Page 2

As we explained to the government, our document review is still ongoing.[2] To assist the government's review of the proffered expert testimony, we provided the government with examples of what we were encountering, just as we provided examples to a Setec representative.

The government then proceeded to file the instant motion *in limine* to preclude any potential expert testimony from Mr. Kunkel, basing its motion on faulty inferences drawn from the examples of blank emails that we provided and erroneous assumptions about the intended purpose of Mr. Kunkel's testimony. Notably, the government does not dispute the only two facts that Mr. Kunkel would be called to establish: that blank emails exist, and that they exist because of the way in which the seized device was configured. For the reasons stated below, the government's motion should be denied.

## Discussion

An expert may be permitted to testify where such testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). As the gatekeeper to such evidence, the Court must "ensure the reliability and relevancy of expert testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). In exercising its gatekeeping function, courts should make admissibility determinations "in accordance with the liberal admissibility standards of the federal rules[.]" *United States v. Morgan*, 53 F. Supp. 3d 732, 740 (S.D.N.Y. 2014) (internal citation and quotation marks omitted). Indeed, "the Federal Rules of Evidence 702 Advisory Committee found in examining post-Daubert case law that 'the rejection of expert testimony is the exception rather than the rule.'" *Id.* (internal citation omitted).

As explained in our notice, and described to the Court during our December 28, 2017 pre-trial conference, the defendants in this case have identified numerous emails produced to them with only certain categories of data available. Specifically, in such emails there is information in the "to," "from," and "subject line" fields, but the content field, *i.e.*, the body of the email, appears to be blank. Moreover, the "subject line" in many of these emails indicates that there would have been content in the email's body. When counsel described those observations to a representative of Setec Investigations, a computer forensics and electronic discovery firm, the representative explained that the issue was a function of how Microsoft Outlook was configured on the devices from which the emails were extracted, and that this configuration is both common and serves the purpose of saving space on a user's computer.

The purpose of Mr. Kunkel's testimony would be to explain that Microsoft Outlook configuration issue to the jury. In other words, to explain that, contrary to what the jury might assume, the likely reason that the content of certain emails appears to be blank is not because those emails actually lacked content when they were sent or received, but because of the way Outlook is configured. The government is of the view that because Mr. Kunkel's testimony would not assist the jury in reconstructing the content of blank emails, the testimony is irrelevant

---

[2] As the Court is aware, we recently received a substantial volume of documents from CPV that had not previously been produced. We are still reviewing the production to determine whether versions of the previously produced blank emails are now available to the defendants with content.

Honorable Valerie E. Caproni
January 5, 2018
Page 3

and lacks any probative value. But this argument mischaracterizes the purpose of Mr. Kunkel's proffered testimony.

Mr. Kunkel would not opine on what the content of the emails may have been, and nothing in our notice concerning his potential testimony suggests as much. Rather, as counsel explained during the December 28, 2017 pre-trial conference, the government alleges that Mr. Percoco's wife worked a "low show" job. Indeed, the government has acknowledged that, consistent with its own theory of the case as articulated in the indictment, the government will present evidence that Mr. Percoco's wife "performed limited work" and that "the fact that Percoco's wife performed limited work is relevant[.]" Gov't Expert Ltr. at 2, 7. Thus, to the extent blank emails exist that would have otherwise reflected work that Ms. Percoco was doing, they are clearly probative of our defense to these allegations.

The government also urges this Court to assume that, because the handful of examples provided by counsel do not appear to be related to facts at issue in this case, no other blank emails could be relevant and, therefore, Mr. Kunkel's potential testimony is irrelevant. That assumption would be illogical. The examples cited by the government were just that – *examples*. They were provided to help the government explore what was causing blank emails to exist; contrary to what the government suggests, there is no reason to assume that task requires independent review of every single individual blank email.

The government also warns of what it characterizes as the "likely" confusion and "improper inferences" to which Mr. Kunkel's potential testimony would subject the jury. This argument, like the contention that Mr. Kunkel's testimony is irrelevant, is based on the government's misconceived notions about the nature and purpose of Mr. Kunkel's potential testimony. Rather than giving the jury the impression that a witness "purposefully deleted the content of now-blank emails," *see* Gov't Expert Ltr. at 10, which, ironically, is consistent with the admitted conduct of the government's own cooperating witness, Mr. Kunkel would explain the reason that, independent of any intentional conduct by a particular individual, certain emails that likely once contained content are now blank.

Nor is Mr. Kunkel's testimony unreliable. The government does not even dispute the conclusions proffered in his expert notice, and it offers not a single alternative explanation to suggest Mr. Kunkel's conclusions are wrong. Instead, the government again complains that it has only been provided with examples, rather than the entire universe of blank emails. But, as Mr. Kunkel will testify, he believes the cause of the issue is both universal to all of the blank emails and apparent on the face of the examples. Moreover, the government has been in possession of the seized devices for more than 18 months. It has exhaustively reviewed the contents of those devices—which appear frequently throughout the government's own exhibit list. The government knows which emails have been included in the defendants' exhibit lists and from which devices those emails came.

The expert testimony that Mr. Kunkel may be called upon to provide is, frankly, uncontroversial, and more appropriate for a stipulation than a *Daubert* hearing. Nonetheless, for

Honorable Valerie E. Caproni
January 5, 2018
Page 4

the reasons stated above, we respectfully submit that the Court should deny the government's motion *in limine* to preclude the potential expert testimony of Michael Kunkel.

                                                          Sincerely,

                                                          /s/ Barry Bohrer
                                                          Barry A. Bohrer
                                                          Michael L. Yaeger
                                                          Andrew D. Gladstein
                                                          Abigail F. Coster

cc:      All Counsel (*Via ECF*)