**Schulte Roth & Zabel** LLP

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Writer's Direct Number
212.756.2380

Writer's E-mail Address
Barry.Bohrer@srz.com

February 19, 2018

**BY ECF**

Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   **United States v. Percoco, et al., 16 Cr. 776 (VEC)**

Dear Judge Caproni:

      We represent Joseph Percoco in the above-referenced matter.  In order to assist the Court as it prepares the jury charge, we respectfully submit this letter regarding the applicability of 18 U.S.C. § 2(b) in this case, and specifically to Counts One, Three, Five, and Seven: the counts against Percoco that concern the Syracuse Developer.[1]

I.   **"Official Right" Must Be Present at or Before the Time Property Is "Obtained"**

      The Hobbs Act is directed at "[w]hoever in any way or degree obstructs, delays, or affects commerce … by robbery or extortion or attempts or conspires so to do."  18 U.S.C. § 1951(a).  The Act defines extortion as "the obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).  If there is no use of actual or threatened force, violence, or fear, "the official's position provides the [necessary] coercive element."  *United States v. Tomblin*, 46 F.3d 1369, 1383 (5th Cir. 1995).

      But whatever the means by which property is obtained, the "obtaining of property from another" determines the time of the Hobbs Act extortion.  This is because, as the Supreme Court has held, extortion "is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts."  *Evans v. United States*, 504 U.S. 255, 268 (1992); *see also McDonnell v. United States*, 136 S. Ct. 2355, 2365 (2016) (citing *Evans*).

---

[1]   For convenience, we use the numbering of the Counts and paragraphs in the "Trial" Indictment, ECF No. 397-1.  We also use the phrasing of the document.  *E.g.*, "Syracuse Developer" as opposed to "COR Development, LLC."

Honorable Valerie E. Caproni
February 19, 2018
Page 2

It follows that Hobbs Act extortion cannot be proven if the official right element was not present at the time at which property was obtained. Justice Stevens, the author of the majority opinion in *Evans*, explained why that was so the year before, in his dissenting opinion in *McCormick v. United States*, 500 U.S. 257 (1991). There, the Justice explained that a Hobbs Act extortion was either complete or incomplete at the moment property was obtained, and that what happened at that point could neither undo a committed crime nor complete an uncommitted crime. When the defendant took the money, he was either guilty or not guilty, and later events would not change that fact:

> As I have explained, the crime of extortion was complete when petitioner accepted the cash pursuant to an understanding that he would not carry out his earlier threat to withhold official action and instead would go forward with his contingent promise to take favorable action on behalf of the unlicensed physicians. What he did thereafter might have evidentiary significance, but could neither undo a completed crime nor complete an uncommitted offense. When petitioner took the money, he was either guilty or not guilty.

500 U.S. at 283 (Stevens, J.). In other words, the element of "official right" must be present at the time property is obtained; otherwise the property could not have been obtained "under" color of official right.

Thus, to prove the Hobbs Act extortions alleged in Count Three and Count One in this case – the Hobbs Act counts alleging, respectively, that Percoco extorted or conspired to extort the Syracuse Developer – the government must satisfy the "official right" element at the time that Percoco obtained property. And the Indictment specifically alleges that Percoco received the property at issue from "at least in or about August 2014 up through and including at least in or about October 2014." Indictment ¶ 19. But that is far before the government has alleged that Percoco performed any "official act" relating to the Syracuse Developer.

The government has suggested that, if it cannot prove that Percoco was a public official at the time that he obtained property, it will attempt to prove under §2(b) that Percoco willfully caused Andrew Kennedy to "give [the Syracuse Developer] the state business without the LPA." Tr. 4233, ln. 9.[2] But the actions by Kennedy to which the government points happened only after the property was obtained, and therefore cannot complete the charged crime. When Percoco took the consulting payments alluded to in ¶ 19 (the payments received from August to October 2014), Percoco was either guilty or not guilty, and the government cannot import "official right" that only came into existence at a later date. And the problem is larger still for the other official acts alleged in the counts related to the Syracuse Developer, *i.e.*, the release of funds and the raise for Steve Aiello, Jr., because those events occurred in 2015.

