

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 13, 2018

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Kaloyeros, et al.*, 16 Cr. 776 (VEC)

Dear Judge Caproni:

    In the Government's letter to the Court dated May 11, 2018, (Docket No. 650), the Government noted that it did not believe the use of a jury questionnaire was necessary for the June Trial. The Government writes to explain its reasoning.

    The use of a jury questionnaire is not necessary for the June Trial because there has not been extensive pre-trial publicity about the trial in New York City. As the Court is likely aware, the Second Circuit has recognized the use of jury questionnaires in the following circumstances: (1) where a large number of prospective jurors must be screened, (2) where an anonymous jury is to be empaneled, (3) where there has been extensive pre-trial publicity, and (4) where the death penalty is sought. *See United States* v. *Quinones*, 511 F.3d 289, 299 (2d Cir. 2007). Indeed, in the January Trial, *United States* v. *Joseph Percoco et al.*, the Court allowed the use of a jury questionnaire after the defendants claimed that there had been extensive pre-trial press coverage about the case. The January Trial concerned allegations that defendants Peter Galbraith Kelly, Jr., Steven Aiello, and Joseph Gerardi, none of whom lived or worked in the New York City area, paid bribes to defendant Joseph Percoco, a top aide to Governor Andrew Cuomo, who resided and worked in the New York City area. Although the Court granted the defendants' requests for a jury questionnaire, it did so only after expressing immense skepticism about the need for one. The Court stated:

> I've not been convinced that there's been as much publicity about this case, or with all due respect, how well these defendants are known. They may be known in Syracuse or wherever. I'm just not convinced that with a New York City jury panel, that we're going to have very many people who are going to answer the opening question, 'Have you heard anything about this case? What do you know about this case?' that they're going to know anything . . . . So I'm just not convinced that we're going to have a lot of people who have a lot of preconceived notions of anything about these defendants . . . . I'm a little bit torn on this, but the defense really wants a questionnaire so I'm going to go along with them . . . .

(Docket No. 400, Tr. 25-26, 29).

Here, the Court's concerns cannot be overcome. As an initial matter, much of the press concerning the June Trial defendants and their alleged corruption of the Buffalo Billion initiative occurred around the time of the defendants' arrests, which took place over a year and a half ago, in or about September 2016. Publicity surrounding this case since that time largely has focused on the January Trial defendants, and in particular Joseph Percoco and his relationship with Governor Cuomo. Given the amount of time that has passed since the arrests of the June trial defendants, it is extremely unlikely that many potential New York City jurors will be so familiar with them or the issues relevant to the June Trial as to render the jurors unqualified. Moreover, unlike in the January Trial, in the June Trial, there is not a single defendant who lives in the New York City area, nor are any of the relevant companies based in the New York City area. The June Trial defendants also are not connected to Governor Cuomo, which, as noted, was the source of much of the pre-trial publicity affecting the January Trial. None of the defendants in the June Trial have ever worked for Governor Cuomo. To be sure, the conduct at issue in the June Trial involves the corruption of the Buffalo Billion economic development initiative put forth by Governor Cuomo. However, that initiative, and the alleged corruption surrounding it, is likely to be foreign to a New York City jury panel given that it concerns the revitalization of cities in the Upstate region of New York, not New York City.

In addition, none of the other circumstances in which juror questionnaires are used applies to the June Trial. This is clearly not a case where an anonymous jury will be empaneled, the death penalty is not sought, and it is not expected that a particularly large number of prospective jurors will be needed. Indeed, in the January Trial, which was expected to last between four and six weeks, approximately 100 jurors were called. The Government expects the June Trial to last between four and six weeks, so it anticipates the same number of jurors being called in the June Trial as were called in the January Trial. The screening of 100 jurors alone is not so significant as to necessitate the use of a jury questionnaire. *Cf. United States* v. *Rahman*, 189 F.3d 88, 121 (2d Cir. 1999) (approving court's use of comprehensive questionnaire in case involving over 500 prospective jurors); *United States* v. *Wilson*, 493 F.Supp.2d 537, 544 (E.D.N.Y. 2007) (observing, in a capital case, that "[n]early 600 potential jurors came to this courtroom to fill out 56-page questionnaires prepared by the parties and by the court.").

For the aforementioned reasons, the Government requests that a jury questionnaire not be used in the June Trial.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: /s/
Robert Boone/ David Zhou/Matthew Podolsky
Assistant United States Attorneys
(212) 637-2208/2438/1947

cc:  All parties (via ECF)

2