Michael C. Miller
212 506 3955
mmiller@steptoe.com

1114 Avenue of the Americas
New York, NY 10036
212 506 3900 main
www.steptoe.com



May 21, 2018

Via ECF

Hon. Valerie E. Caproni
United States District Court Judge
Southern District of New York
40 Foley Square
New York, NY 10007

**Re: *United States v. Percoco, et al.* (Case No. 16-cr-776) – Letter Motion to Exclude Proposed Testimony of Government Rebuttal Expert**

Dear Judge Caproni:

We represent Defendant Alain Kaloyeros in the above-referenced matter. We respectfully move to preclude the Government's rebuttal expert, George Harris, who the Government represents is an expert in procurement. We join and fully incorporate by reference here the parallel motions to preclude Dr. Harris' testimony brought by our co-defendants.

Rule 702 requires that (a) a witness be qualified by knowledge, skill, experience, training, or education to opine on a particular matter; (b) the witness' knowledge be helpful to the trier of fact to understand the evidence or to determine a fact in issue; (c) the proposed expert testimony be based on sufficient facts or data; (d) the proposed testimony be the product of reliable principles and methods; and (e) the expert have reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The party proposing to designate a witness as an expert bears the burden of establishing each of those elements by a preponderance of the evidence. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). The Government has failed to carry its burden under Rule 702 to establish that Dr. Harris is an appropriate expert witness.




According to the Government, Dr. Harris' self-professed area of expertise is with "public sector clients," particularly "in the sourcing of transportation-related products and services."[1] But the June trial does not involve "public" contracts, much less the sourcing of transportation-related products and services. Indeed, the Indictment alleges that the Board of Directors of a private not-for-profit entity, Fort Schuyler Management Corporation ("FSMC"), was misled about FSMC's issuance of requests for proposal ("RFP") for strategic development partners in Buffalo and Syracuse.[2] The Indictment does not allege any fraud in connection with any government contract, let alone contracts for transportation-related products or services.

As a result, Dr. Harris' proffered expertise is not an appropriate rebuttal to the Defendants' proposed expert testimony. Moreover, Dr. Harris' proposed testimony will not be relevant to the issues in dispute in this trial or helpful to the jury. For these reasons, Dr. Harris should be precluded from testifying at trial.

## I. <u>DR. HARRIS IS NOT A REBUTTAL EXPERT</u>.

Dr. Harris is not an appropriate rebuttal expert. Rebuttal experts must serve the limited purpose of providing testimony "to explain, repel, counteract or disprove" the expert testimony of the adverse party. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006); *Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 386 (S.D.N.Y. 2014) (same). Rebuttal reports are not, however, an opportunity to correct oversights in a party's case-in-chief. *Marmo*, 457 F.3d at 759. Where there is no evidence on a topic, there is nothing to rebut. *Id.* at 760 (affirming exclusion of rebuttal expert). Here, the Government's proposed expert witness will not be rebutting anything that the Defendants' experts intend to provide to the jury.

The Defendants have noticed two experts ("Defendants' Experts") to testify, *inter alia*, that the RFPs at issue in this case were issued by a private not-for-profit entity, and not by a New York State entity, and that these private sector RFPs are not governed by any public-sector procurement rules. Specifically, Mr. Laipple has noticed Joseph Hogan, "an expert in the methods of the pre-bid stage for both public and private work."[3] Mr. Hogan—drawing on his thirty years of experience with Associated General Contractors, New York State, LLC—will testify to his opinion that the relevant "project[s] were non-public work."[4] Mr. Aiello and Mr. Gerardi have noticed Ruth Walters, an expert on procurement practices, particularly in New

---

[1] Rebuttal Expert Disclosure Letter from Government at 4 (May 9, 2018) (attached hereto as Exhibit A) ("Disclosure"). Dr. Harris also has experience with some private-sector clients, but none of that appears related to the facts of this case. Based on Dr. Harris' Jencks material, it appears that the Government is leaning on his experience with public-sector clients.

[2] Second Superseding Indictment ¶ 7, ¶ 25.a, Dkt. No. 321 (S.D.N.Y. Sept. 19, 2017). FSMC is a private Type C, not-for-profit 501(c)(3) corporation incorporated under Sections 201 and 402 of New York Not-For-Profit Corporation Law. *See About Fort Schuyler Management Corporation (FSMC)*, www.ftsmc.org ("FSMC is a State University of New York (SUNY Polytechnic Institute) affiliated, private, not-for-profit, 501c(3) corporation that facilitates research and economic development opportunities in support of New York's emerging nanotechnology and semiconductor clusters.").

[3] Expert Disclosure Letter from Herbert Greenman at 1 (Apr. 25, 2018) (attached hereto as Exhibit B).

