

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 21, 2018

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Alain Kaloyeros, et al.*, 16 Cr. 776 (VEC)

Dear Judge Caproni:

    The Government respectfully moves *in limine* to preclude the proffered expert testimony of Ruth Walters, noticed by defendant Steven Aiello, and Joseph Hogan, noticed by defendant Michael Laipple. For the reasons set forth below, the testimony of the respective experts is both irrelevant and unreliable, and should therefore be precluded under Federal Rule of Evidence 702. In the alternative, the Government requests a *Daubert* hearing to determine the relevance and reliability of the experts' opinions.[1]

   **A. Background Facts**

    The Government has alleged, and expects to prove at trial, that defendants Steven Aiello and Joseph Gerardi, executives at a real estate development firm based in Syracuse, New York (the "Syracuse Developer"), and defendants Louis Ciminelli, Michael Laipple, and Kevin Schuler, executives at a real estate development firm based in Buffalo, New York (the "Buffalo Developer") conspired with defendant Alain Kaloyeros, the de facto head of Fort Schuyler Management Corporation ("Fort Schuyler"), a non-profit real estate corporation, in a bid-rigging scheme. Fort Schuyler was created by the College of Nanoscale Science and Engineering ("CSNE"), now referred to as the State University of New York Polytechnic Institute ("SUNY Poly"), to carry out CNSE's development projects. In or about October 2013, Fort Schuyler issued requests for proposals ("RFPs") to solicit bids from interested and qualified developers for CNSE development projects in Syracuse and Buffalo. Kaloyeros, with the assistance of a close advisor, Todd Howe, oversaw the drafting of the RFPs and, unbeknownst to Fort Schuyler and its Board of Directors, secretly tailored the RFPs so that the RFPs requested qualifications held by the Syracuse Developer and the Buffalo Developer. As a result, Fort Schuyler's evaluation committee and Board of Directors evaluated and voted on the bids related to the Syracuse and Buffalo projects not knowing

---

[1] The Government has noticed rebuttal expert George Harris to respond, should the Court permit either of the defendants' experts to testify.

that Kaloyeros and Howe had secretly designed the requirements of the respective RFPs to fit the Syracuse Developer and the Buffalo Developer. At trial, the Government expects that multiple witnesses who worked for Fort Schuyler, including the president and the director of procurement, will testify that they generally followed the SUNY Research Foundation's procurement policies when they administered RFPs, and that those policies are intended to promote open and free competition in procurement transactions and to ensure that the selection process is not influenced improperly. Moreover, the Government expects that Fort Schuyler Board members will testify that they also understood that the RFPs were administered in general accordance with the Research Foundation guidelines and thus were not improperly influenced.

### B. Defendants' Proposed Experts

Despite the availability of witnesses from Fort Schuyler and its Board of Directors to testify at trial, Aiello and Laipple each propose having an individual who has never worked at Fort Schuyler, never had any professional dealings with Fort Schuyler, and was not at all involved in the RFP processes at issue, testify as an expert about Fort Schuyler and their RFPs. Specifically, Aiello seeks to qualify Ruth Walters, the founder of the procurement consulting firm, "The Walters Group," as an expert to provide testimony regarding the following: (1) "the difference between public and private procurement processes;" (2) "the laws and regulations involved in a Request for Proposal (RFP) process;" (3) "that potential bidders are not preclude[d] from receiving, reviewing, or providing feedback on a draft or prospective RFP;" (4) "that Fort Schuyler Management Corporation is not a state agency that is bound by New York State procurement laws;" (5) "that the feedback provided by Mr. Gerardi on the draft RFP did not have a[n] effect on the competitive process;" and (6) "that the final RFP for the Preferred Developer in the Syracuse Region did not preclude an open, fair, and competitive process." (Ex. A. ("Aiello Expert Ltr. 1-2")). As discussed in more detail below, the proposed testimony is either irrelevant and therefore not helpful in "assist[ing] the trier of fact to . . .determine a fact in issue," Fed. R. Evid. 702, unreliable, or will "ursurp . . . the role of the jury in applying . . . law to the facts before it." *United States* v. *Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (internal citations omitted).

