Michael C. Miller
212 506 3955
mmiller@steptoe.com
1114 Avenue of the Americas
New York, NY 10036
212 506 3900 main
www.steptoe.com




June 8, 2018

Via ECF

Hon. Valerie E. Caproni
United States District Court Judge
Southern District of New York
40 Foley Square
New York, NY 10007

**Re: *United States v. Percoco, et al.* (Case No. 16-cr-776)**
**Impeachment of Non-Testifying Declarant Under Rule 806**

Dear Judge Caproni:

We write on behalf of Dr. Alain Kaloyeros in further support of our argument made during the June 6, 2018 pre-trial conference that Dr. Kaloyeros should be permitted to introduce several categories of impeachment evidence under Rule 806 that tend to discredit Todd Howe. Rule 806 provides that if Mr. Howe's hearsay statements are admitted at trial, Dr. Kaloyeros is permitted to attack Mr. Howe's "credibility . . . by any evidence that would be admissible for those purposes if [Mr. Howe] had testified as a witness." Fed. R. Evid. 806; *see* Fed. R. Evid. 806 advisory comm. note (2003 amendment) ("The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified."); *In re Adler, Coleman Clearing Corp.*, No. 95-cr-8203, 1998 WL 160036, at *11 (Bankr. S.D.N.Y. Apr. 3, 1998) (same). Although the Government has declined to call Mr. Howe as a witness, there is no doubt that Mr. Howe will be a central part of the upcoming trial. In particular, we anticipate that the Government's case will rely heavily on Kevin Schuler and other witnesses' testimony about events and topics where their knowledge is based almost exclusively on what they were told by Mr. Howe.

Given the extreme credibility issues that Mr. Howe presented during the January trial, Dr. Kaloyeros cannot in good faith call Mr. Howe as a witness. *See Budhoo v. Superintendent*, No. 11-cv-1331, 2014 WL 787583, at *17 (S.D.N.Y. Feb. 21, 2014) ("It is of course improper for an attorney to call a witness who will perjure himself"), *appeal filed* (2d Cir. Mar. 27, 2014); *Casillas v. Murray*, 662 F. Supp. 2d 300, 314 (W.D.N.Y. 2009) ("Defense counsel had an ethical duty not to assist in the presentation of perjured testimony to the court, and the ethical requirement that he zealously represent his client cannot overcome the proscription against aiding the giving of perjured testimony." (quoting *People v. Appel*, 120 A.D.2d 319, 320–21 (N.Y. Sup. Ct. App. Div. 1986) (internal citations to professional conduct rules omitted))). And



even if Dr. Kaloyeros did call Mr. Howe as a witness, it would be remarkable if Mr. Howe chose not to invoke his Fifth Amendment rights in light of the exposure he faces. Under these circumstances, the Government's decision to not call Mr. Howe—while simultaneously relying heavily on his hearsay statements—creates a vastly uneven playing field. Simply put, the Government should not be allowed to have its cake and eat it too.

Mr. Schuler's claimed understanding of Dr. Kaloyeros' knowledge, intent, and actions derives almost entirely from hearsay statements made by Mr. Howe to Mr. Schuler. Mr. Schuler's 3500 materials suggest that he viewed Mr. Howe as a "conduit" to Dr. Kaloyeros. 35134-04 at 5. Indeed, Mr. Schuler did not even meet Dr. Kaloyeros until well after the RFP process concluded. *Id.*; *see also id.* at 10 (explaining that Mr. Howe told Mr. Schuler that Dr. Kaloyeros wanted to hire Mr. Howe because Mr. Howe was "Cuomo's guy"); 35134-03 at 9 (explaining that Mr. Schuler allegedly learned from Mr. Howe that FSMC was considering issuing a second RFP for Riverbend and that Dr. Kaloyeros would permit LPCiminelli to choose a second developer for the Buffalo RFP as an alternative); 35134-06 at 4 (explaining that Mr. Howe told Mr. Schuler that Dr. Kaloyeros wanted LPCiminelli to put pressure on a newspaper after one of its reporters authored negative articles on the Buffalo Billion project).[1] Additionally, it is apparent that the Government will offer emails from Mr. Howe explicitly purporting to pass messages from Dr. Kaloyeros to Mr. Schuler. *See, e.g.*, GX 373 (Mr. Howe telling Mr. Schuler that Dr. Kaloyeros supposedly did not want to talk while the solicitation was open); GX 404 (Mr. Howe telling Mr. Schuler that Mr. Howe and Dr. Kaloyeros had supposedly conferred on an unnamed issue).

