| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------ X<br>UNITED STATES OF AMERICA,<br><br>            -against-<br><br>JOSEPH PERCOCO,<br><br>                         Defendant.<br>------------------------------------------------------------ X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED: 4/15/2019<br><br>16-CR-776 (VEC)<br><br>OPINION AND ORDER |

VALERIE CAPRONI, United States District Judge:

      Defendant Joseph Percoco was convicted at trial of bribery and related corruption offenses. The Government seeks an order requiring Defendant to forfeit $320,000, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). *See* Gov.'s First Ltr. (Sept. 14, 2018), Dkt. 851; Gov.'s Second Ltr. (Oct. 18, 2018), Dkt. 891. Defendant argues that he should be ordered to forfeit no more than $225,000. *See* Def.'s First Ltr. (Sept. 17, 2018), Dkt. 854; Def.'s Second Ltr. (Oct. 4, 2018), Dkt. 875; Def.'s Third Ltr. (Oct. 25, 2018), Dkt. 895. For the following reasons, the Government's motion for $320,000 in forfeiture is GRANTED.

## BACKGROUND

      The Court assumes familiarity with the facts of this case, which have been set forth in two prior opinions. *See* Opinion and Order (the "Feb. 8, 2019 Opinion"), Dkt. 978, *available at* 2019 WL 493962 (S.D.N.Y. Feb. 8, 2019); Mem. Opinion and Order (the "May 10, 2018 Opinion"), Dkt. 648, *available at* 317 F. Supp. 3d 822 (S.D.N.Y. May 10, 2018); *see also* Second Superseding Indictment ("S2 Indictment"), Dkt. 321; Compl., Dkt. 1. As is relevant here, Defendant participated in two corrupt schemes, one involving Competitive Power Ventures, Inc. (the "CPV Scheme"), and one involving COR Development Company, LLC (the "COR Development Scheme"). *See* Feb. 8, 2019 Opinion, 2019 WL 493962, at *1–2 (slip op. at

4–7). In each scheme, Defendant agreed with executives of the company to accept bribes in exchange for the promise of official action as the opportunity arose. *See id.* Todd Howe, a corrupt lobbyist who pleaded guilty and testified as a cooperating witness, was a co-conspirator in each scheme. *See id.*

Defendant received $35,000 in bribe payments in connection with the COR Development Scheme. *See id.* at *2 (slip op. at 6–7); GX-1606A, GX-1606B.[1] In exchange for the bribe, Defendant pressured state officials: to reverse a regulatory requirement for one of COR's development projects; to authorize the release of state funds for another of COR's projects; and to approve a pay raise for a co-conspirator's son, who was a state employee. *See* Feb. 8, 2019 Opinion, 2019 WL 493962, at *2 (slip op. at 6–7).

As to the CPV Scheme, Defendant received $285,000 in bribe payments, funneled through a "low-show" job for his wife, Lisa Percoco.[2] *See id.* at *2, *23–24 (slip op. at 6, 46–47); GX-1603N, GX-1604D. Lisa Percoco was paid $7,500 per month by CPV for working, at most, 20 hours per month in connection with a public relations initiative that involved teaching elementary school students about electricity generation.[3] *See* Feb. 8, 2019 Opinion, 2019 WL 493962, at *2, *23–24 (slip op. at 6, 46–47). In exchange for CPV's payments, Defendant agreed to exercise official power to assist CPV as needed, including on two important state contracts. *See id.* at *2, *21–25 (slip op. at 6, 42–43, 45–50).

---

[1] All citations to transcript pages and exhibits refer to the trial that began on January 22, 2018 (the "January Trial").

[2] Lisa Percoco also received $1,596 in meal expenses and other reimbursements from CPV. *See* Gov.'s First Ltr. at 1 n.1. The Government does not seek forfeiture of those payments. *See id.*

[3] At the sentencing of a co-Defendant, Peter Galbraith Kelly, Jr., the Court explained the basis for its estimate that Lisa Percoco worked, at most, 20 hours per month (described in that sentencing as 5 hours per week), a calculation that was "extremely generous." Kelly Sentencing Tr. (Oct. 16, 2018), Dkt. 899, at 25; *see also id.* at 21–27. Other evidence supporting this estimate was adduced at trial, *see* Tr. 4127–75, 4697–4755; GX-1020R, GX-1072R, and produced as § 3500 material, *see* 3511-04 at 2.

