WALTER P. LOUGHLIN
Attorney-at-Law
1225 Park Avenue
Suite 3D
New York, NY 10128
Tel. (203) 216-3445
walter.loughlin@gmail.com

May 4, 2020

By ECF and Email

Honorable Valerie E. Caproni
United States District Court
40 Foley Square
New York, New York 10007

Re: United States v. Joseph Percoco, 16 CR 776 (VEC)

Dear Judge Caproni:

I write to submit this letter motion on behalf of Joseph Percoco to request that his sentence be modified to supervised home confinement pursuant to the compassionate release statute, Title 18 United States Code Section 3582(c), due to his grave risk of exposure to COVID-19 while incarcerated.

Mr. Percoco is presently incarcerated at FCI Otisville. On April 11, 2020, he was transferred from the Minimum Security Camp to isolation for a 14-day quarantine period in preparation for a transfer to supervised home confinement. This was consistent with Attorney General Barr's explicit instructions to the Bureau of Prisons ("BOP") in memoranda dated March 26 and April 3, 2020, "…to grant home confinement to inmates seeking home confinement in connection with the ongoing COVID-19 pandemic" and "immediately process them for transfer…". These memoranda are available at https://www.justice.gov/coronavirus.

The risk to inmates and staff at federal facilities is a matter of urgency. As of May 2,

2020, almost 2,000 inmates and over 300 BOP staff have tested positive for coronavirus; 37 inmates have died. Both inmates and staff at Otisville have tested positive. This surely understates the extent of the virus and danger of transmission because persons who are infected may be asymptomatic and contribute to community spread in a prison environment. https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html.

Despite the clear instructions from the Attorney General, Mr. Percoco is beginning his fourth week in quarantine at Otisville. On April 16, he signed papers related to supervised home confinement. These papers referred to a release date of April 27 which has come and gone. Mr. Percoco remains in limbo. Telephone calls and emails from me and Mrs. Percoco have yielded no information about Mr. Percoco's status other than that his transfer to home confinement remains under review. If there is a genuine need for a longer period of quarantine, Mr. Percoco can self-quarantine at home where he and his family can maintain physical distancing.

Mr. Percoco is at high risk to COVID-19 at by virtue of his multiple serious health conditions. As the annexed letters attest, Mr. Percoco suffers from Type 2 diabetes, hypertension (high blood pressure) and hyperlipidemia (high cholesterol). The medical staff at Otisville has classified him as a "chronic care case." According to the CDC, persons with diabetes are "at high risk for severe illness from COVID-19." Mr. Percoco's high blood pressure is a risk factor for heart disease which also increases his vulnerability to coronavirus. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. According to Dr. Landman, whose letter is among those annexed, Mr. Percoco's diabetes "was poorly managed" when he was last examined in February 2019. It has likely only worsened during his incarceration.

Mr. Percoco also suffers from hypertension and hyperlipidemia. According to the Cleveland Clinic, "COVID-19 poses a greater risk to people who have underlying conditions, including diabetes and high blood pressure." https://health.clevelandclinic.org/what-heart-patients-need-to-know-about coronarvirus.

Research studies summarized in the April issue of The Lancet identified diabetes and hypertension as among "the most frequent co-morbidities" found in patients who had contracted COVID-19. https://www.thelancet.com/journals/lanes/article/P11S2213-2600(20)30116-8/fulltext.

Turning to the statute, the foregoing demonstrates that Mr. Percoco presents an "extraordinary and compelling" justification to permit a transfer to home confinement. Although the statute imposes a requirement of exhaustion of the BOP administrative process, this requirement "is not absolute." Washington v. Barr, 925 F.3d 109 ,118, (2d Cir. 2019). A court may waive an administrative exhaustion requirement "where [exhaustion] would be futile …[or] where the administrative process would be incapable of granting adequate relief …[or] where pursuing agency review would subject [the person seeking relief] to undue prejudice." Id. at 118-19.