---

[2] This theory of liability is contrary to the charging language in clauses in Counts One and Three, which specifies that Percoco was the public official acting under color of official right and performing the official acts that were part of the alleged *quid pro quo*. Accordingly, the theory should be precluded as an improper amendment of the Indictment. The government did not provide adequate notice of their contrary theory simply by listing "18 U.S.C. § 2."

The Second Circuit's decision in *United States v. Margiotta*, 688 F.2d 108 (1982), is not to the contrary. In that case the defendant, an extraordinarily powerful Republican Party boss on Long Island with a "stranglehold on the respective governments of Nassau County and the Town of Hempstead," *id.* at 122, caused public officials in the County and Town to appoint favored insurance agencies as their broker of record. In exchange, the insurance agencies agreed to set aside 50% of the insurance commissions and other compensation they received to be distributed to insurance brokers and others "designated by" or "politically allied with" Margiotta. *Id.* at 113-14. Thus, the inducement by official right in *Margiotta* happened before the property was obtained. *See also id.* at 132 ("the jury could reasonably find that Margiotta had caused public officials in Hempstead and Nassau County to appoint and retain the Williams Agency as Broker of record, a prerequisite step in the process of extorting insurance payments. The insurance commissions simply could not have been generated but for this official action.") If the government seeks to rely on *Margiotta* here, their proof will have to follow the same form.

## II. Count Seven Requires Proof that, at the time of Solicitation, an Agent of New York State Accepted a Bribe in Exchange for Official Acts

The language of Count Seven, the Section 666 charge in the Indictment alleging that Percoco solicited bribes from the Syracuse Developer, includes an official act element. Specifically, Count Seven alleges that "PERCOCO solicited and accepted cash and things of value from the Syracuse Developer in exchange for official actions by PERCOCO to benefit the Syracuse Developer." Indictment ¶ 38. Accordingly, the government must prove an official act as an element of Count Seven. *See United States v. Skelos*, 707 Fed. App'x 733, 737-38 (2d Cir. Sept. 26, 2017) (holding that deficiencies of official acts jury charge were not harmless even as to § 666 count because the jury was charged, at the government's request, on a § 666 theory based on "official acts," the definition of which is cabined by the constitutional concerns in *McDonnell*).

The Supreme Court's decision in *McDonnell v. United States*, 136 S.Ct. 2355 (2016), directs that an official performs an official act when he makes a "formal exercise of governmental power" that was "conferred by the authority of his office." *McDonnell*, 136 S.Ct. at 2367 and 2369; *see also* Mem. of Law in Support of J. Percoco's Mot. to Dismiss, ECF No. 187 at 9-14. At a minimum, official acts must therefore be performed by officials: people officially working for, or formally vested with official authority by, government entities. And because the government must prove that Percoco performed an official act, it must also prove that Percoco was a public official at the time of his alleged solicitation of things of value from the Syracuse Developer.

Further, the government must prove that Percoco was an "agent" of New York State at the time that he allegedly solicited bribes from the Syracuse Developer. That is, the statute's plain terms make the status of the payee as a current "agent" a necessary element of the offense; only payments "accept[ed]" by Percoco while he was "***being*** an agent" of the government fall within its scope. 18 U.S.C. § 666(a)(1)(B) (emphasis added); *see also United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes.")

Proving that someone used to be an agent of the State or was in the process of "becoming" an agent of the State will therefore not suffice.

For that reason it is important to note what the government will actually have to prove to establish that someone was an agent of the state at the time. The government cannot merely show that he was an "influential" or "powerful" person; instead, it must show that he acted with "authority" on behalf of New York State. This is because § 666 defines an "agent" as a "person authorized to act on behalf of" a government or agency. 18 U.S.C. § 666(d)(1). And "authority" naturally suggests some kind of formality: an elected position, a state or local law, a contract—something official. *See* BLACK'S LAW DICTIONARY (10th ed. 2014) ("authority" is "[t]he official right or permission to act, … to act legally on another's behalf"); *see also Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1180 (10th Cir. 2005) ("Here, the plain meaning of 'authorized' is '1: gave authority to: empowered; 2: gave legal or official approval to' … '[]gave legal authority; empowered … formally approved[]' … Therefore, based solely on the statutory language used, the term 'authorized representative' appears to require some sort of tangible delegation to act in one's shoes.") (alterations omitted) (quoting WEBSTER'S COLLEGE DICTIONARY (2003) and BLACK'S LAW DICTIONARY (7th ed. 1999)).