[4] *Id.*



York.[5] Ms. Walters—drawing on both her private-sector experience and her experience as Assistant Comptroller in New York—will testify that based on her experiential knowledge of "the differences between public and private procurement processes," FSMC was "not a state agency that is bound by New York State procurement laws."[6] In short, both experts will testify to their opinions that FSMC issued private RFPs and that those RFPs were not subject to the rules applicable to public RFPs.

Based on his Disclosure, Dr. Harris does not rebut any opinion reached by the Defendants' Experts. For example, Dr. Harris' Disclosure does not suggest anywhere that he has examined the RFPs, considered the private-sector status of FSMC, the not-for-profit entity issuing these RFPs, or reached any considered conclusion about whether these private sector RFPs should be governed by public sector rules, regulations, or industry practices. Instead, Dr. Harris in his Disclosure has simply assumed without analysis that public-sector rules, regulations, and industry practices apply. Disclosure at 1 ("In particular, the Government anticipates that Dr. Harris will testify as to industry practices with respect to public RFPs, and specifically that he will testify that it is inappropriate for the entity issuing the RFP . . . to share a draft with a single potential bidder. Moreover, the Government expects that Dr. Harris will testify that it is inappropriate for the Issuing Entity to meet and discuss a public RFP, prior to its official issuance, with a single potential bidder."). With this faulty assumption, he then proceeds to analyze "industry practices with respect to public RFPs" and conclude that the RFPs at issue did not conform with his understanding of "public" RFPs. In short, the Government's proposed expert witness does not respond at all to the proposed testimony of the Defendants' Experts. Dr. Harris should not be permitted to testify as a rebuttal expert.

## II. DR. HARRIS PROPOSED TESTIMONY IS NOT RELEVANT TO PRIVATE SECTOR PROCUREMENT PRACTICES.

Dr. Harris' alleged expertise in public-sector and transportation-related procurement rules is not relevant to the issues in dispute in this trial, *i.e.*, whether FSMC, a private not-for-profit entity was defrauded in connection with RFPs issued to line up strategic development partners in Buffalo and Syracuse.

Rule 702 governs the admissibility of expert testimony and charges courts with the "gatekeeping" function of "'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (*quoting Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). A qualified witness must possess "sufficient specialized knowledge to assist the jurors in deciding *the particular issues in the case*." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (emphasis added). "Although the qualification requirement is liberally construed, it is not a nullity." *Mancuso v. Consol. Edison Co.*, 967 F. Supp. 1437, 1442 (S.D.N.Y. 1997). The Second Circuit has "emphasiz[ed] that, because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to

[5] Expert Disclosure Letter from Stephen Coffey (Apr. 25, 2018) (attached hereto as Exhibit C).

[6] *Id.* at 2-3.



express expert opinions as to other fields." *Nimely v. City of New York*, 414 F.3d 381, 399 n.13 (2d Cir. 2005).

Courts have repeatedly excluded testimony from purported experts based on experience that does not "have direct relevance to the issues in the case." *Dreyer v. Ryder Auto. Carrier Grp.*, 367 F. Supp. 2d 413, 430 (W.D.N.Y. 2005); *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) (affirming exclusion of senior marketing executive as an expert on industry contracting practice because he had no experience with the specific types of contracts relevant to the lawsuit).

Dr. Harris' expertise regarding "public sector" procurement rules is simply not relevant to the issues in the June trial. FSMC, the entity which issued the RFPs at issue in this case, is a private not-for-profit corporation. By design, it is not a part of the New York State government.

## III. DR. HARRIS' PROPOSED TESTIMONY REGARDING "INDUSTRY PRACTICES WITH RESPECT TO *PUBLIC* RFPS" WILL NOT HELP THE JURY UNDERSTAND THE EVIDENCE ABOUT *PRIVATE* SECTOR RFPS.

"One of the fundamental requirements of Rule 702 is that the proposed testimony assist the trier of fact to understand the evidence or to determine a fact in issue. This helpfulness requirement is akin to the relevance requirement of Rule 401, which is applicable to all proffered evidence, but goes beyond mere relevance because it also requires expert testimony to have a valid connection to the pertinent inquiry." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004) (internal quotation marks and citation omitted). "The *Daubert* Court referred to this as 'fit,' noting that 'Rule 702's helpfulness standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" *Id.* (quoting *Daubert*, 509 U.S. at 591). The pertinent inquiry in this case revolves around private RFPs. The Government has not and cannot draw a "valid connection" between the proffered testimony about public procurement RFPs to private, strategic partnership RFPs that did not even involve the selling of any goods or services.