Laipple proposes to have similar testimony admitted through his purported expert, Joseph Hogan. As an initial matter, it is not entirely clear on what matters Hogan is an expert. Laipple has yet to provide a resume for Hogan, but instead has simply stated that Hogan "has been employed for Associated General Contracts . . . for approximately 30 years" and is "an officer for Building Services." (Ex. B. ("Laipple Expert Ltr. 1")). From this minimal description of Hogan's qualifications, Laipple proffers that Hogan "is an expert in the methods of the pre-bid stage for both public and private work" and "is eminently qualified to testify." (*Id*.). At any rate, Laipple seeks to qualify Hogan to provide testimony regarding the following: (1) "that the projects from Fort Schuyler Management Corporation ("FSMC") and the Fuller Road Management Corporation ("FRMC") suggests their project[s] were non-public work"; (2) "RFP Project[s] within the State of New York and typical practices by contractors"; (3) that "[t]estimony about the content of a forthcoming request for proposal . . . between an issuer and a potential responder are lawful, commonplace in the industry, and beneficial to both parties;" (4) that "the Buffalo RFP was generic and terms did not exclude qualified developers in the greater Buffalo area;" (5) that "the Buffalo RFP was consistent with both industry standards and the past practice of FSMC and FRMC;" (6) that "the Buffalo RFP was, in reality, an RFQ and did not pertain to a specific project and

responders were not competing on price;" (7) that "winning the Buffalo RFP meant obtaining an opportunity to negotiate a contract;" (8) that "because the Riverbend construction was not public work, New York State bidding laws did not apply;" and (9) testimony about "procurement models available in New York State, and the genesis of special-purpose entities like FSMC and FRMC". (Ex. B. ("Laipple Expert Ltr. 1-2)). As discussed below, none of the testimony Laipple seeks to admit is admissible as it is either irrelevant, unreliable, or a blatant attempt to usurp the jury's role in applying the facts to the law.

### C. Legal Standard

Expert testimony is admissible pursuant to Federal Rule of Evidence 702 if it is "both relevant and reliable." *Tiffany (NJ) Inc.* v. *eBay, Inc.*, 576 F. Supp. 2d 457, 458 (S.D.N.Y. 2007) (quotation marks omitted). The Court is the "gatekeeper" of such evidence. *See United States* v. *Rosario*, No. 09 Cr. 415 (VEC), 2014 WL 6076364, at *1 (S.D.N.Y. Nov. 14, 2014). In that role, the Court "must make several determinations before allowing expert testimony: (1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact." *Tiffany*, 576 F. Supp. 2d at 458 (citing *Nimely* v. *City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)). Furthermore, even if all these requirements are met, the Court may nonetheless exclude the expert testimony under Federal Rule of Evidence 403 if its prejudicial effect substantially outweighs its relevance. *United States* v. *Mulder*, 273 F.3d 91, 101 (2d Cir. 2001).

Expert testimony is relevant when it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Although "Rule 702 embodies a liberal standard of admissibility for expert opinions," *Nimely*, 414 F.3d at 395-96, such testimony "should be limited to situations in which the subject matter is beyond the ken of the average juror," *United States* v. *Lombardozzi*, No. 02 Cr. 273 (PKL), 2003 WL 1907965, at *2 (S.D.N.Y. Apr. 17, 2003). Accordingly, expert testimony is not proper with respect to "matters which a jury is capable of understanding and deciding without the expert's help." *Andrews* v. *Metro–North Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989).

Furthermore, "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony" and thus are not relevant testimony. *In re Rezulin Prods. Liab. Litig.* ("*Rezulin*"), 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004); *see also Linde* v. *Arab Bank, PLC*, 920 F. Supp. 2d 282, 285 (E.D.N.Y. 2011) (precluding testimony of "[e]xpert opinions regarding the motivations of suicide bombers and the charitable intentions of the Saudi Committee In Support of the Intifada Al Quds"). Indeed, "the question of intent is a classic jury question and not one for the experts." *Rezulin*, 309 F. Supp. 2d at 547 (quotation marks and alteration omitted). Speculative expert testimony about intent "cannot be saved by couching [the expert's] opinion as 'industry custom and practice.'" *Highland Capital Mgmt., L.P.* v. *Schneider*, 551 F. Supp. 2d 173, 183 (S.D.N.Y. 2008).

The reliability inquiry is flexible and "must be tied to the facts of a particular case." *Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 150 (1999). The Second Circuit has emphasized that "it is critical that an expert's analysis be reliable at every step." *Amorgianos* v. *Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "In deciding whether a step in an expert's analysis is

unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.*; *see also id.* at 265 ("[T]he district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony 'is the product of reliable principles and methods'; and (3) that 'the witness has applied the principles and methods reliably to the facts of the case.'" (quoting Fed. R. Evid. 702)). Minor flaws with an otherwise reliable expert opinion will not bar admission of that evidence; however, the Court should exclude the expert evidence "if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Id.* at 267 (quotation marks omitted).

At the motion *in limine* stage, the Court should make a preliminary determination under Federal Rule of Evidence 104(a) as to the admissibility of the defendants' proffered expert testimony. *United States* v. *Nektalov*, No. 03 Cr. 828 (PKL), 2004 WL 1469487, at *1 (S.D.N.Y. June 30, 2004). The defendants have "'the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.'" *Id.* (quoting Fed. R. Evid. 702 advisory comm. note). The Court may, in its broad discretion, order a factual hearing pursuant to Rule 104 to determine whether expert testimony is reliable under *Daubert* v. *Merrell Dow Pharma.*, 509 U.S. 579 (1993). However, "[t]he law requires only that the parties have an opportunity to be heard before the district court makes its decision, and an evidentiary hearing is unnecessary when the evidentiary record pertinent to the expert opinions is already well-developed." *Atl. Specialty Ins.* v. *AE Outfitters Retail Co.*, 970 F. Supp. 2d 278, 285 (S.D.N.Y. 2013) (internal citations and quotation marks omitted).