In addition to Mr. Schuler, it is highly likely that other witnesses on the Government's current witness list will also testify about information they learned solely through Mr. Howe. For example, Andrew Kennedy spoke at length during his interviews with the Government about his understanding of the term "friends" of the Governor, and that Mr. Howe told Mr. Kennedy that he wanted LPCiminelli to host a fundraiser for Governor Cuomo so that LPCiminelli could become a "friend." 3513-10 at 15. During the June 6, 2018 pretrial conference, the Government indicated that it intends to rely on the testimony of "at least one witness who used to work for the Governor [who] is familiar with that phrase"—which we believe is Mr. Kennedy—in support of its tenuous theory that Dr. Kaloyeros knew that LPCiminelli and COR were "friends" of the Governor and was therefore motivated to rig the RFPs in their favor. *See* June 6 Conference Tr. at 160. As with Mr. Schuler's testimony, Mr. Howe's hearsay statements are critical to any effort by the Government to "clos[e] the loop" between campaign contributions and Dr. Kaloyeros' motive. *Id.* at 159. Based on their 3500 materials, we also believe that David Doyle, John Andrew Breuer, and John Regan will likewise testify about information or understandings from Dr. Kaloyeros that they learned exclusively through Mr. Howe.

The Government's case rises and falls on its claim that when Mr. Howe allegedly acted as a "conduit" between Dr. Kaloyeros and any other witness, he truthfully communicated the

---

[1] Such testimony is also impermissible lay opinion testimony under Rule 701(a). *See* Fed. R. Evid. 701 advisory comm. note ("Limitation (a) is the familiar requirement of ***first-hand*** knowledge or observation.") (emphasis added).




information that formed the basis of the hearsay statements that will be offered through these witnesses. But as the January trial demonstrated in no uncertain terms, Mr. Howe is a liar who acted primarily out of self-interest, and who routinely hoodwinked those who had the misfortune of trusting him—including clients such as Mr. Schuler and Dr. Kaloyeros and even the Government itself.[2]

In light of Mr. Howe's critical role in supplying the bulk of the evidence that will be offered against Dr. Kaloyeros despite his absence from the courtroom, the jury is entitled to know about Mr. Howe's history of dishonesty so that it can assess the credibility of this evidence. And because Mr. Howe will not be testifying in this trial, evidence bearing on Mr. Howe's credibility, including specific instances of misconduct, is admissible under Rule 806.

**ARGUMENT**

The baseline principle of Rule 806 is that where a hearsay or co-conspirator statement is admitted into evidence—regardless of the declarant's availability—the declarant's credibility may be attacked with "any impeachment evidence that would have been admissible had the declarant testified." *United States v. Uvino*, 590 F. Supp. 2d 372, 374 (E.D.N.Y. 2008) (quoting *United States v. Moskowitz*, 215 F.3d 265, 270 (2d Cir. 2000)). During his cross-examination in the January trial, Mr. Howe was confronted with a host of evidence demonstrating his penchant for dishonesty, including an extensive history of failing to pay debts, his guilty pleas to eight felonies in this case and to first-degree felony theft in 2010, and a multitude of instances in which Mr. Howe violated the terms of his Cooperation Agreement—including, most notably, by failing to set up an escrow account to reimburse the victims of his fraud and by defrauding his credit card company shortly after signing his Cooperation Agreement, the latter of which resulted in his arrest in the middle of his testimony.