In connection with the COR Development Scheme, Defendant was convicted of conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 1349 (Count Ten); in connection with the CPV Scheme, he was convicted of conspiracy to commit honest services wire fraud (Count Nine) and federal-program bribery, in violation of 18 U.S.C. § 666(a)(1)(B) (Count Eleven).[4] *See* Percoco Judgment (Sept. 25, 2018), Dkt. 867. The Court sentenced Defendant principally to a term of imprisonment of 72 months. *See id.*; Percoco Sentencing Tr. (Sept. 20, 2018), Dkt. 876, at 37–38, 75–78.

The indictment included a forfeiture allegation against Defendant, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). *See* S2 Indictment ¶¶ 76–77. At sentencing, the Court entered a general order of forfeiture against Defendant, with the amount to be determined at a later date, pursuant to Federal Rule of Criminal Procedure 32.2(b)(2)(C). *See* Percoco Judgment; Percoco Sentencing Tr. 37–38.

## DISCUSSION

### I. The Applicable Law

When a defendant is convicted of an offense for which the civil or criminal forfeiture of property is sought, the district court must order the forfeiture of that property as part of the defendant's sentence. *See* 28 U.S.C. § 2461(c). The district court must either include the order of forfeiture when orally announcing the sentence or otherwise ensure that the defendant knows of the order at the time of sentencing. *See* Fed. R. Crim. P. 32.2(b)(4)(B). If, however, the district court is unable to calculate the precise amount of forfeiture at the time of sentencing, the court may enter a general order of forfeiture and state that the order will be amended when the

---

[4] The Court will refer to all counts as they were numbered in the S2 Indictment. The Court renumbered these counts in the jury instructions and verdict form that were used in the January Trial. *See* Verdict Form (January Trial), Dkt. 527; Jury Instructions (January Trial), Dkt. 516.

3

amount has been calculated. *See id.* 32.2(b)(2)(C). On the Government's motion, the district court "may at any time . . . amend an existing order of forfeiture" to include the correct calculation. *Id.* 32.2(e)(1). The district court has jurisdiction to amend an existing order of forfeiture even after the defendant has filed a notice appealing his conviction and sentence. *See United States v. Ferrario-Pozzi*, 368 F.3d 5, 11 (1st Cir. 2004); *cf. United States v. Arnold*, 878 F.3d 940, 942–45 & n.3 (10th Cir. 2017).[5]

"Any property . . . which constitutes or is derived from proceeds traceable to" an offense enumerated by statute "is subject to forfeiture to the United States." 18 U.S.C. § 981(a)(1)(C); *see also United States v. Contorinis*, 692 F.3d 136, 145 n.2 (2d Cir. 2012). Depending on the nature of the defendant's crime, federal law provides two different definitions of the "proceeds" that are subject to forfeiture. *See* 18 U.S.C. § 981(a)(2)(A)–(B). "In cases involving illegal goods, illegal services, [and] unlawful activities," the term "proceeds" means *all* property obtained from or traceable to the offense; this definition is "not limited to the net gain or profit realized from the offense." *Id.* § 981(a)(2)(A). "In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term 'proceeds' means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." *Id.* § 981(a)(2)(B). Put differently, § 981(a)(2)(A) requires a defendant to forfeit the "gross" proceeds of his crime, without any deduction for costs or losses, whereas § 981(a)(2)(B) requires a defendant to forfeit only the crime's "net" proceeds, after deducting "direct costs." *See Contorinis*, 692 F.3d at 145 n.3.

---

[5] The defendant may thereafter be required to file a second notice of appeal from the order of forfeiture. *See* Fed. R. Crim. P. 32.2(b)(4)(C).