"[Un]due delay, if it in fact results in catastrophic health consequences," can justify waiving an administrative exhaustion requirement for any of the above-cited reasons. Id. at 120-21. Numerous courts in this district and circuit have held that the COVID-19 pandemic, combined with a particular person's heightened health risks, justifies waiver. United States v. Zukerman, No. 16 Cr. 194 (AT ) 2020 WL 1659880 (S.D.N.Y. April 3, 2020) (finding that in light of defendant's age and pre-existing conditions, "exhaustion of the administrative process can be waived in light of the extraordinary threat posed…by the COVID-19 pandemic."); United States v. Haney, 19 cr 541(JSR )(S.D.N.Y. April 13, 2020) ("Congressional intent not only permits judicial waiver of [the exhaustion] period, but also, in the current extreme circumstances, actually favors such waiver."); United States v. Razzouk, 11 CR. 430 (ARR) (E.D.N.Y. April 19, 2020) ("a defendant's particular health circumstances can justify waiver of the administrative exhaustion requirement."); United States v. Colvin, 3:19-cr-179 (JBA), 2020 WL 1613943 (D. Conn. April 2, 2020) (in light of defendant's pre-existing conditions,

administrative exhaustion could result in "catastrophic health consequences"…).

Mr. Percoco did not petition the warden at Otisville for compassionate release and then allow 30 days to elapse before bringing this motion. On April 11, he was selected by the prison for release to home confinement and was led to believe that would occur after a 14-day quarantine period. That was 24 days ago and counting. This calls to mind the responses submitted by two BOP officials to courts in this district about their inability to advise the judges of anything concrete about their review of inmate petitions for transfer to home confinement. In United States v. Nkanga, No.18-cr-713 (JMF), a BOP affidavit stated: "Due to the nature of the review and the volume of incoming requests, the BOP cannot set forth a firm date by which the BOP will reach a decision on Petitioner's pending application." A similar letter was submitted in United States v. Russo, No. 17-cr-441 (LJL), which recounted that the "Bureau of Prisons is unable to give a specific time frame…). Because Mr. Percoco was led to believe on April 11 that it had been determined he was eligible for and being prepared for release, he had no reason to petition the warden for release. And as the BOP officials advised Judges Furman and Liman, had he done so, it might well have been futile.

On the merits, Mr. Percoco is entitled to compassionate release because of the "extraordinary and compelling" reasons for granting him release to supervised home confinement. The U.S. Sentencing Commission defines this term as when a person has a "serious physical or medical condition . . . …[that[ substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," and must be one "from which [the defendant] is not expected to recover." Mr. Percoco's transfer to home confinement is consistent with the Policy Statement. Further, he meets each of the factors set out in Section 3582(c)(1)(A), which mirror the criteria in Attorney General Barr's March 26, 2020 memorandum to the BOP. Specifically, Mr. Percoco is a first-time offender who offense conduct was non-violent and related solely to a prior employment. His release to home confinement presents no danger to the public. He is a model prisoner at Otisville's minimum

security camp. If released, he will be transferred to his family residence in Westchester County. where, if need be, he can self-isolate at home.

These factors, combined with Mr. Percoco's diabetes, hypertension, and high cholesterol, make him particularly vulnerable to COVID-19, and present "extraordinary and compelling" reasons for his transfer to supervised home confinement. This result is supported by the ever-growing number of courts in this district and circuit where such compassionate release orders have been granted. See United States v. Kataev,, No. 16 Cr 763-05 (LGS) 2020 WL 1862685 (S.D.N.Y. April 14, 2020); United States v. Smith, No. 12Cr 133 (JFK) 2020 WL 1849740 (S.D.N.Y. April 13, 2020); United States v. Scparta, No. 18-cr-578 (AJN) (S.D.N.Y. April 19, 2020); United States v. Park, No. 16 Cr 743 (RA) 2020 WL 1970603 (S.D.N.Y. April 24, 2020); United States v. Sawicz, No. 08-Cr-287 (ARR) 2020 WL 1815851 (E.D.N.Y. April 10, 2020); United States v. Almonte, No. 3:05-cr-58 (SRU) 2020 WL 1812713 (D. Conn. April 9, 2020); United States v. Gentille, No. 19 Cr 590 (KPF) 2020 WL 1814 (S.D.N.Y. April 9, 2020).

For all of the foregoing reasons, this Court should release Mr. Percoco immediately to supervised home confinement. To paraphrase an observation Judge Rakoff made in United States v. Haney, supra, "[U]nder the present circumstances, each day [Mr. Percoco] must wait ….threatens him with a greater risk of infection and worse."

    Respectfully submitted,

    /s/ Walter P. Loughlin

    Walter P. Loughlin

cc: All Counsel of Record (Via ECF)