This natural suggestion of the phrase "person authorized to act on behalf of" is further underscored by the statute's examples of such persons: a "servant or employee, and a partner, director, officer, manager, and representative." 18 U.S.C. § 666(d)(1). All of these are relations created by contract or a formal appointment process of some kind. Accordingly, the most natural reading of the statute is that the "agent" in this case must have derived "authority" from a similar source. *See Hughey v. United States*, 495 U.S. 411, 419 (1990) (invoking the *ejusdem generis* canon of statutory interpretation that "a general statutory term should be understood in light of the specific terms that surround it").

The plain meaning of "authorized to act" is further supported by numerous opinions by the U.S. Courts of Appeals. As those cases illustrate, for criminal liability under § 666 to attach, a defendant must be formally vested with some degree of legal authority to act—whether by virtue of formal employment, elected official position,[3] state or local law,[4] or a contract deputizing the defendant to act on behalf of the principal government or organization for a particular project or initiative.[5] One way or another, there must be a formal, official relationship or legal command conferring authority upon a defendant.

---

[3] *See, e.g.*, *United States v. Willis*, 844 F.3d 155, 167 (5th Cir. 2016); *United States v. Beldini*, 443 F. App'x 709, 719 (3d Cir. 2011).

[4] *See, e.g.*, *United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009); *United States v. Langston*, 590 F.3d 1226, 1234 (11th Cir. 2009); *United States v. Phillips*, 219 F.3d 404, 412-13 & n.13 (5th Cir. 2000); *United States v. Sunia*, 643 F. Supp. 2d 51, 67-68 (D.D.C. 2009).

[5] *See, e.g.*, *United States v. Mazer*, 631 F. App'x 57, 61 (2d Cir. 2015), cert. denied, 137 S. Ct. 827 (2017); *United States v. Lupton*, 620 F.3d 790, 793, 801 (7th Cir. 2010); *United States v. Toro*, No. 89 CR 0268 (RWS), 1989 WL 63118, at *2 (S.D.N.Y. June 8, 1989); *see also United States v. Bonito*, 57 F.3d 167, 173 (2d Cir. 1995); *United States v. Moeller*, 987 F.2d 1134, 1137-38 (5th Cir. 1993).

Finally, our interpretation of the text of § 666 also draws support from a comparison to similar statutes, such as 18 U.S.C. § 665, the immediately preceding statute in the code. Section 665 criminalizes theft or embezzlement by an "officer, director, agent, or employee" of an organization receiving assistance under the Workforce Innovation and Opportunity Act. However, § 665 does not directly define "agent," and it broadens the term beyond persons authorized to act for an organization. In addition to covering "officer[s], director[s], agent[s], [and] employee[s]," the statute reaches persons "*connected in any capacity* with any agency or organization receiving financial assistance or any funds." 18 U.S.C. § 665(a) (emphasis added). Section 666 is far narrower in that respect.

Such distinctions deserve careful attention, as the Supreme Court has expressly stated that judges should take a narrow interpretation of the bribery statutes in particular. In *United States v. Sun-Diamond Growers of California*, 526 U.S. 399 (1999), the Court wrote that the "intricate web of [statutes and] regulations, both administrative and criminal, governing the acceptance of gifts and other self-enriching actions by public officials," 526 U.S. at 409, has created "an area where precisely targeted prohibitions are commonplace, and where more general prohibitions have been qualified by numerous exceptions." *Id.* at 412. "Given that reality," the Court opined, "a statute in this field that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter." *Id.*; *see also McDonnell*, 136 S. Ct. at 2373 (quoting the "scalpel vs. meat axe" passage approvingly). Accordingly, when interpreting §666's terms "agent" and "authorized to act," the Court should interpret them narrowly.