The procurement issues in this case are limited. The Government bears the burden of proving that Dr. Kaloyeros "deceived . . . [FSMC] and its Board of Directors . . . regarding the drafting and selection processes for the Syracuse RFP and the Buffalo RFP,"[7] and that he did so with intent to harm FSMC. Specifically, the Indictment suggests that the Government intends to introduce evidence that Dr. Kaloyeros "provide[d] secret information" about each RFP to the Buffalo and Syracuse Developers, "secretly tailor[ed] the [RFPs] so that the Syracuse Developer would be awarded the Syracuse RFP and the Buffalo Developer would be awarded the Buffalo RFP."[8] The Government intends to introduce evidence that Dr. Kaloyeros then deceived FSMC and its Board by representing "that the bidding processes . . . were fair, open, and competitive."[9] The jury will be put to the task of determining what "fair, open, and competitive" meant within the context of FSMC's ordinary RFP practice.

---

[7] Second Superseding Indictment ¶ 25.a, Dkt. No. 321 (S.D.N.Y. Sept. 19, 2017).

[8] *Id.* ¶¶ 24, 25.a.

[9] *Id.* ¶ 25.a.



FSMC and similar private non-profit corporations have been established with the specific intent that they be able to engage in procurement and non-procurement activities "free from restrictions otherwise applicable" to public agencies. *See Bordeleau v. State*, 960 N.E.2d 917, 921 (N.Y. 2011); *Hunts Point Term. Prod. Coop. Ass'n v. N.Y.C. Econ. Dev. Corp.*, 36 A.D.3d 234, 246 (N.Y. Sup. Ct. App. Div. 2006) (because EDC is a not-for-profit corporation, not a public agency, it is not required to submit contracts for public bidding or required to treat bidders fairly). Private not-for-profit corporations can therefore be expected to engage in practices different from those mandated by the "restrictions otherwise applicable" to public agencies. While public agencies can be expected to issue public RFPs, *see* N.Y. State Fin. Law § 144 (imposing requirements on public agencies and departments for public bidding and "public work"), private not-for-profit corporations can be expected to issue private RFPs.

Dr. Harris' testimony is only helpful to the jury if they assume the opposite, that FSMC—despite being a private non-profit entity specifically created so that it could issue private RFPs—in fact issued public RFPs.[10] *See Nora*, 164 F.3d at 746 (affirming exclusion of expert testimony about industry custom regarding informal contracting because it was premised on one party beginning production and there was no proof that production actually began; such evidence was misleading, not helpful); *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 641–42 (S.D.N.Y. 2016) (excluding expert testimony based on assumption about customer base because a lack of foundation for the assumption's accuracy caused the opinion "fail[] *Daubert*'s 'fit' requirement").[11] As in *Nora* and *LVL*, the helpfulness of Dr. Harris' testimony depends on assuming a hypothetical that has not been and cannot be proven because it is simply untrue. According to the Second Circuit's holding in *Nora* and the court's holding in *LVL*, Dr. Harris' testimony is therefore unhelpful to the jury and inadmissible.

---

[10] Dr. Harris is not helpful to the jury even under what appears to be the Government's alternative theory, *i.e.*, that the procurement rules of the SUNY Research Foundation (another private entity) applied to FSMC. The Government has recently suggested that it will offer evidence that the procurement rules of the SUNY Research Foundation ("Research Foundation") applied. *E.g.*, Gov't's Omnibus Mem. of Law in Opp'n to Defs.' Pretrial Mots. at 14, Dkt. No. 264 (June 30, 2017) ("The Board applied the procurement policies of the Research Foundation . . .."); *id.* at 55 ("[T]he Complaint alleges exactly that … [FSMC] used the procurement policies of the SUNY Research Foundation . . . ."); *see also* Letter Opp'n to Mots. in Lim. at 15, Dkt. No. 663 (May 18, 2018) ("the Government expects that [FSMC] Board members will testify that they also understood that the RFPs were administrated in general accordance with the Research Foundation guidelines").

As noted in their motion in limine, the Defendants assert that the Government should be precluded from introducing any evidence of procurement rules absent proof that any such rules were imposed upon or officially adopted by FSMC. Letter Mot. in Lim. at 2–5, Dkt. No. 637 (Apr. 25, 2018). But even if evidence of the Research Foundation procurement rules were deemed admissible, Dr. Harris' expert opinion would still not be helpful to the jury. His Declaration does not even mention the Research Foundation's procurement rules, much less assert that these rules apply to FSMC or that Dr. Harris has any particular expertise with respect to the Research Foundation's procurement rules. In short, Dr. Harris is not a helpful expert even if evidence of the procurement rules of the Research Foundation are deemed relevant to this dispute (which they are not).

[11] Dr. Harris' testimony would also mislead the jury and be inadmissible under Fed. R. Evid. 403. An abundance of testimony about public RFPs would lead the jury to think that these were public RFPs when, in fact, they were not or invite jurors to apply these standards anyway based on their personal belief that they *should* apply. At a bare minimum, Dr. Harris' testimony is inadmissible until the Government lays a foundation that these were public RFPs and public rules applied.




* * *

For the reasons stated above, Dr. Kaloyeros respectfully requests that the Court exclude Dr. Harris' testimony.

Respectfully submitted,

Michael C. Miller

cc: All counsel (via ECF)