### D. Discussion

All of the proffered testimony of both Walters and Hogan is irrelevant and thus should be precluded. As stated earlier, the Government alleges that the defendants participated in a conspiracy to deceive Fort Schuyler and its Board of Directors into believing that the RFP processes Fort Schuyler used to select a preferred developer for its development projects in Buffalo and Syracuse were fair, open and competitive when, in truth and in fact, the RFPs related to those projects had been secretly tailored by the defendants to favor the Buffalo Developer and the Syracuse Developer. To counter that allegation, Aiello and Laipple separately seek to have an expert testify about RFPs in general and procurement processes other than the ones used by Fort Schuyler, among other things. For example, Aiello seeks to have Walters testify as an expert on "the difference between public and private procurement processes . . . [,] the laws and regulations involved in a Request for Proposal (RFP) process," and the idea that "potential bidders are not preclude[d] from receiving, reviewing, or providing feedback on a draft or prospective RFP." (Ex. A. at 2). Similarly, Gerardi seeks to have Hogan testify as an expert about "RFP Project[s] within the State of New York and typical practices by contractors," the idea that communication between an issuer of an RFP and a potential bidder "are lawful, commonplace in the industry, and beneficial to both parties," and "procurement models available in New York State, and the genesis of special-purpose entities like FSMC and FRMC." (Ex. B. 2). None of that proffered testimony, however, is tethered to Fort Schuyler's particular RFP process, and is therefore irrelevant. A tutorial on the differences between public and private procurement processes, various procurement models available in New York, and the laws, regulations, and practices concerning RFPs not issued by

Fort Schuyler will not "assist the trier of fact" in determining whether Fort Schuyler's Board of Directors was deceived by the defendants into believing that the RFPs for the Buffalo and Syracuse developments were fair, open, and competitive. Fed. R. Evid. 702. For example, even if it were true that in some RFP processes the issuer routinely communicates with potential bidders about how to draft a forthcoming RFP, that fact would be of no moment. In the instant matter, as several fact witnesses will testify, Fort Schuyler's Board was under the impression that the Buffalo and Syracuse RFPs were administered in general accordance with the SUNY Research Foundation guidelines, which, among other things, required that "[s]uppliers that develop or draft specifications, requirements, statements of work, or requests for bids or proposals for a procurement must be excluded from competing in any resulting procurement." (Compl. 76). Accordingly, the issue before the jury is not whether Fort Schuyler had to comply with various procurement rules or competitive bid laws, but whether the defendants defrauded Fort Schuyler through material misrepresentations and omissions as charged in the Indictment. Allowing testimony about various procurement models, laws, regulations, and practices not even applicable to Fort Schuyler's RFP processes would only serve to confuse the jury.

Even the expert testimony Aiello and Laipple seek to admit that purports to pertain to Fort Schuyler and the RFPs at issue is irrelevant. In addition to the above, Aiello also seeks to have Walters testify that "Fort Schuyler Management Corporation is not a state agency that is bound by New York State procurement laws,"[2] that "the feedback provided by Mr. Gerardi on the draft RFP did not have a[n] effect on the competitive process," and "that the final RFP for the Preferred Developer in the Syracuse Region did not preclude an open, fair, and competitive process." (Ex. A. 2). Gerardi seeks to have Hogan testify about a number of things pertaining to Fort Schuyler and the RFPs, including that Fort Schulyer's projects were "non-public work," that "the Buffalo RFP was generic and terms did not exclude qualified developers in the greater Buffalo area," that "the Buffalo RFP was consistent with both industry standards and the past practice of FSMC and FRMC," that "the Buffalo RFP was, in reality, an RFQ and did not pertain to a specific project and responders were not competing on price," that "winning the Buffalo RFP meant obtaining an opportunity to negotiate a contract," and that "because the Riverbend construction was not public work, New York State bidding laws did not apply." (Ex. B. 1-2). All of these topics are irrelevant. With respect to Aiello's claims, as stated earlier, it is irrelevant whether particular state procurement rules applied to Fort Schuyler and its RFP processes, as the issue is whether defendants conspired to deceive Fort Schuyler's Board. Likewise, it is irrelevant whether the alleged tailoring of the Syracuse RFP actually resulted in limiting competition. Again, the allegation is that the defendants conspired to deceive Fort Schuyler's Board, and it makes no difference whether the defendants were actually successful in limiting competition for the respective RFPs. With respect to Gerardi's various claims, he attempts to rehash many of the arguments that were made, unsuccessfully, to dismiss the Indictment. For example, it does not matter whether his purported expert believes that the Buffalo RFP was generic, was actually a Request for Qualifications, was consistent with industry standards and past practice of Fort Schuyler, or gave the winner the opportunity to negotiate a contract. None of those opinions help the trier of fact determine whether the defendants conspired to deceive Fort Schuyler's Board.