If Mr. Howe were called as a witness in this trial, he would undoubtedly be impeached with similar evidence on cross-examination. And as in the January trial, defense counsel would be limited by the confines of Rule 608(b)'s bar on introducing extrinsic evidence to demonstrate specific instances of Mr. Howe's conduct in order to prove his character for untruthfulness.[3] But

---

[2] This trust was not baseless. Mr. Howe was associated with a major Albany law firm and, along with several other members of the practice, was engaged to provide strategic advice and counsel regarding Government relations at the state and federal law. *See* GX 1001 at 3. That same firm represented to Dr. Kaloyeros that it was free from any conflicts of interest and would notify Dr. Kaloyeros if such conflicts arose. *Id.* But instead, Dr. Kaloyeros (and others) were actually dealing with a fraudster, and were never given a full view of the web of conflicting interests Mr. Howe represented. Neither Dr. Kaloyeros, his co-defendants, or likely ***any*** of Mr. Howe's clients could fully conceive of the fact that Mr. Howe was retained by nearly every key player in this story.

[3] *See* Fed. R. Evid. 608, advisory comm. note (2003 amendment) (noting Rule 608(b)'s intent to impose a bar on extrinsic evidence "only if the ***sole*** purpose for offering the evidence was to prove the witness' character for veracity") (emphasis added). "By limiting the application of the Rule to proof of a witness' character for truthfulness, the amendment leaves the admissibility of extrinsic evidence offered for other




defense counsel would be entitled to question Mr. Howe about those specific instances before the jury, refreshing his recollection as necessary. Recognizing the tension between Rules 608 and 806[4] and the inherent unfairness that Rule 608 creates where a declarant cannot be cross-examined, courts in this circuit have held that Rule 608's bar on extrinsic evidence does not apply when the hearsay declarant does not testify.[5] Accordingly, because neither party intends to call Mr. Howe but the Government intends to offer his out-of-court statements into evidence, this impeachment evidence is admissible under Rule 806.

## I. <u>Extrinsic Evidence of Mr. Howe's Guilty Pleas Is Admissible</u>.

As a threshold matter, it is non-controversial that evidence of Mr. Howe's guilty plea to eight felonies in this case, as well as a 2010 guilty plea to first-degree felony theft, is admissible, and Dr. Kaloyeros intends to introduce evidence of those pleas—including extrinsic evidence of the circumstances surrounding these crimes. Rule 609(a)(2) provides that "for any crime regardless of the punishment, the evidence [of a criminal conviction[6]] must be admitted if the

---

grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) to Rules 402 and 403." *Id.*

[4] Impeachment rules including Rule 608 "were designed to operate with respect to witnesses who testified in court. . . . Rule 806, by contrast, is premised squarely on the opposite assumption: it assumes that the declarant will not be a testifying witness. When the other impeachment rules are used in conjunction with Rule 806, therefore, they are being used in a context very different from that envisioned when they were drafted." Margaret Meriwether Cordray, *Evidence Rule 806 and the Problem of Impeaching the Nontestifying Declarant*, 56 Ohio St. L.J. 495, 497 (1995).

[5] *See, e.g.*, *United States v. Friedman*, 854 F.2d 535, 570 n.8 (2d Cir. 1988); *Adler*, 1998 WL 160036 at *12; *Uvino*, 590 F. Supp. 2d at 372; 5A N.Y. Prac., *Evidence in New York State and Federal Courts* § 8:96 ("Impeachment under Rule 608(b) allows for inquiry of the witness about his bad acts that did not result in a conviction if they reflect adversely on the witness' character for truthfulness, but no extrinsic evidence of such acts is permitted if the witness denies the conduct. How can such inquiry be made of a nontestifying hearsay declarant? The solution is either elimination of this method of impeachment, or modification thereof to permit proof of the declarant's bad acts with extrinsic evidence. The Second Circuit appears to have chosen the second option . . . In light of the fact that the admission of hearsay deprives a party of cross-examination, a loosening of the conventional limits on impeachment can serve the interests of fairness if such impeachment evidence is relevant.").