4

The case law interpreting these provisions is sparse.  In the precedent that does exist, courts have interpreted § 981(a)(2)(A) as applying to conduct that is "inherently unlawful," meaning conduct that cannot be committed in a lawful manner, such as robbery, *see Contorinis*, 692 F.3d at 145 n.3, embezzlement, *see United States v. George*, 886 F.3d 31, 40 (1st Cir. 2018); *United States v. Bodouva*, 853 F.3d 76, 80 (2d Cir. 2017), soliciting funds as part of a Ponzi scheme, *see United States v. Bonventre*, 646 F. App'x 73, 90 (2d Cir. 2016), and selling food stamps without authorization, *see Contorinis*, 692 F.3d at 145 n.3 (citing *United States v. Uddin*, 551 F.3d 176, 181 (2d Cir. 2009)).  In contrast, courts have interpreted § 981(a)(2)(B) as applying to the sale of "a good or service that could, hypothetically, be provided in a lawful manner" but that, in the context of the case, was provided illegally, such as trading securities based on material nonpublic information.  *George*, 886 F.3d at 40; *see also, e.g.*, *Contorinis*, 692 F.3d at 145 n.3; *United States v. Mahaffy*, 693 F.3d 113, 138 (2d Cir. 2012); *United States v. Nacchio*, 573 F.3d 1062, 1090 (10th Cir. 2009).

A good example of the distinction between § 981(a)(2)(A) and (B) arose in *In re 650 Fifth Ave. & Related Properties*, 777 F. Supp. 2d 529, 547–48 (S.D.N.Y. 2011).  In that case, the defendants violated the International Emergency Economic Powers Act, *see* 50 U.S.C. § 1705(a), by providing investment-management services to Iran, a country that had been embargoed under that statute.  The defendants also helped Iran conceal certain assets from judgment-creditors. *See* 777 F. Supp. 2d at 548.  The court held that § 981(a)(2)(B) applied to the investment-management services, because those services were "normally legal activities" that were illegal only because of the party to which they were provided.  *See id.* at 551–52.  In contrast, the court held that § 981(a)(2)(A) applied to the act of concealing assets from judgment-creditors because that conduct can "never [be] a legal activity." *Id.* at 552.

5

The Government bears the burden of proving by a preponderance of the evidence that the property to be forfeited "constitutes or is derived from proceeds traceable" to the offense, regardless of whether "proceeds" is defined under § 981(a)(2)(A) or (B). 18 U.S.C. § 981(a)(1)(C); *see also United States v. Treacy*, 639 F.3d 32, 48 (2d Cir. 2011). When § 981(a)(2)(B) is applicable, however, the defendant has the burden of proving the amount that should be deducted as "direct costs." *See United States v. Mandell*, 752 F.3d 544, 554 (2d Cir. 2014); *see also, e.g.*, *United States v. Naranjo*, No. 13-CR-351, 2014 WL 3406902, at *3 (S.D.N.Y. July 7, 2014), *vacated on other grounds on reconsideration*, 2015 WL 2381322 (S.D.N.Y. May 13, 2015), *aff'd on other grounds*, 645 F. App'x 50, 51 (2d Cir. 2016). In all cases, the district court need only make a "reasonable estimate" of the amount subject to forfeiture, using "general points of reference as a starting point" and drawing "reasonable extrapolations from the evidence." *Treacy*, 639 F.3d at 48 ("The calculation of forfeiture amounts is not an exact science." (quoting *Uddin*, 551 F.3d at 180)).

## II. Application to This Case

### A. The Parties' Positions

The parties agree that forfeiture is authorized for Defendant's crimes pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), but they disagree whether § 981(a)(2)(A) or § 981(a)(2)(B) applies and, thus, whether Defendant should be ordered to forfeit the gross proceeds of his offenses or some lesser amount. *See* Gov.'s First Ltr. at 1; Def.'s First Ltr. at 1–2; Def.'s Second Ltr. at 4.

The Government argues that § 981(a)(2)(A) applies because Defendant's bribery schemes were inherently unlawful activities. *See* Gov.'s Second Ltr. at 1–2. The Government therefore

seeks forfeiture of Defendant's gross proceeds, or $320,000 (comprised of $35,000 from COR Development and $285,000 from CPV). *See id.* at 4.