Thus, given the requirements of the Indictment's own language, the text of § 666, and the serious limits to the government's evidence, to prove Count Seven, the government may again have to resort to § 2(b) and the theory that Percoco willfully caused Andrew Kennedy to "give [the Syracuse Developer] the state business without the LPA." Tr. 4233, ln. 9. Under this theory, Andrew Kennedy would be the necessary public official and "agent" of New York State.[6] But once again this theory runs afoul of the statute at issue. The actions by Kennedy to which the government would point happened only after the alleged bribe was solicited, and therefore cannot complete the charged crime in Count Seven. And once again, the problem is only larger for the allegations related to the release of funds and the raise for Steve Aiello, Jr. because those events occurred in 2015.

### III. The Conspiracy Counts, Including Counts One and Five, Cannot Be Proved Under 18 U.S.C. § 2(b)

The government's § 2(b) theory runs into still more trouble when it is applied to Counts One and Five, both of which are conspiracy charges. For that reason they cannot be sustained on a theory of aiding and abetting liability under § 2(b). "'[A]iding and abetting a conspiracy' is not a valid theory of liability." *United States v. Ulbricht*, No. 14-CR-68 KBF, 2015 WL 413426, at

---

[6] This theory of liability is contrary to the charging language in Count Seven, including both "to wit" clauses, because the charging language specifies that Percoco was the "agent" and performed the official acts that are part of the alleged *quid pro quo*. The theory should be precluded as an improper amendment of the Indictment because the government has not given adequate notice of it simply by listing "18 U.S.C. § 2."

\*5 (S.D.N.Y. Feb. 2, 2015) (citing *United States v. Perry,* 643 F.2d 38, 46–47 (2d Cir.1981)). Accordingly, the government cannot rely on § 2(b) and *United States v. Margiotta*, 688 F.2d 108 (2d Cir. 1982), to prove Count One (conspiracy to commit extortion under color of official right) or Count Five (conspiracy to commit honest services wire fraud).

Instead, to prove the "official right" element of Count One, the Hobbs Act conspiracy count, the government must prove that Percoco, a member of the alleged conspiracy, was a public official at the time the alleged criminal agreement was made. *See Ocasio v. United States*, 136 S.Ct. 1423, 1432 (2016) (holding, in a Hobbs Act conspiracy case, that the government must prove that the conspirators agreed that the underlying crime be committed by a member of the conspiracy who was capable of committing it); *see also United States v. Manzo*, 636 F.3d 56, 64 (3d Cir. 2011) (affirming dismissal of both conspiracy and substantive Hobbs Act charges against an unsuccessful mayoral candidate and his campaign manager-brother because they were not public officials, nor alleged to be "act[ing] []or pretend[ing] to act in an official capacity"); *United States v. Tomblin*, 46 F.3d 1369, 1382 (5th Cir. 1995) ("Private persons have been convicted of extortion under color of official right, but these cases have been limited to ones in which a person masqueraded as a public official, was in the process of becoming a public official, or aided and abetted a public official's receipt of money to which he was not entitled"); *United States v. Rudi*, 902 F.Supp. 452, 459 (1995) (Stanton, J.)(summarizing the Second Circuit's holding in *Tillem*, the restaurant inspectors' case, by noting that "[t]he consultant [in *Tillem*] did not ***represent*** to the payors of the money that he had the authority to pass or fail a restaurant. Thus, he did not obtain money under color of his own official right")(emphasis added).

Likewise, to prove, as Count Five alleges, that New York was deprived of its right to Percoco's "honest services as a senior official in the Office of the Governor," Indictment ¶ 34, the government has to prove that Percoco was in fact a senior official in the Office of the Governor at the time that the alleged criminal agreement was made. It will not suffice to show that Percoco "willfully caused" New York to be deprived of some other, unnamed official's honest services because no other official is alleged to have been a member of the conspiracy.

                                              Respectfully submitted,

                                              /s/ Barry A. Bohrer
                                              Barry A. Bohrer
                                              Michael L. Yaeger
                                              Andrew D. Gladstein
                                              Abigail F. Coster
                                              Nicole Geoglis