---

[2] This testimony, of course, is directly in tension with the proffered testimony regarding the generalized distinctions between public and private procurement processes, and the general rules applicable to procurements in New York State.

Similarly, and for reasons already stated, Hogan's opinion on whether New York State bidding rules applied to the Buffalo RFP is irrelevant.

Moreover, the proffered testimony of Walters and Hogan is irrelevant for the additional reason that the jury does not need the help of an expert to determine whether Fort Schuyler's Board was deceived. First, the Government expects to call several witnesses from Fort Schuyler, who will testify about their expectations and understanding regarding the relevant RFP processes. Second, a lay jury is well equipped to understand and evaluate whether the defendants gave Fort Schuyler's Board the impression that the RFP processes at issue were fair, open, and competitive, when, in reality, the defendants were secretly tailoring the RFPs to benefit the Buffalo Developer and the Syracuse Developer. Those are not difficult concepts to grasp. Indeed, all jurors are likely familiar with the concept of cheating. Third, the Government expects to put into evidence documents showing communications involving the Buffalo Developer, the Syracuse Developer, Kaloyeros, and Howe prior to the issuance of the Buffalo and Syracuse RFPs, and the final versions of the Buffalo and Syracuse RFPs. From this evidence, the jury will be able to reach its own conclusion about whether the Buffalo and Syracuse RFPs were secretly tailored to deceive Fort Schuyler's Board of Directors. Because expert testimony "should be limited to situations in which the subject matter is beyond the ken of the average juror," *Lombardozzi,* No. 02 Cr. 273 (PKL), 2003 WL 1907965, at *2 (S.D.N.Y. Apr. 17, 2003), Walters's and Hogan's testimony should be precluded as irrelevant.

Finally, much of the proffered testimony concerns issues that are within the province of the jury to decide. It is well-settled that "the use of expert testimony is not permitted if it will 'usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'" *United States* v. *Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (internal citations omitted). Indeed, in *United States* v. *Duncan*, 42 F.3d 97 (2d Cir. 1994), the Second Circuit noted that "[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *Id.* (internal citations omitted). Here, Aiello seeks to have his expert decide for the jury whether "the feedback provided by Mr. Gerardi on the draft RFP did not have a[n] effect on the competitive process," and whether "the final RFP for the Preferred Developer in the Syracuse Region . . . preclude[d] an open, fair, and competitive process." (Exhibit A. 2). Similarly, Laipple requests that his expert decide for the jury that "the Buffalo RFP was generic and terms did not exclude qualified developers in the greater Buffalo area." (Exhibit B. 2.).[3] Although, as discussed above, the issue of whether the Buffalo and Syracuse RFPs, in fact, prohibited competition is not dispositive of the defendants' guilt, it is certainly a question the jury will likely consider in determining the defendants' guilt. That said, having an expert determine that issue for them far exceeds an expert's "limited role of providing the groundwork in the form

---

[3] The bases for Walters's and Hogan's conclusions are entirely unclear. Neither Gerardi or Laipple has provided any information as to how their respective experts reached such bold conclusions as "the feedback provided by Mr. Gerardi on the draft RFP did not have a[n] effect on the competitive process," (Ex. A. 2), "the final RFP for the Preferred Developer in the Syracuse Region did not preclude an open, fair, and competitive process," (*Id.*), Fort Schuyler's projects were "non-public work," (Ex. B. 1), and "the Buffalo RFP was generic and terms did not exclude qualified developers in the greater Buffalo area," (*Id.* at 2). As the reliability of their testimony is unclear, it should be precluded. *See*, *e.g.*, *Barber* v. *United Airlines, Inc.,* 17 F. App'x 433, 437 (7th Cir. 2001) (district court precluded expert who "did not adequately explain why he ignored certain facts and data, while accepting others").

of an opinion to enable the jury to make its own informed determination." *Duncan*, 42 F.3d at 101 (internal citations omitted).

* * *

In sum, the Government respectfully requests that the Court preclude the proffered expert testimony of Walters and Hogan, or, in the alternative, that the Court order a *Daubert* hearing to assess the relevance and reliability of their respective testimonies.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: /s/
Robert Boone/ David Zhou/Matthew Podolsky
Assistant United States Attorneys
(212) 637-2208/2438/1947

cc: Counsel for all defendants (via ECF)