[6] Rule 609(a)(2) applies with equal force to guilty pleas. *See United States v. Turner*, 497 F.2d 406, 407 (10th Cir. 1974) ("Federal cases interpret the common law as allowing evidence of other convictions for impeachment purposes . . . and hold that a guilty plea is a confession of guilt and amounts to a conviction."); Christopher Mueller & Laird Kirkpatrick, 3 Federal Evidence § 6:56 (4th ed. 2017) ("The key to Rule 609 is not so much finality as the existence of a reliable judicial act that signifies guilt on the underlying charges. . . . Verdicts present the strongest claim for use in questioning, since they reflect jury findings after trial and are less easily set aside,13 but pleas too seem reliable enough for use in impeachment."). There is some dispute regarding whether Mr. Howe's guilty plea—including this Court's acceptance thereof—is sufficiently final before sentencing, but his plea would be admissible to impeach under either Rule 608 or 609. *See United States v. Vanderbosch*, 610 F.2d 95, 97 (2d Cir. 1979) (holding that "there is no distinction between a jury's finding of guilty and the entry of judgment for impeachment purposes" because the verdict would not be withdrawn and was unlikely to be reversed and



court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."[7] Indeed, it appears the Government itself will not contest the admissibility of this evidence. *See* June 6 Conference Tr. 224:19–225:6.

## II. <u>Mr. Howe's January Trial Testimony Is Admissible</u>.

Unlike some jurisdictions, Second Circuit law permits admission of evidence and testimony impeaching a hearsay declarant based on specific acts where those acts have a "conceivable bearing upon the credibility of the hearsay declarant's statements." *Adler*, 1998 WL 160036, at *12 (quoting *Friedman*, 854 F.2d at 570 n.8). "Rule 806 applies, of course, when the declarant has not testified and there has by definition been no cross-examination, and resort to extrinsic evidence may be the only means of present such evidence to the jury." *Friedman*, 854 F.2d at 570 n.8.

In *Uvino*, the Government sought to introduce the hearsay statements of two alleged victims of assault who were not called because they intended to invoke the Fifth Amendment. 590 F. Supp. 2d at 372. The defendants, in turn, sought to introduce extrinsic evidence to attack the credibility of these declarants, including evidence of their participation in armed robbery and fabricating a story to explain the robbery. *Id.* In admitting this extrinsic evidence to "avoid the unnecessary spectacle" of calling the declarants and having them invoke the Fifth Amendment, the court reasoned that "[e]vidence of prior dishonest acts of the declarants . . . is admissible so that the jury can weigh it in considering whether the exclamations of the [hearsay declarants] were in part or whole a fabrication." *Id.* at 375.[8] This sound reasoning applies with even greater

---

therefore likely final); *cf. Adler*, 1998 WL 160036, at *9 (holding that based on pre-Fed. R. Evid. authority, a presentence plea was admissible under Fed. R. Evid. 608 instead of Fed. R. Evid. 609).

[7] It is clear that fraud, embezzlement, theft, tax evasion and the other crimes that Mr. Howe pled guilty to all involve acts of dishonesty or false statements, and are therefore admissible under Rule 609. *See, e.g. United States v. Daugerdas*, 837 F.3d 212, 226–27 (2d Cir. 2016) (evidence that hearsay declarant had pleaded guilty several years earlier to unrelated tax crimes was properly admitted, under Rules 609 and 806, to impeach his opinion that defendant's tax shelter was legal, subject to Rule 403's balancing test); *United States v. Watts*, 934 F. Supp. 2d 451, 490 (E.D.N.Y. 2013) ("[I]f [the hearsay declarant] is unavailable to testify at [defendant's] trial, and [defendant] therefore elects to introduce [hearsay declarant's] prior testimony into evidence, Rule 609(a)(2) mandates admission of [hearsay declarant's] prior convictions for bank fraud, conspiracy to commit bank fraud, and false statements, all offenses involving dishonesty or false statements, in order to impeach the credibility of [hearsay declarant's] prior testimony.").