Defendant does not dispute that he should be ordered to forfeit $35,000 in connection with the COR Development Scheme. *See* Def.'s First Ltr. at 1; Def.'s Second Ltr. at 4 n.5. As to the CPV Scheme, however, Defendant argues that § 981(a)(2)(B) applies because the scheme involved the provision of "lawful services," namely, the teaching and consulting work that his wife performed for CPV. *See* Def.'s First Ltr. at 1–2. Applying § 981(a)(2)(B), Defendant argues that he is entitled to deduct the fair-market value of Lisa Percoco's services from his gross proceeds as "direct costs." *See id.* Defendant argues that the fair-market value of her services was $95,000.[6] *See id.* Thus, Defendant argues that he should be ordered to forfeit no more than $225,000 (*i.e.*, $320,000 (gross proceeds) less $95,000 (alleged direct costs)). *See id.*

### B. The Court Need Not Decide Whether § 981(a)(2)(A) or (B) Applies to This Case

Whether § 981(a)(2)(A) or (B) applies to this case is a difficult question of statutory interpretation. On the one hand, the Court agrees with the Government that bribery is an inherently unlawful activity: it simply cannot be done legally. That would suggest that § 981(a)(2)(A) should apply. *Cf. Bodouva*, 853 F.3d at 80 (applying § 981(a)(2)(A) to an embezzlement scheme because "there is simply no way to lawfully embezzle funds"); *George*, 886 F.3d at 40 (similar). On the other hand, the CPV Scheme indisputably "involv[ed]" the "lawful services" of Lisa Percoco—services that, arguably, were "provided in an illegal manner" because they were part and parcel of a criminal scheme. 18 U.S.C. § 981(a)(2)(B). That would

---

[6] At Kelly's sentencing, the Court estimated that the fair-market value of Lisa Percoco's services was $38,000, not $95,000. *See* Kelly Sentencing Tr. at 21–27. As the Court will explain, the fair-market value of Lisa Percoco's services is not a reasonable measure of Defendant's "direct costs" under § 981(a)(2)(B), regardless of how that fair-market value is calculated.

suggest that § 981(a)(2)(B) should apply. *See Mahaffy*, 693 F.3d at 138 (applying § 981(a)(2)(B) because the defendants "bought and sold securities as part of a scheme involving illegal bribery and frontrunning"). This case, in short, appears to fall in a gray area between the conduct clearly covered by § 981(a)(2)(A) and the conduct clearly covered by § 981(a)(2)(B).

The case law provides no clear way to delineate these two categories of conduct. The Courts of Appeals have reported very few precedential decisions on this issue.[7] Those decisions that do exist have failed to set forth a clear methodology for determining whether a case falls under § 981(a)(2)(A) or (B).[8] Additionally, to this Court's knowledge, no Court of Appeals has addressed this issue in the context of a public-sector bribery scheme.[9] This Court, quite simply, has no standard by which to choose one statutory provision over the other.

---

[7]     *See United States v. Balsiger*, 910 F.3d 942, 957 (7th Cir. 2018); *George*, 886 F.3d at 40; *Bodouva*, 853 F.3d at 80; *United States v. Hasan*, 718 F.3d 338, 346 (4th Cir. 2013); *Contorinis*, 692 F.3d at 145 nn.2–3; *Mahaffy*, 693 F.3d at 138; *Nacchio*, 573 F.3d at 1089.

In addition to these cases, the Second Circuit has addressed this issue in at least three non-precedential decisions. *See Bonventre*, 646 F. App'x at 90; *United States v. Blech*, 550 F. App'x 70, 71 (2d Cir. 2014); *United States v. Schlesinger*, 261 F. App'x 355, 361 (2d Cir. 2008). Other cases, both precedential and non-precedential, have touched on the issue without expressly addressing how to determine whether § 981(a)(2)(A) or (B) applies. *See, e.g.*, *United States v. Fiumano*, 721 F. App'x 45, 51 (2d Cir. 2018); *United States v. Gorski*, 880 F.3d 27, 41–43 (1st Cir. 2018); *United States v. Whicker*, 628 F. App'x 361, 368–69 (6th Cir. 2015); *United States v. Butler*, 578 F. App'x 178, 182–83 (4th Cir. 2014); *United States v. Torres*, 703 F.3d 194, 198–99 (2d Cir. 2012); *United States v. Warshak*, 631 F.3d 266, 332 (6th Cir. 2010); *Uddin*, 551 F.3d at 181.

[8]     It is a mystery, for example, how to determine whether a case "involv[es] . . . lawful services . . . provided in an illegal manner." 18 U.S.C. § 981(a)(2)(B). Should the Court employ a categorical approach, asking whether the offense of conviction contains, as an element, the provision of otherwise-lawful services? *Cf. Hasan*, 718 F.3d at 346. Or should the Court employ a case-specific approach, asking whether the facts of the case "involve" such services? *See, e.g.*, *Balsiger*, 910 F.3d at 957; *Nacchio*, 573 F.3d at 1089 n.25. If the Court employs a case-specific approach, what does it mean for a case to "involve" lawful services? Must the services *themselves* be the act criminalized by the offense of conviction? *Cf. George*, 886 F.3d at 40; *Bodouva*, 853 F.3d at 80. Or is it enough for the services merely to be related, in some more general way, to the criminal conduct? *Cf. Mahaffy*, 693 F.3d at 138.