[8] *See also United States v. Vegas*, 27 F.3d 773, 782 (2d Cir. 1994) (affirming introduction of trial testimony to impeach a hearsay declarant at his co-defendants' trial); *Delvi*, 275 F. Supp.2d at 417–18 (after admitting hearsay statement of non-testifying declarant, the court permitted defendants to impeach the declarant under Rule 806 through evidence of declarant's criminal history, drug use prior to making the statement, and inability to identify a defendant from a photo array); *Adler*, 1998 WL 160036 at *12 (admitting extrinsic evidence of declarant's' frauds because specific conduct "relate[d] to acts of manipulation and deception" "bears directly on truthfulness" and is therefore admissible under Rule 806); *United States v. Finley*, No. 87-cr-364, 1989 WL 58223 (N.D. Ill. May 19, 1989) (applying the *Friedman* reasoning because "[t]he impeaching party ought not to be put to the burden of calling the declarant to the



force here, where the non-testifying hearsay declarant is not the alleged victim of a defendant's crime, but rather, a cooperating alleged co-conspirator whom the Government has elected not to call due to his own lack of credibility.

Rule 806 resides within Article VIII and does not purport to exclude hearsay. *See* Fed. R. Evid. 806 (permitting admission of "evidence of the declarant's . . . conduct, regardless of . . . whether the declarant had an opportunity to explain or deny it," even though such evidence would almost always otherwise be inadmissible hearsay); *Adler*, 1998 WL 160036, at *10 (admitting Exhibits under Rule 806 without hearsay analysis); *Uvino*, 590 F. Supp. 2d at 373 (admitting declarants' 302s under Rule 806 for the truth of the matter asserted but without hearsay analysis). But even if Rule 806 evidence were subject to the rule against hearsay, Mr. Howe's former testimony would clearly be admissible under Rule 804(b)(1) (former testimony) and Rule 807 (residual). Rule 804(b)(1) applies because there is a high probability that Mr. Howe will invoke the Fifth Amendment if called and the Government had an opportunity and similar motive to rehabilitate Mr. Howe in the January trial. *See* Fed. R. Evid. 804(b)(1); *United States v. Bahadar*, 954 F.2d 821, 828 (2d Cir. 1992) ("When a [F]ifth [A]mendment privilege is properly asserted by a trial witness, that witness becomes 'unavailable' for purposes of rendering potentially applicable all of the hearsay exceptions described in [R]ule 804(b)."); *Uvino*, 590 F. Supp. 2d at 373; *United States v. Vegas*, 27 F.3d 773, 777 (2d Cir. 1994) (admitting declarant's past testimony where declarant invoked Fifth Amendment to refuse to testify at current trial). Furthermore, even if Mr. Howe were available, his testimony would be admissible under the residual exception given the extenuating circumstances of his status as the putative—yet uncalled—accuser for the Government and the extent of his past examination under oath. *See* Fed. R. Evid. 807; *In re Sept. 11 Litig.*, 621 F. Supp. 2d 131, 163 (S.D.N.Y. 2009) (admitting prior trial testimony of two potentially available FBI agents under Fed. R. Evid. 807 and noting that it would "mitigat[e] the need for these witnesses to testify again").