[9]     Defendant's argument relies heavily on *United States v. St. Pierre*, 809 F. Supp. 2d 538, 543 (E.D. La. 2011), an out-of-circuit district court case that discussed forfeiture in the context of public-corruption offenses. The § 981(a)(2)(A)–(B) analysis in that case was short and unilluminating.

Nevertheless, as the Court will explain, whether § 981(a)(2)(A) or (B) applies makes no difference as to the final amount that Defendant must forfeit. Accordingly, the Court need not resolve this question.

### C. Defendant's Gross Proceeds Are $320,000 Regardless of Whether § 981(a)(2)(A) or (B) Applies

Defendant does not dispute that the full amount that his wife received in salary payments from CPV, $285,000, represents the gross proceeds of the CPV Scheme; he argues only that the fair-market value of Lisa Percoco's services should be deducted from this amount as "direct costs." *See* Def.'s First Ltr. at 2; Def.'s Second Ltr. at 4.

The Court agrees that $285,000 represents the gross proceeds of the CPV Scheme. Assuming, without deciding, that § 981(a)(2)(B) applies, gross proceeds (before the deduction of direct costs) are "the amount of money acquired through the illegal transactions resulting in the forfeiture." 18 U.S.C. § 981(a)(2)(B). In interpreting this provision, at least one district court has applied a "but for" test, relying on the general principle that "[p]roceeds are property that a person would not have but for the criminal offense." *In re 650 Fifth Ave.*, 777 F. Supp. 2d at 550, 553 (collecting cases). At trial, the Government adduced considerable evidence that Lisa Percoco would not have been hired by CPV but for Defendant and Kelly's unlawful *quid pro quo* arrangement.[10] Put differently, Lisa Percoco acquired her job "through" the illegal *quid pro quo*

---

[10] Prior to hiring Lisa Percoco, Kelly indicated that motivating Defendant to use his official position to help CPV was an important priority. *See, e.g.*, GX-20, GX-43, GX-52; *see also* Tr. 2200–01, 2221–34, 2251–52. Howe pressured Kelly to hire Lisa Percoco and suggested that doing so could help motivate Defendant to be an "advocate [for CPV] in the Governor's office." Tr. 2334; *see also* GX-39, GX-47, GX-60, GX-207; *see also* Tr. 2089–93, 2135–41, 2228–2307. Kelly agreed to hire Lisa Percoco at a dinner during which Defendant expressly agreed to assist CPV with an important state contract (the Power Purchase Agreement, or "PPA"). *See* Feb. 8, 2019 Opinion, 2019 WL 493962, at *23 (slip op. at 46). Shortly thereafter, Lisa Percoco was hired without a job interview and without going through a normal hiring process; she was hired after meeting Kelly once at a dinner in her home. *See* Tr. 2291–94, 2302–09. Kelly took steps to conceal Lisa Percoco's employment at CPV, including paying her through a shell entity, instructing CPV employees not to use her last name in the classroom and not to use photos of her in promotional materials, and concealing evidence of his prior meetings with Defendant. *See* Tr. 1970–78, 2034–38, 2249, 4102–04, 4117–39, 4155–57, 4358–68; GX-198, GX-1218 at *19901, GX-1604B, GX-1604C, GX-

arrangement, 18 U.S.C. § 981(a)(2)(B); accordingly, her entire salary represents the proceeds of that crime.[11]

Although Defendant does not raise the argument, the fact that Lisa Percoco provided some *bona fide* value to CPV does not change the Court's analysis. As the Court stated at Kelly's sentencing, Lisa Percoco provided value to CPV's public relations efforts, even though her salary vastly overstated that value. *See* Kelly Sentencing Tr. at 21–27. This is not a case, however, in which Lisa Percoco was already working at CPV and the *quid pro quo* merely inflated her salary beyond fair-market value (in which case, arguably, only the inflated portion of the salary would be the direct result of the illegal *quid pro quo* arrangement). This is a case in which Lisa Percoco would never have been hired in the first place were it not for the bribery scheme. Thus, because the job itself was obtained as the result of the scheme, *all* salary paid as part of that job represents the gross proceeds of the offense. *See In re 650 Fifth Ave.*, 777 F. Supp. 2d at 550, 553.