To avoid the "unnecessary spectacle" and lengthy testimony of Mr. Howe in this trial, Dr. Kaloyeros intends to streamline the evidence offered in the January trial by reading pertinent

---

stand even if he is available, since his adversary has adduced the statement which gave rise to the need for impeachment"), *aff'd*, 934 F.2d 837 (7th Cir. 1991); S. Saltzburg, M. Martin & D. Capra, Federal Rules of Evidence Manual § 806/02[3] (10th ed. 2011) (recognizing the split of authorities and stating that "we believe that bad act impeachment should be a permissible means of impeaching a hearsay statement"); C. Mueller & L. Kirkpatrick, 5 Federal Evidence § 8:138 (4th ed 2014) ("In any event, the wiser reading of these provisions leads to the conclusion that impeachment of this sort should be allowed, even though normally such impeachment can proceed only on cross-examination."). Further, the policy concerns about extrinsic evidence are not implicated when the evidence consists of words from the witness himself. *See Carter v. Hewitt*, 617 F.2d 961, 970 (3d Cir. 1980) (holding that extrinsic evidence was admissible because credibility was a critical issue and the core concerns of rule 608(b) are not implicated where "the extrinsic evidence is obtained from and through examination of the very witness whose credibility is under attack"); *United States v. Zandi*, 769 F.2d 229, 236 (4th Cir. 1985) ("[C]ourts generally hold that when a witness admits to having performed [the prior dishonest] acts . . . the prohibition against using extrinsic evidence is not applicable.").




excerpts of his existing testimony into evidence. This evidence is clearly admissible under Rule 806 and should be permitted.

## III. Evidence of Mr. Howe's Email Fabrication and Alteration is Admissible.

Dr. Kaloyeros also intends to offer impeachment evidence demonstrating that Mr. Howe fabricated and altered emails.[9] Mr. Howe's deceit creates doubt as to who wrote the text in any email that he purported to forward and reflects his general dishonesty. Beginning on his first day of testimony and continuing throughout, evidence during the January trial revealed that time and time again Mr. Howe had re-written an earlier-in-time email purportedly authored by someone else, forwarded the altered version to another person, and deceived the recipient into concluding that the words in the earlier-in-time email were those of the purported author instead of the actual author (Mr. Howe).[10] Mr. Howe, himself, admitted that he cannot know how many email messages he forged "without looking at hundreds of thousands of e-mails." Feb. 7 Tr. at 2666.

Absent extensive analysis that not even the Government has attempted to undertake despite calling Mr. Howe as its star witness in the January trial, we presently have no reliable way of knowing whether an email forwarded or quoted by Mr. Howe was written by the purported author or contained the purported content. Accordingly, Dr. Kaloyeros intends to offer emails fabricated or altered by Mr. Howe as evidence of both his general dishonesty,[11] and his

---

[9] Dr. Kaloyeros intends to offer two subsets of evidence related to this category: (i) examples of altered emails where the witness on the stand was the recipient of the email, and (ii) evidence of Mr. Howe's extensive history generally of altering emails. Dr. Kaloyeros believes the former subset is directly relevant, and not subject to any impeachment analysis under Rules 609 or 806. Accordingly, the analysis above relates only to the second subset of evidence Dr. Kaloyeros intends to offer.

[10] *See, e.g.* Feb. 5 Tr. at 2223–27 (GX14, GX14A); Feb. 6 Tr. at 2358 (different email in GX80, GX81); Feb. 6 Tr. at 2363–2365 (GX84, GX85); Feb. 6 Tr. at 2365 (different email in GX84, GX85); Feb. 6 Tr. at 2366 (different email in GX84, GX85); Feb. 6 Tr. at 2511 (discussing altered emails sent to Mr. Howe's wife); Feb 7 Tr. at 2680 (JPX1028, JPX1029); Feb. 7 Tr. at 2692 (JPX1044, JPX 1045); Feb. 7 Tr. at 2730; Feb. 8 Tr. at 2824 (JPX1503, JPX1504, JPX1507, JPX1511, JPX1513, JPX1515, JPX1516, JPX1519, JPX1520, JPX1521, and other emails otherwise referenced in this list); Feb. 8 Tr. at 2899 (JPX1514); Feb. 8 Tr. at 2902–03 (JPX1517); Feb. 8 Tr. at 2903 (GX82, GX82A); Feb. 8 Tr. at 2909(JPX1518); Feb. 8 Tr. at 3014–20 (JPX1522); Feb. 12 Tr. at 3147–51 (SYR3793, SYR3822); Feb. 12 Tr. at 3155–5738 (SYR3782, SYR3790, SYR3796) Feb. 12 Tr. at 3162 (SYR3774, SYR3789); Feb. 12 Tr. at 3163 (SYR3772, SYR3788); Feb. 14 Tr. at 3460–62 (GX52, BKX1749R); Feb. 15 Tr. at 3793–97 (SYR4115, SYR4115A); Feb. 15 Tr. at 3811–13 (SYR4124); Feb. 15 Tr. at 3894–95 (SYR3793, SYR3822).