Because the entire amount of Lisa Percoco's salary was obtained through or as a result of an illegal transaction, that amount, $285,000, represents the gross proceeds of the CPV Scheme, regardless of whether § 981(a)(2)(A) or (B) applies. Adding the $35,000, the proceeds of the

---

1604D. All of this evidence supports the conclusion that Kelly would not have hired Lisa Percoco had Defendant not, in exchange, promised to perform official actions for CPV.

[11]   Lisa Percoco's entire salary would also represent Defendant's gross proceeds if § 981(a)(2)(A) applied, as the language in that provision is even broader than the language in § 981(a)(2)(B). *See George*, 886 F.3d at 42 (ordering forfeiture of all management fees earned under a contract pursuant to which the defendant provided some *bona fide* services because obtaining the contract was an integral part of an embezzlement scheme; thus, "the management fees were garnered by the defendant, at least indirectly, as fruit of the charged conspiracy"); *Torres*, 703 F.3d at 199 (section 981(a)(2)(A) "evinces an intent to reach all manner of property in the defendant's possession and fairly considered as derived from the crime of conviction," so long as "there is a causal nexus between the wrongdoer's possession of the property and her crime"); *Warshak*, 631 F.3d at 332 (ordering forfeiture of all revenues of a fraudulent scheme, "including money generated through supposedly legitimate transactions"; because "the entire operation was permeated with fraud . . . . [a]ny money generated through these potentially legitimate sales is . . . subject to forfeiture").

COR Development Scheme, which Defendant does not dispute are forfeitable, Defendant's gross proceeds are $320,000.

### D. Assuming That § 981(a)(2)(B) Applies, Defendant Incurred No "Direct Costs"

Assuming, without deciding, that § 981(a)(2)(B) applies, that provision would entitle Defendant to deduct from his gross proceeds "the direct costs incurred in providing the [applicable] goods or services." 18 U.S.C. § 981(a)(2)(B). Defendant has the burden of proving that such a deduction should apply. *See Mandell*, 752 F.3d at 553–54. Although not entirely clear, the case law suggests that the deduction should apply only if the "direct costs" were borne by Defendant personally (rather than by a third party). *See Contorinis*, 692 F.3d at 145 n.3 (stating, in dicta, that the defendant was not entitled to a deduction for "direct costs" because all such costs were borne by his employer); *see also Gorski*, 880 F.3d at 43 (applying a plain-error standard, the cost of the defendant's labor was not deductible as a "direct cost" because that cost was incurred by the defendant's employer); *cf. Naranjo*, 2014 WL 3406902, at *3 (expenses that the defendants paid in building a government-funded project could be deductible as direct costs).

Defendant has not sustained his burden of proving direct costs. As discussed *supra*, Defendant seeks to deduct as a "direct cost" the purported fair-market value of the services that his wife provided to CPV. *See* Def.'s First Ltr. at 1–2; Def.'s Second Ltr. at 4. But that amount represents the value that CPV *gained* from Lisa Percoco's services—not the amount that the job *cost* Lisa Percoco or Defendant. Defendant offers no evidence or argument suggesting that this amount represents "direct costs" that he or his wife incurred.

Put another way, Defendant seeks to use, as the measure of his "direct costs," the cost that CPV would have incurred had it paid Lisa Percoco a market-rate salary. *See* Def.'s Second Ltr. at 4. But Defendant does not explain why a *hypothetical* cost borne by a *third party* is an

11

appropriate measure of the *actual* costs that *he* incurred.  Without a bridge for that analytical gap, Defendant has failed to carry his burden of proving that a deduction for "direct costs" is appropriate.  *See Gorski*, 880 F.3d at 43 ("[E]ven if we assume that compensation paid by a business to an employee might be a 'direct cost' incurred by the *business* in providing its services, it is not plain how that compensation when received by the employee could also be said to be a direct cost incurred by the *employee*." (emphasis added)); *Contorinis*, 692 F.3d at 145 n.3 ("[B]ecause [defendant's employer] and not [defendant] bore all direct costs, *any* money that [defendant] can fairly be considered as having 'acquired' as a result of his insider trading activities may be subject to forfeiture under § 981." (emphasis added)).[12]