[11] *See Adler*, 1998 WL 160036, at *10–11 (admitting evidence of unrelated fraudulent acts to impeach hearsay declarants because the past dishonesty was "probative of truthfulness or untruthfulness"); *Finley*, 1989 WL 58223, at *1 (holding that evidence was relevant because it "characterize[d] [the declarant] as being a liar in some contexts and describe[d] specific lies told by [declarant] [and] thus tend[ed] to show [declarant's] character for untruthfulness" but excluding the evidence on other grounds). Mr. Howe's penchant for fabricating and altering other people's emails was simply electronic evidence of his general dishonesty. *See* Feb. 7 Tr. at 2551 (describing how Mr. Howe forged paper documentation in a similar manner).




specific history of dishonesty about the facts in this case, to ensure that the jury knows that portions of emails purporting to have been written by Dr. Kaloyeros or other key witnesses may, in fact, have been written by Mr. Howe. *See United States v. Aldea*, 174 F. App'x 52, 56 (3d Cir. 2006) (affirming admission of evidence because it "was highly relevant to authenticate" substantive evidence); *GoPro, Inc. v. 360Heros, Inc.*, No. 16-cv-1944, 2018 WL 1569727, at *2 (N.D. Cal. Mar. 30, 2018) (admitting testimony because it was "directly relevant to the authenticity of the disputed Skype conversation"). This evidence is highly probative of Mr. Howe's credibility and is therefore admissible under Rule 806. In addition, because it goes beyond mere character evidence to have probative value about the authenticity and truthfulness of communications at issue in this case, it is not subject to Rule 608(b)'s extrinsic-evidence bar. *See* Fed. R. Evid. 608 advisory comm. note (2003 amendment).

## IV. <u>Evidence of Mr. Howe's Violation of His Cooperation Agreement is Admissible</u>.

The evidence at the January trial also revealed that Mr. Howe violated the terms of his Cooperation Agreement on multiple occasions. He purported to work with the Government while continuing to build his "spiderweb of lies" and commit further frauds. *See* Feb. 8 Tr. at 3069. Mr. Howe's duplicity—while claiming to work with or for someone—is highly probative of the credibility of the hearsay testimony that will be offered through Mr. Schuler and other witnesses. Because this evidence has "a conceivable bearing upon the credibility of the hearsay declarant's statement," it is admissible under Rule 806.

* * *

As the Court is well aware, Mr. Howe committed a litany of additional criminal and dishonest acts that are not included in the categories set forth above. Although Dr. Kaloyeros does not intend to try the Court or the jury's patience by offering every conceivable form of evidence that could be used to impeach Mr. Howe, Dr. Kaloyeros reserves the right to introduce additional impeachment evidence depending on the extent and nature of Mr. Howe's hearsay statements offered into evidence during the Government's case.

For all of the reasons stated above, Dr. Kaloyeros' intended impeachment evidence against Mr. Howe is permissible under Rule 806 and should be admitted at trial.

Respectfully submitted,

Michael C. Miller
*Counsel for Defendant Alain Kaloyeros*