The Court could end its analysis here, as Defendant offers no other evidence of direct costs.  Nevertheless, the Court notes that the evidence adduced at trial showed that Lisa Percoco incurred no costs, direct or otherwise, by working at CPV.  There was no evidence, for example, that Lisa Percoco incurred unreimbursed, out-of-pocket costs as part of her job; indeed, it appears that CPV reimbursed her for all such costs.  *See* Gov.'s First Ltr. at 1 n.1; Tr. 4361–62; GX-252A, GX-1603N.  Nor was there even any evidence that she incurred an opportunity cost in taking the job at CPV (putting aside that such a cost is likely not a "*direct* cost" within the meaning of § 981(a)(2)(B)).[13]  Put simply, the job at CPV was a *gain* to the Percocos, not a cost

---

[12]   Defendant's argument appears to confuse the principles underlying forfeiture with those underlying restitution.  In calculating restitution as part of Kelly's sentence, the Court used the formula that Defendant suggests here:  the Court took the total salary that CPV paid to Lisa Percoco, subtracted the fair-market value of her services, and ordered Kelly to pay the difference in restitution.  *See* Kelly Sentencing Tr. at 21–27.  But "[r]estitution and forfeiture are authorized by different statutes and serve different purposes—one of remediating a loss, the other of disgorging a gain."  *Bodouva*, 853 F.3d at 78 (quoting *Torres*, 703 F.3d at 196); *see also United States v. Zangari*, 677 F.3d 86, 92–93 (2d Cir. 2012) (a defendant's "ill-gotten gains" may not be used as a "proxy" for a victim's loss absent evidence of a "direct correlation" between these two quantities).  Defendant has offered no reason to believe that restitution and forfeiture should be equivalent in this case.

[13]   Prior to working at CPV, Lisa Percoco had a lower-paying job as a public school teacher in Staten Island.  *See* GX-1214, GX-1603N; Tr. 2132–38, 2230.  After resigning from the Staten Island position, she was unable for months to find any position other than the one at CPV.  *See* Feb. 8, 2019 Opinion, 2019 WL 493962, at *23 (slip op.

that would be appropriate to deduct from Defendant's gross proceeds. Because Defendant has failed to sustain his burden of proving direct costs, no offset would be appropriate even if § 981(a)(2)(B) applied to this case.

This ruling accords with the general goals of the forfeiture laws. The purpose of forfeiture is to disgorge the defendant of all ill-gotten gains. *See Torres*, 703 F.3d at 199–200; *Contorinis*, 692 F.3d at 146. Section 981(a)(2)(B) provides an exception to that principle, allowing the defendant to forfeit those gains net of any costs that he incurred in providing lawful goods and services. Because, however, Defendant has not demonstrated that he sustained any loss or incurred any cost in connection with his schemes, the measure of Defendant's "gross" and "net" gains is exactly the same. Accordingly, regardless of whether § 981(a)(2)(A) or (B) applies, Defendant is being ordered to forfeit the profits he received as a result of his crimes—no more, no less.

---

at 46); Tr. 182–83, 2089–93, 2132–41, 2228–2307, 5290–5301; GX-1601. The Court is aware of no evidence that she had any other offers of employment prior to or while working at CPV.

**CONCLUSION**

For all the foregoing reasons, the Government's application for an order requiring Defendant Joseph Percoco to forfeit $320,000 is GRANTED. In separate docket entries, the Court will sign the Government's proposed order of forfeiture, *see* Dkt. 851-1, and will enter an Amended Judgment.[14] Defendant is advised that he may need to file a new notice of appeal from the Amended Judgment if he wishes to appeal the Court's order of forfeiture. *See* Fed. R. Crim. P. 32.2(b)(4)(C).

**SO ORDERED.**

**Dated: April 15, 2019**
**New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**

---

[14] The Court's Amended Judgment will also correct a clerical error, pursuant to Defendant's request and Federal Rule of Criminal Procedure 36. *See* Def.'s Ltr. (Oct. 16, 2018), Dkt. 887; Order (Oct. 17, 2018), Dkt. 889.